Dr. Stewart Lucas Murrey
1217 Wilshire Blvd. # 3655
Santa Monica, CA 90403
Tel.: (424) 278-3017
Email: 2@lucasmurrey.io
Website: lucasmurrey.com
SocialMedia: sickoscoop.com/lucas
Plaintiff & Plaintiff in Pro Se



**FILED**

JUN 17 2024

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:_____ Deputy Clerk

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA–LOS ANGELES DIVISION

*In re:*

AMY LYNNE BLALOCK,

    Debtor.

---

DR. STEWART LUCAS MURREY,

    Plaintiff,

        v.

AMY LYNNE BLALOCK,

    Defendant.

---

Case No. 2:24-bk-12532-BR

Adversary No. 2:24-ap-01152

Chapter 7

EXHIBITS "A", "B", "C" and "D" IN
SUPPORT OF PLAINTIFF DR.
MURREY'S COMPLAINT TO
DETERMINE NON-
DISCHARGEABILITY OF DEBT
PURSUANT TO 11 U.S.C. § 523(a)(6)

Status Hearing: 20 August 2024

Plaintiff DR. STEWART LUCAS MURREY hereby files the following exhibits

referred and to be attached to his filed adversary complaint:

    1. Exhibit "A": A true and correct copy of the operative verified complaint

and concurrent declaration in support thereof in plaintiff's related Los Angeles

county superior court case no. 23STCV14890.

1

COMPLAINT

2.  Exhibit "B": A true and correct copy of the recent ruling regarding Ms.

Blalock's special anti-SLAPP motion to strike wherein causes concerning Ms.

Blalock's intentional and malicious injury of plaintiff survive.

3.  Exhibit "C": A true and correct copy of plaintiff's good faith and

diligent meet & confer letter concerning Ms. Blalock's failure to respond

whatsoever to his reasonable discovery requests and interrogatories and which

he served upon her on 30 March 2024 i.e. just two (2) days prior to Ms.

Blalock's bad faith filing of bankruptcy on 2 April 2024.

4.  Exhibit "D": A true and correct copy of plaintiff's statement of damages

from the above- noted LASC case no. 23STCV14890 with which Ms. Balock

has been served.

Dated: 14 June 2024                          Respectfully Submitted,

                                          By_____
                                             Dr. Stewart Lucas Murrey
                                             Plaintiff & Plaintiff in Pro Se

# EXHIBIT A

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

NOV 0 2 2023

David W. Slayton, Executive Officer/Clerk of Court

Dr. Stewart Lucas Murrey
1217 Wilshire Blvd. # 3655
Santa Monica, CA 90403
Tel.: (424) 278-3017
Email: 2@lucasmurrey.io
Websites: sickoscoop.com/lucas, lucasmurrey.com

Plaintiff & Plaintiff In Pro Per

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

## STANELY MOSK COURTHOUSE

| | |
|---|---|
| DR. STEWART LUCAS MURREY, an individual; | Case No. 23STCV14890 |
| Plaintiff, | FIRST AMENDED COMPLAINT FOR: |
| Vs. | 1) Defamation – Libel |
| | 2) Defamation – Libel *per se* |
| Kelly Gibbons a.k.a. Kel Culb Gib, an individual; Liv Burger, an individual; Elly Shariat, an individual; Ainka Wiz, an individual; Anonymous Group Member 1, an individual; Amy Blalock, an individual; Vanessa Valdes, an individual; Lena Vanderford, an individual; Michal Ofek, an individual; Kelyn Rodriguez, an individual; and DOES 1 through 50, inclusive; | 3) Sex-Based Discrimination In Violation Of The Unruh Civil Rights Act (California Civil Code § 51) |
| | 4) Gender Violence In Violation Of California Civil Code § 52.4 |
| | 5) False Light |
| | 6) Invasion of Privacy |
| | 7) Intentional Infliction of Emotional Distress |
| Defendants. | 8) Intentional Interference with Prospective Economic Advantage |
| | 9) Negligent Interference with Prospective Economic Advantage |
| | 10) Civil Conspiracy |
| | 11) Declaratory Relief |
| | Complaint Filed: 27 June 2023 |
| | Hon. Gregory Keosian |

## I. **PARTIES**

1.     Plaintiff Dr. Stewart Lucas Murrey ("Dr. Murrey") is and at all times mentioned

herein was, an individual, over the age of majority, residing in the City of Los Angeles, County of Los Angeles, State of California.

2.      Having earned his Ph.D from Yale University in 2010 and having published his first two scholarly books in 2014 and 2015 on Greek tragedy, money and modern time, Dr. Murrey has achieved and maintained an excellent reputation in his community for his scholarly work and professionalism in business as well for his compassionate nature and general good spirit as a person.

3.      Defendants Kelly Gibbons aka Kel Culb Gib, Liv Burger, Elly Shariat, Ainka Wiz, Anonymous Group Member 1, Vanessa Valdes, Lena Vanderford, Michal Ofek, Kelyn Rodriguez and DOES 1 through 50 are true and/or pseudonymous identities who conspired to harm plaintiff's reputation and violate his right to free speech based upon his sex and other discriminatory elements as noted below.

4.      Most of this harm occurred in the Facebook group: "Are We Dating The Same Guy? Los Angeles" and other Facebook groups such as, but not limited to "Are We Dating The Same Guy? Orange County OC Irvine Huntington Beach" and "Do not date Him/Dating Advice Group For Women All Around The World". Most of defendants' identities, capacities and residences are presently unknown to plaintiff. Plaintiff will seek to amend this complaint when defendants' true identities, capacities and residences have been ascertained during discovery.

## II. JURISDICTION

5.      The Court has general jurisdiction in this case because plaintiff Dr. Murrey resides within the county of Los Angeles and the criminal acts and civil torts committed by defendants occurred either online and/or in and/or near the county of Los Angeles.

## III. CONTINUING VIOLATIONS

6.      The wrongful acts and omissions giving rise to the defendants' liability in this action

commenced on or about 2019, if not before, and have been and are "continuing" in nature as of the

date of filing this First Amended Complaint ("FAC"). Plaintiff reserves the right to amend this

Complaint as new and additional facts and claims arise or become known to him.

## **GENERAL ALLEGATIONS:**

7.    Since approximately January of 2023 plaintiff began to obtained evidence of unusually

severe defamation of his person on the above-noted Facebook groups and conspiracy to violate his

right to defend himself.

8.    Defendants wrote, published and circulated defamatory statements about plaintiff to

millions of users on Facebook (i.e. Meta who also owns Facebook, Instagram, Whatsapp, etc.) during

at least the past two-three (2-3) years that include the following statements: "Public records show"

[that plaintiff has] involvement in [a] MURDER case of his ex wife", is "suspected of murder"; [h]as

several domestic violence charges filed against him"; "[has] "[f]iled [...] court cases against women

[...] trying to extort money from them"; "[h]as acted aggressively in court", "has STDs", has an "ex-

wife who was killed", deserves to be "ARRESTED"; "claim[s] he is an attorney"; and that plaintiff is

listed on the California court's public record as being a "vexatious litigant".

9.    All of these statements are false. Plaintiff has no criminal record whatsoever, and thus

there are no such public records. Plaintiff has never been involved in a murder case, much less one

involving his wife – and not only because he was never married. Plaintiff had a girlfriend who passed

from cancer in March of 2018 and for whom he cared lovingly until she passed. Plaintiff has never

been charged, much less convicted of any crime his entire life. Plaintiff has never filed a frivolous

lawsuit, much less tried to extort anyone. Plaintiff has never acted aggressive in court. Plaintiff is in

good health and does not have any sexually transmitted diseases ("STDs"). Plaintiff has never

claimed that he is an attorney; he is content as an independent scholar with a Ph.D from Yale

University with books and articles published and many more forthcoming. And plaintiff is not a

vexatious litigant, nor has he ever been labeled one by any court anywhere.

10. Defendants further wrote, published and circulated defamatory statements about

plaintiff to millions of users on Facebook during the past two-three (2-3) years that include the

following statements: Plaintiff has committed fraud; has been caught acting fraudulent; is deceitful;

he falsely claims to have a doctoral degree (Ph.D); and that plaintiff is the subject of a "murder

suspicion article".

11. All of these statements are also false. Said events similarly never actually happened

and/or are false. In truth and actual fact, plaintiff has not committed fraud nor acted deceitful. He is

well-known for being an honest and fair person. Plaintiff properly obtained a Ph.D from Yale

University in 2011 before going on to write and publish several books and articles recognized by

leading scholars around the world such as Noam Chomsky who celebrates plaintiff's works on the

backs of plaintiff's books. Plaintiff's writings are available at practically all libraries of every

university and college within and beyond the United States and within multiple fields and specialties

of scholarship from ancient history, early historic periods, classical Greece, philosophy, poetry,

literature, politics, religion, etc. Plaintiff is unaware of any "murder suspicion article" of which he is

the subject, nor should he be, as this would also be yet another instance of libel and libelous

defamation *per se*.

12. Defendants clearly conspired to harm plaintiff. This is shown in how administrators

and moderators both: 1) violated plaintiff's rights to free speech to defend himself by refusing to

allow him to join said Facebook groups; and 2) coached their co-conspirators on how to cyberbully,

harass, defame, etc. plaintiff, as when Sanchez would instruct her co-conspirators to use a coded

language that included phrases such as, but not limited to: "Does anyone have any tea to spill?"

13.     Defendants' conspiracy is further seen, for instance, in the purely fictional story invented by the Facebook criminal Elly Shariat. Shariat falsely claimed that plaintiff was interested in meeting her; that he stalked her and a client of hers at a hotel until she was spontaneously "rescued" by "a British guy". This entire story is pure fiction. However, Shariat's Facebook criminal co-conspirators Kelly Gibbons aka Kel Culb Gib, Liv Burger, Anonymous Group Member, Vanessa Valdes, Lena Vanderford, Michal Ofek, Kelyn Rodriguez and countless other Facebook accounts intentionally "reacted" *as if* Shariat's sham story was true. The Facebook criminal Amy Blalock tells a similarly fictional story to harm plaintiff. Defendants invented said fictional stories out of malice to create a fake network effect with millions of users to severely harm plaintiff. All the stories referring to plaintiff in said Facebook groups are fictional (as in Shariat's, Blakock's and many others' stories) and/or, at best, are maliciously taken out of context to severely harass and harm plaintiff.

14.     Defendants Kelly Gibbons aka Kel Culb Gib, Liv Burger, Anonymous Group Member, Vanessa Valdes, Lena Vanderford, Michal Ofek, Kelyn Rodriguez, as well as moderators and administrators and Facebook refused to allow plaintiff to join these groups to defend himself. They conspired to create and publish the above-noted false statements about plaintiff while they intentionally keep plaintiff from defending himself based on the discrimination of his sex (as a male) and other discriminatory elements. Defendants not only never informed plaintiff of their assault, which date back to at least 2020, they also conspired to keep their online attacks secret to make sure the damage to plaintiff' life would be severe and then even denied him his right to free speech when he became aware.

15.     Plaintiff only first became aware of this conspiracy to harm him on Facebook and elsewhere in late 2022. He began obtaining evidence of the statements and some of the Facebook accounts in early 2023 and he continues to gather evidence presently. Nevertheless, plaintiff has

meanwhile as a result of defendants' actions suffered serious crimes and civil torts e.g. extreme

harassment, stalking and hate-crimes since at least 2019. Said harm continues into the present and is a

result of defendants' cyberbullying on Facebook and other online platforms associated with Los

Angeles and southern California where plaintiff lives and which have millions of users.

16.     In good faith, prior to taking steps to filing this case, plaintiff diligently contacted a

few of the defendants who he recalls having matched with via online dating apps and who freely gave

plaintiff their telephone numbers. Plaintiff explained in text messages to them that because of their

above-noted harmful statements and conspiracy, he would now be forced to take legal action.

17.     In truth and actual fact plaintiff never had any significant interest in defendants, much

less romantic interest. For instance, after matching with and then texting with defendant Kelly

Gibbons aka Kel Culb Gib, plaintiff could tell that Kelly Gibbons aka Kel Culb Gib was not his type

and he informed her that he no longer wanted to meet her. Defendant Gibbons then posting hundreds

of false and harmful comments about plaintiff as well as pictures she had stolen of him from various

platforms without his consent.

18.     Similarly, when plaintiff briefly met with defendant Liv Burger after matching with

her, it was clear that Burger did not look like her pictures and she did not seem to be in good health,

neither physically nor mentally. Plaintiff quickly came up with an excuse to remove himself from

their meeting. Nevertheless, Burger immediately thereafter created a fictional account of what

happened that she posted and reposted hundreds of times in said Facebook groups to harm plaintiff.

19.     Defendants also inadvertently exposed their own lies as when they say that they

"googled" plaintiff and "sleuthed" him AFTER he rejected them. Defendants of course looked

plaintiff up BEFORE meeting him.

20.     But significantly it seems that most of the members of said Facebook groups attacking

1  plaintiff are fake and/or anonymous. Thus defendants Kelly Gibbons aka Kel Culb Gib, Liv Burger,

2  Elly Shariat, Ainka Wiz, Anonymous Group Member 1, Vanessa Valdes, Lena Vanderford, Michal

3  Ofek, Kelyn Rodriguez et al. also created countless anonymous postings that they, in turn, re-posted

4  and circulated among millions of Facebook users online (see the concurrently filed in support of

5  declaratory relief Declaration of Plaintiff Dr. Stewart Lucas Murrey, ¶ 3 & Ex. 1; and see ¶¶ 1-14).

6  Like the fake stories noted above, defendants further created countless fake Facebook accounts that

7  they then used to create a fake network effect and a fake social media consensus. In other words,

8  defendants conspired to create hundreds of fake Facebook accounts that would seem to be

9  inseparable from the minority of real-world Facebook accounts maliciously attacking plaintiff.[1]

10  (Ibid.)

---

[1] This group of Facebook cyberbully criminals includes not only Kelly Gibbons aka Kel Culb Gib, Liv Burger, Elly Shariat, Ainka Wiz, Anonymous Group Member 1, Vanessa Valdes, Lena Vanderford, Michal Ofek, Kelyn Rodriguez, Paola Sanchez, but also the following Facebook cyberbully criminals: Caitlin Brown, Katherine Frame, Seairra Dittenber, Romi Ben-Elyaho, Zen Chrome, Bridget Garwood, Lindsay Alexandra, Diane Leprince, Crisna Kay, Tara Wujcik, Donna L Anderson, Naomi Joy Garcia, Kendra Latty, Sierra Kay, Nicole Burova, Sarah Jean, Beth Creekmur, Donna Dishbak, Brittany Shea, Teal Muah, Amy Blalock, Kera H B grnerud, Tessa Tigges, Tikvah Hara, Stephanie Basey, Christina Runnels, Sophia Oman, Kimiya Ayubi, Amber Jones, Rachel Vankirk French, Wendy Wang, Marianne Karagianis, Марианна Бернштейн/Nathan (39 year-old male), Lauren Nicole Clark, Kari Woodring Webster, Mickey Holmes, Carrisa Grace, Evonne Caouette, Kren Lua, Lonni Epstein, Severina Paige, Clarissa Cash, Paige Cone, Savannah Valencia, Nicole Katherine, Lauren-Ashleigh Christian, Jess Caylyn, Stephanie O'Connor, Arrowyn Ambrose, Rocío Cam, Kyra Nicole, Phyllis Lewis Trosper, Jordan Michele Johnson, Carisa Ducommun Lezza, Linda Dumayas, Ai Yah Shida, Susan Taylor, Scarlett Serena, Pearl Perez, Melina Miller, Aunya Tawn, Amy Monroe, Kristi Denise, Shannon J. Connolly, Deirdra MacIntyre Cowen, Megan Cork, Adrienne Marie, Antonia Shestakova, Patrice Woods, Sinéad Eby, Fatemeh Sharifi, Masha Dowell, Erin O'Neil, Swati LaPerre, Linda Xochitl Avalos, Kate Clough, Jorgiana Jake, Juliana Jules, Colleen Funck, Danielle Dirks, Valerie Jenny, Luna Narcissa, Agata Monica, Keri Donahue, Kate Eves, Jessica Guastella, Sasha Alex Raskin, Serena De Comarmond, Karen Curtis Perez, Laura Nelson, Nicola Burova, Sarah Scolari, Jessica Khalili, Chloe Bednorz, Amanda Sorensen, Danielle Marie, Miriam Landru, Eve Salazar, Emily Noelle, Jess Land, Kathyran Macdonald, Rae Rodriguez, Vanessa Parrotta, Amanda Sains, Alyssa Jenkins, Lucy Crew, Sarah Pauter, Lauren Del Toro, Alia Ollikainen Joslin, Amy Dawn, Marianne Liv, Krystal Paige Haddadin, Sasha Gharibian, Ash Petti, Jenny Liang, Rachel Lopez, Nisa Ahmad, Myranda Byrne, Lea Reed, Lindsay Crowe, Angella Green, Vida Ghaffari, Tiffani Rooney, Jacqui Blue, Tamar Gelber, Gingy Pw, Jacqueline Elaine Allen, Michelle Rech, Dee Acuna, Amisha Patel, Jill Billingsley, Imani Change, Diana Danaila, Mary Elizabeth 1, Elizabeth Mary, Mary Elizabeth 2, Taylor Gillies, Michelle Juliana Henderson, Erin Searcy, Laurel Young, Allison Gardner, Coco Nicole, Rae Gull, Debbie Wu, Michelle Hartley, Brittany Elias Scott, Jaci MH, Kristen Sunnie Baltes, Amanda Malcolm-Brown, Farahnaz Jaan, Anna Stamatiou, Kim Lusk, Jenna Seppa, Rachel Luttrell, Angelina Beeby, Tiffany Chantel Robinson, Courtnei Evans, Diana Xochiquetzal, Min Ji Clark, Jennifer Dal Chele, Judith Marker, Sathiya Patthanam, Jasmine Pelayo (Veronica), Marilynn Haytch, Brittany Forney, Bridgette Yang, Shea Brandy, Allie Trelles, Gladys Ríos, Zandri Zandri, Sandy Parra, Jenny Kay, Mawa Agnieszka, Ana Chavez, Royal Enfield, Ravleen Ahuja, Maya Allegro, Alli Ebenkamp, Gillian Spice, Aubey Martinez, Tori Lou, Dyrdre Lynne Lozano, Genevieve Alexander, Sam Gil, Christine Vu, Lex McNaughton, Kat Barre, Eva Neeck, Jemnica Mae Abrams, Rebekah Athey, Jabro Ni, Julia Morgan Lantz, Jacqueline Trevizo, Maykover Celestine, Nathaly Silva, Melissa Garcia Murrieta, Lindsay Brooke, Cece V, Olivia Blyds, Natalie Abernathy, Alessandra

21.     Among defendants' assaults on plaintiff is their threat to stalk and harass him, as when defendant Liv Burger suggests that she and one of her anonymous co-conspirators should "wear shirts with [a] picture of his ex who was killed" (Ibid.). In response to Burger, Anonymous Group Member 1 states: "Some of us can dress like CIA agents and get him spooked out…" (Ibid.) Defendants also illegally stole some of plaintiff's copyrighted writings and images from his personal website wherein plaintiff offers reasonable criticisms of the CIA (Ibid.). Defendants then unlawfully re-published plaintiff's writings on Facebook without plaintiff's consent and with the clear intent to disparage plaintiff (Ibid.). Plaintiff contacted Facebook. But Facebook refused then and continues to refuse presently to remedy their users' crimes against plaintiff's intellectual property ("IP") rights and violation of his rights in general, including even his copyright rights (Ibid.).

22.     This large-scale conspiracy to create a fake online social consensus had and continues to have real consequences. Plaintiff has suffered and continues to suffer damages that includes, but is not limited to, the loss of millions of dollars of earnings in regard to his scholarly writings, legal work and entrepreneurial ventures from 2019 through the present and generally was an assault against any stability in plaintiff's life and ability to earn a living.

23.     Defendants also knew they caused and continue to cause severe damage to plaintiff's personal relationships e.g. with family and friends and to his social and dating life in general. This is especially true since, because of the response to COVID-19 in 2020 wherein "life" became still more

---

Conti, Allison Eckhart, Leah Williams, Elle Fraijo, Helen PM, Nathalie Holmes, Briana Vinson, Ngozika Justbeingme O'keke, Yaya Joanna, Kathleen Trinh, Shannon Marie, Emma Lervold, Amber Michelle, Nicole Samra, Michala Martinez, Bryn Crowell, Janae Nicole, Leah Shubin, Sue Scaduto, Charlotte Hannah, Kaitlin Lillyw kte, Kelly Soll, Mary Denuccio, Claire Wilson; and including, but not limited to the following Facebook criminal administrators and moderators: Paola Sanchez, Sam Daniels, Alexis Kyle, Sam Lupa, Coraline Lotz, Kallie Ann, Betty Suarez, Tara Dyhani Purswani, Amanda Hu, Madison Pierce, Patience Wright, Lisa Jones, Julie Mikus, Maria-Paula Lanatta, Susan Taylor, Dianne Wesley, Selena Marquez, Karen Urbanio, Polly Hannah, Cortney Fox, Karen Chen, Tadie Tarwie, Erin Mccurley, Holly Luna, Leyah Rodriguez, Ashley Brenn S, Christina Gao, Jill Lobliner Mohel, Madelene West, Andrea Helms, Jackie Rae, Bridgette Malone, Chanel Sanchez, Tiffany Farrand, Melanie Posada, Jessica Rose Cuneo, Amy Bruno, Stephanie Day, Samantha Shirey, Chrissy Storr, Jasmyne Broadbent, Awa Cham, Sharleen Waa, Shekia Bolden, Tedra

absorbed into unlawful monopoly platforms online such as Facebook, Instagram, Youtube (Google) etc. And locally, in the county wherein plaintiff lives and works, he has lost all privacy. Defendants posted, for instance, without plaintiff's consent, his private telephone number such that he has received multiple death threats and he has had to change his private number. Defendants falsely claimed plaintiff gave them his private address, and now plaintiff is forced to use a P.O. Box instead. In fact, plaintiff can hardly be in public without being reasonably concerned that one of the above-noted hundreds of Facebook/Instagram users will not be stalking and harassing him and maliciously seeking to harm him and misrepresent his everyday life and work online to millions of strangers online without him being able to defend himself (Ibid.).

24.    Prior to filing this lawsuit plaintiff in good faith diligently tried to join said Facebook groups to defend himself many times e.g. on 26 February 2023 and again on 28 February 2023 and after he tried and was refused access to the above-noted groups. But given the administrators and moderators of said Facebook groups are conspiring with the above-noted crimes against plaintiff, said administrators and moderators refused to allow plaintiff to join these groups.

25.    Plaintiff further in good faith diligently reported the above-noted serious crimes and civil torts to Facebook, since all of these actions breached the terms of service, privacy, safety etc. policies of Facebook to which every Facebook user – plaintiff included – and Facebook agree. Specifically, plaintiff also contacted the "Reporting Abuse" division of Facebook's "Help Center" and Facebook's legal team in early March 2023 and again on 9 April 2023. Facebook failed to respond whatsoever to any of plaintiff's life-threatening concerns, much less stop said extreme harm and crimes of cyberbullying and electronic harassment. Facebook further failed to respond to plaintiff after he properly gave them notice on 31 March 2023 (and after said date) to preserve any and all data

Tado, Mary Davies, Sofia, Victoria Blackwell, Vanessa Ace, Apple Chen, Awa Cham, Gabriela Emperatriz, Jenney Bennett, Elizabeth Persons, Miranda Ashley, Jessica Marie Lim David, Melissa Stitts.

and/or meta-data relevant to the above-noted Facebook groups along with any other reasonably

suspected data and meta-data relevant to this and any other related actions that Meta has collected

(Ibid.).

26. The scale of this assault is alarming. No less than hundreds of Facebook accounts,

continue to conspire to attack plaintiff's life and work. This is particularly troubling because

Facebook knows that these accounts, moderators and administrators are violating even Facebook's

own terms and conditions etc., as noted above. Facebook itself, which refuses to respond, much less

alleviate the situation, will not even allow plaintiff to update his own personal Facebook account such

that he cannot update his personal information, including, but not limited to his email and phone

number. And there remain further fake accounts with plaintiff's name as well an entire account of

plaintiff that Facebook refuses to delete and has refused to delete for years.

27. Although it remains to be seen, this assault seems to be related to plaintiff's criticisms

of Silicon Valley's relationship with governmental agencies, as when plaintiff criticizes Facebook

a.k.a. Meta (i.e. Instagram, Whatsapp, etc.) exploiting in bad faith section 230 of the

Communications Decency Act (CDA ("section 230"). Like Google a.k.a. Youtube, Microsoft,

Amazon, Twitter, et al., such criminal "tech" monopolies, Meta aka Facebook and Instagram secretly

work for unlawful national security state agencies to surveille, data-mine, hack, blackmail and control

as many people on earth as possible, especially high-value targets, such that people no longer enjoy

their constitutional right to privacy.

28. Meanwhile hundreds of harmful postings and countless responses of hundreds of

Facebook accounts seen by millions of users, the majority of whom are located in Los Angeles and

southern California where plaintiff lives, continue to harm plaintiff's life and reputation. Because of

this, plaintiff had no option but to file police reports against defendants with the Federal Bureau of

1  Investigations ("FBI") as well as several police and Sherriff departments within Los Angeles, Orange

2  County, Irvine and Huntington Beach, etc. And since the filing of said police and FBI reports against

3  defendants well over four-hundred (400) harmful comments have been taken down within said

4  Facebook groups.

5

6                              **FIRST CAUSE OF ACTION**
                                  ***DEFAMATION – LIBEL***
7                                  *Against All Defendants*

8       29.    Plaintiff incorporates all allegations of this complaint and re-alleges them as though

9  they were fully set forth herein.

10      30.    Having earned his Ph.D from Yale University in 2010 and having published his first

11  two scholarly books in 2014 and 2015 on the invention of money in early historic Greece and its

12

13  history up until modern time that are available in libraries, especially those of higher education, in

14  most countries and within several different scholarly categories, Dr. Murrey has achieved and

15  maintained an excellent reputation in his community for his scholarship and professionalism. Further,

16  while working on new books and articles, plaintiff has also been active in new software industries

17  such as blockchain. This includes, but is not limited to: blockchain social media and blockchain legal

18  enterprises. Plaintiff's reputation for being a trustworthy and decent person is thus vital to his life and

19

20  work.

21      31.    However, sometime around 2019 and/or 2020 (at a time still to be determined, because

22  Facebook obfuscates the dates of publications within its groups), defendants conspired to and secretly

23  targeted plaintiff to harm his reputation.

24

25      32.    Specifically, defendants created, posted, re-posted and circulated within a Facebook

26  group: "Are We Dating The Same Guy? Los Angeles" and other similar Facebook groups with

27  millions of users the following statements: "Public records show" [that plaintiff has] involvement in

28

1  MURDER case of his ex wife", is "suspected of murder"; [h]as several domestic violence charges

2  filed against him"; "[has] "[f]iled [...] court cases against women [...] trying to extort money from

3  them"; "[h]as acted aggressively in court", "has STDs", has an "ex-wife who was killed", deserves to

4
5  be "ARRESTED"; "claim[s] he is an attorney"; and that plaintiff is listed on the California court's

6  public record as being a "vexatious litigant".[2]

7      33.    Defendants further created, posted, re-posted and circulated within a Facebook group:

8  "Are We Dating The Same Guy? Los Angeles" and other similar Facebook groups with millions of

9  users the following statements: that plaintiff has committed fraud, has been caught acting fraudulent,

10  is deceitful, he falsely claims to have a doctoral degree (Ph.D), and that plaintiff is the subject of a

11
12  "murder suspicion article".

13      34.    Defendants further conspired to harm plaintiff, for instance, in the purely fictional

14  story invented by the Facebook criminal Elly Shariat. Shariat falsely claimed that plaintiff was

15  interested in meeting her and that he stalked her and a client of hers at a Beverly Hills hotel until she

16  was spontaneously "rescued" by "a British guy". Although this entire story is pure fiction, Shariat's

17  Facebook co-conspirators "reacted" as if Shariat's fictional story was true. Defendant Amy Blalock

18
19  tells a similarly false story to harm plaintiff.

20      35.    All of the above-noted statements about plaintiff are false. Plaintiff has no criminal

21  record, and thus there are no such public records. Plaintiff was never involved in a murder case, much

22  less one involving his wife. Plaintiff's girlfriend passed from cancer in March of 2018 and he cared

23  for her lovingly as best as he could up until she passed. Plaintiff has never been charged, much less

24
25  convicted of any crime his entire life. Plaintiff has never filed a frivolous lawsuit, much less tried to

26  extort anyone. Plaintiff has never acted aggressive in court. Plaintiff is in good health and does not

27

28  ───────────────────
[2] Although the defamation of plaintiff as a "vexatious litigant" is specifically linked to defendant Kelyn Rodriguez, this comment as well as the others were reiterated and/or circulated by many, if not all of the other defendants named herein.

have any sexually transmitted diseases ("STDs"). Plaintiff has never claimed that he is an attorney. Plaintiff is not a vexatious litigant, nor has he ever been labeled one by any court anywhere. Plaintiff has not committed fraud nor acted deceitful. He is well-known for being an honest and fair person. Plaintiff has properly obtained a Ph.D from Yale University in 2011 before going on to write and publish several books and articles recognized by leading scholars. And plaintiff is unaware of any "murder suspicion article" of which he is the subject, nor should he be.

36.    Defendants conspired to create and created, posted, published and re-published the above-noted unprivileged statements about plaintiff to harm plaintiff.

37.    Defendants made said statements out of malice and/or knowing the falsity of them and/or without doing any due diligence prior to their publication.

38.    Because these written statements name plaintiff and are posted alongside postings of his private pictures and text messages, etc., anyone reading these statements reasonably understood that they referred to plaintiff.

39.    As a result of these written statements plaintiff's reputation has been adversely affected such that plaintiff has been exposed to hatred, contempt, ridicule and obloquy; and said statements caused him to be shunned or avoided; and they have a tendency to injure him in his occupation; thus plaintiff also lost a significant amount of money, including, not limited to, his scholarly, legal and entrepreneurial pursuits.

40.    Unless and until enjoined and restrained by order of this Court, defendants' wrongful conduct will continue to cause irreparable harm to plaintiff, entitling him to seek declaratory relief.

41.    This action, if successful, will enforce an important right affecting the public interest would confer a significant benefit, whether pecuniary or non-pecuniary, for the general public. Because this case is brought for the purposes of enforcing important rights affect the public interest,

plaintiff also seeks recovery of attorney's fees and costs in prosecuting this action against defendants

under code of civil procedure § 1021.5 and other applicable law.

### SECOND CAUSE OF ACTION
### DEFAMATION–LIBEL PER SE
*Against All Defendants*

42.    Plaintiff incorporates all allegations of this complaint and re-alleges them as though

they were fully set forth herein.

43.    Having earned his Ph.D from Yale University in 2010 and having published his first

two scholarly books in 2014 and 2015 on the invention of money in early historic Greece and its

history up until modern time that are available in libraries, especially those of higher education, in

most countries and within several different scholarly categories, Dr. Murrey has achieved and

maintained an excellent reputation in his community for his scholarship and professionalism. Further,

while working on new books and articles, plaintiff has also been active in new software industries

such as blockchain. This includes, but is not limited to: blockchain social media and blockchain legal

enterprises. Plaintiff's reputation for being a trustworthy and decent person is thus vital to his life and

work.

44.    However, sometime around 2019 and/or 2020 (at a time still to be determined, because

Facebook obfuscates the dates of publications within its groups), defendants conspired to and secretly

targeted plaintiff to harm his reputation.

45.    Specifically, defendants created, posted, re-posted and circulated within a Facebook

group: "Are We Dating The Same Guy? Los Angeles" and other similar Facebook groups with

millions of users the following statements: "Public records show" [that plaintiff has] involvement in

MURDER case of his ex wife", is "suspected of murder"; [h]as several domestic violence charges

filed against him"; "[has] "[f]iled [...] court cases against women [...] trying to extort money from

them"; "[h]as acted aggressively in court", "has STDs", has an "ex-wife who was killed", deserves to

be "ARRESTED"; "claim[s] he is an attorney"; and that plaintiff is listed on the California court's

public record as being a "vexatious litigant".[3]

46.    Defendants further created, posted, re-posted and circulated within a Facebook group:

"Are We Dating The Same Guy? Los Angeles" and other similar Facebook groups with millions of

users the following statements: that plaintiff has committed fraud, has been caught acting fraudulent,

is deceitful, he falsely claims to have a doctoral degree (Ph.D), and that plaintiff is the subject of a

"murder suspicion article".

47.    Defendants clearly conspired to harm plaintiff. This is shown in how administrators

and moderators both: 1) violated plaintiff's rights to free speech to defend himself by refusing to

allow him to join said Facebook groups; and 2) coached their co-conspirators on how to cyberbully,

harass, defame, etc. plaintiff, as when Sanchez would instruct her co-conspirators to use a coded

language that included phrases such as, but not limited to: "Does anyone have any tea to spill?"

48.    Defendants further conspired to harm plaintiff, for instance, in the purely fictional

story invented by the Facebook criminal Elly Shariat. Shariat falsely claimed that plaintiff was

interested in meeting her and that he stalked her and a client of hers at a Beverly Hills hotel until she

was spontaneously "rescued" by "a British guy". Although this entire story is pure fiction, Shariat's

Facebook co-conspirators "reacted" as if Shariat's fictional story was true. Defendant Amy Blalock

tells a similarly false story to harm plaintiff.

49.    All of the above-noted statements about plaintiff are false. Plaintiff has no criminal

record, and thus there are no such public records. Plaintiff was never involved in a murder case, much

less one involving his wife. Plaintiff's girlfriend passed from cancer in March of 2018 and he cared

---

[3] Although the defamation of plaintiff as a "vexatious litigant" is specifically linked to defendant Kelyn Rodriguez, this comment as well as the others were reiterated and/or circulated by many, if not all of the other defendants named herein.

- 15 -
Plaintiff Dr. Murrey's First Amended Complaint v. Facebook et al.

for her lovingly as best as he could up until she passed. Plaintiff has never been charged, much less convicted of any crime his entire life. Plaintiff has never filed a frivolous lawsuit, much less tried to extort anyone. Plaintiff has never acted aggressive in court. Plaintiff is in good health and does not have any sexually transmitted diseases ("STDs"). Plaintiff has never claimed that he is an attorney. Plaintiff is not a vexatious litigant, nor has he ever been labeled one by any court anywhere. Plaintiff has not committed fraud nor acted deceitful. He is well-known for being an honest and fair person. Plaintiff has properly obtained a Ph.D from Yale University in 2011 before going on to write and publish several books and articles recognized by leading scholars. And plaintiff is unaware of any "murder suspicion article" of which he is the subject, nor should he be.

50.     Defendants falsely stated that plaintiff committed crimes of moral turpitude such as "murder", "extortion", etc. And defendants falsely stated that plaintiff has loathsome diseases, as when they posted anonymously and then circulated and supported false statements that he has "STDs", which plaintiff does not have. Defendants further falsely accused plaintiff of being unchaste and/or engaged in sexual misconduct to disparage him, all of which never occurred and/or are not true. And defendants made false statements attacking plaintiff's credibility as a scholar with a Ph.D from Yale (which defendants claimed was not real and fraudulent) while they attacked his credibility as a scholar, writer and entrepreneur, as when they repeatedly called him a fraud and con-artist, etc.

51.     Defendants conspired to create and created, posted, published and re-published the above-noted unprivileged statements about plaintiff to harm plaintiff.

52.     Defendants made said statements out of malice and/or knowing the falsity of them and/or without doing any due diligence prior to their publication.

53.     Because these written statements name plaintiff and are posted alongside postings of

his private pictures and text messages, etc., anyone reading these statements reasonably understood that they referred to plaintiff.

54.    As a result of these written statements plaintiff's reputation has been adversely affected such that plaintiff has been exposed to hatred, contempt, ridicule and obloquy; and said statements caused him to be shunned or avoided; and they have a tendency to injure him in his occupation; thus plaintiff also lost a significant amount of money, including, not limited to, his scholarly, legal and entrepreneurial pursuits.

55.    Unless and until enjoined and restrained by order of this Court, defendants' wrongful conduct will continue to cause irreparable harm to plaintiff, entitling him to seek declaratory relief.

56.    This action, if successful, will enforce an important right affecting the public interest would confer a significant benefit, whether pecuniary or non-pecuniary, for the general public. Because this case is brought for the purposes of enforcing important rights affect the public interest, plaintiff also seeks recovery of attorney's fees and costs in prosecuting this action against defendants under code of civil procedure § 1021.5 and other applicable law.

### THIRD CAUSE OF ACTION
### SEX-BASED DISCRIMINATION
### IN VIOLATION OF THE UNRUH CIVIL RIGHTS ACT
(California Civil Code § 51)
*Against All Defendants*

57.    Plaintiff incorporates all allegations of this complaint and re-alleges them as though they were fully set forth herein.

58.    Civil Code section 51, et seq., also known as the Unruh Act, provides that all persons in the state are entitled to the "full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever," regardless of sex.

59.    The Facebook groups wherein defendants committed serious crimes and civil

- 17 -
Plaintiff Dr. Murrey's First Amended Complaint v. Facebook et al.

violations against plaintiff, including cyberbullying and electronic harassment, severe defamation, etc. occurred are Facebook groups that allegedly exist to protect women.

60.    As noted above: Prior to filing this lawsuit plaintiff in good faith diligently tried to join said Facebook groups to defend himself many times e.g. on 26 February 2023 and again on 28 February 2023 and after. But given that Facebook and its administrators and moderators are conspiring with the above-noted crimes against plaintiff, Facebook and its administrators and moderators refused to allow plaintiff to join these groups.

61.    Plaintiff and others have inquired these groups to produce evidence that they have protected women since at least 2022 and still today in late 2023 none of these Facebook groups have responded, much less produced any evidence that they have protected a single woman ever.

62.    Within these Facebook groups is an irrational and seething hatred toward men.

63.    Defendants clearly conspired to harm plaintiff. This is shown in how administrators and moderators both: 1) violated plaintiff's rights to free speech to defend himself by refusing to allow him to join said Facebook groups; and 2) coached their co-conspirators on how to cyberbully, harass, defame, etc. plaintiff, as when Sanchez would instruct her co-conspirators to use a coded language that included phrases such as, but not limited to: "Does anyone have any tea to spill?"

64.    Plaintiff is informed and believed and thereon alleges that the aforementioned conduct of defendants, and each of them, denied, aided, or incited in a denial of, discriminated or made a distinction that denied plaintiff full and equal advantages, privileges, and services to Plaintiff, based solely upon plaintiff's sex and complaints he made concerning these Facebook groups.

65.    This claim is made well with the two-year statute of limitations, in particular because, although since the filing of police and FBI reports hundreds of the comments harming plaintiff in said Facebook groups were removed and/or deleted, many still remain.

- 18 -
Plaintiff Dr. Murrey's First Amended Complaint v. Facebook et al.

66.    As a proximate result of the wrongful actions of defendants, and each of them, plaintiff has suffered harm, including but not limited to, lost earnings and other employment benefits, loss of future employment benefits, including insurance and pension, mental anguish and emotional distress, bills for medical and psychological treatment, humiliation, embarrassment, mental anguish, and physical harm, all in an amount to be proven at trial but exceeding the minimum jurisdictional limits of this court.

67.    Plaintiff is further informed and believes, and based thereon alleges, that defendants, and each of them, acted and continue to act, with full knowledge of the consequences and damage being caused to plaintiff, by defendants' actions, and defendants' actions were, and are, willful, oppressive, and malicious. Accordingly, plaintiff is entitled to punitive damages against defendants, and each of them, in a sum according to proof at trial.

68.    Plaintiff has incurred, and will continue to incur, attorneys' fees in the prosecution of this action and therefore demand such reasonable attorneys' fees and costs as set by the court.

**FOURTH CAUSE OF ACTION**
**GENDER VIOLENCE**
**IN VIOLATION OF CALIFORNIA CIVIL CODE § 52.4**
*Against All Defendants*

69.    Plaintiff incorporates all allegations of this complaint and re-alleges them as though they were fully set forth herein.

70.    Plaintiff is informed and believes and otherwise alleges that defendants would engage in this despicable conduct and by their actions and inactions ratified, authorized and condoned this unlawful behavior.

71.    California Civil Code Section 52.4 provides:

(a) Any person who has been subjected to gender violence may bring a civil action for damages against any responsible party. The plaintiff may seek actual damages, compensatory damages, punitive damages, injunctive relief, any combination of those,

or any other appropriate relief. A prevailing plaintiff may also be awarded attorney's fees and costs.

(b) An action brought pursuant to this section shall be commenced within three years of the act, or if the victim was a minor when the act occurred, within eight years after the date the plaintiff attains the age of majority or within three years after the date the plaintiff discovers or reasonably should have discovered the psychological injury or illness occurring after the age of majority that was caused by the act, whichever date occurs later.

(c) For purposes of this section, "gender violence," is a form of sex discrimination and means any of the following:

(1) One or more acts that would constitute a criminal offense under state law that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, committed at least in part based on the gender of the victim, whether or not those acts have resulted in criminal complaints, charges, prosecution, or conviction.

(2) A physical intrusion or physical invasion of a sexual nature under coercive conditions, whether or not those acts have resulted in criminal complaints, charges, prosecution, or conviction.

(d) Notwithstanding any other laws that may establish the liability of an employer for the acts of an employee, this section does not establish any civil liability of a person because of her or his status as an employer, unless the employer personally committed an act of gender violence.

72.    Plaintiff alleges that in as far back as 2019 and through the present, defendants violated California Civil Code Section 52.4 in that one or more acts inflicted on plaintiff constitutes a criminal offense under state law that has as an element of use, attempted use, or threatened use of physical force against her person, committed at least in part based on the gender of Plaintiff, whether or not those acts have resulted in criminal complaints, charges, prosecution, or conviction.

73.    As noted above, because Facebook and said Facebook groups refused to respond whatsoever plaintiff had no option but to file police reports against defendants with the Federal Bureau of Investigations ("FBI") as well as several police and Sherriff departments within Los Angeles, Orange County, Irvine and Huntington Beach, etc. And since the filing of said police and FBI reports against defendants more than four-hundred (400) severely harmful comments have been taken down within said Facebook groups.

74.    That cyberbullying (which often leads to its victim's suicide) and electronic

harassment are serious crimes is shown California Penal Code § 653.2 wherein it illegal to harass

someone by distributing, posting, emailing and/or disclosing any other person's information without

his or her consent, in particular when the likely effect would occur when said sending or distribution

would incite and/or harass a third party.

75.    As also noted above: the Facebook groups wherein defendants committed serious

crimes and civil violations against plaintiff, including cyberbullying and electronic harassment,

severe defamation, etc. occurred are Facebook groups that allegedly exist to protect women.

76.    Defendants clearly conspired to harm plaintiff. This is shown in how administrators

and moderators both: 1) violated plaintiff's rights to free speech to defend himself by refusing to

allow him to join said Facebook groups; and 2) coached their co-conspirators on how to cyberbully,

harass, defame, etc. plaintiff, as when Sanchez would instruct her co-conspirators to use a coded

language that included phrases such as, but not limited to: "Does anyone have any tea to spill?"

77.    And prior to filing this lawsuit plaintiff in good faith diligently tried to join said

Facebook groups to defend himself many times e.g. on 26 February 2023 and again on 28 February

2023 and after. But given that Facebook and its administrators and moderators are conspiring with

the above-noted crimes against plaintiff, Facebook and its administrators and moderators refused to

allow plaintiff to join these groups.

78.    Plaintiff and others have inquired these groups to produce evidence that they have

protected women since at least 2022 and still today in late 2023 none of these Facebook groups have

responded, much less produced any evidence that they have protected a single woman ever.

79.    Within these Facebook groups is an irrational and seething hatred toward men.

80.    And because plaintiff continues to be criminally cyberbullied, harassed and defamed

on said Facebook groups still today, this claim is made well with the statute of limitations.

- 21 -
Plaintiff Dr. Murrey's First Amended Complaint v. Facebook et al.

**FIFTH CAUSE OF ACTION**
**FALSE LIGHT**
*Against All Defendants*

81.     Plaintiff incorporates all allegations of this complaint and re-alleges them as though they were fully set forth herein.

82.     Defendants publicly disclosed information and material such as plaintiff's private phone number, his private address, his private pictures, his private text messages and court documents related to his previous actions that showed plaintiff in a false light. Defendants did this to make him seem like he had been under investigation for having murdered his girlfriend who in truth and actual fact passed from cancer in 2018. Defendants further did this to make it seem as if plaintiff had committed and had been charged for committed other crimes such as domestic abuse, extortion of women, filing of frivolous lawsuits, stalking, harassment, for having been "predator", "broke", etc.

83.     All of the above-noted images that defendants knowingly created by said disclosures are false and/or never occurred and would be highly offensive to a reasonable person in plaintiff's position.

84.     There is clear and convincing evidence that defendants knew that their disclosure would create a false impression about plaintiff and they acted with reckless disregard for the truth.

85.     Defendants were negligent in determining the truth of the information and whether a false impression would be created by this disclosure.

86.     Defendants clearly conspired to harm plaintiff. This is shown in how administrators and moderators both: 1) violated plaintiff's rights to free speech to defend himself by refusing to allow him to join said Facebook groups; and 2) coached their co-conspirators on how to cyberbully, harass, defame, etc. plaintiff, as when Sanchez would instruct her co-conspirators to use a coded language that included phrases such as, but not limited to: "Does anyone have any tea to spill?"

87.    Plaintiff was harmed and plaintiff sustained harm to his property: for instance, his car
has been vandalized several times and he has received several death threats, and his business and
professional relations were harmed.

88.    Defendants' conduct was a substantial factor in causing plaintiff's harm.

89.    Unless and until enjoined and restrained by order of this Court, defendants' wrongful
conduct will continue to cause irreparable harm to plaintiff, entitling him to seek declaratory relief.

90.    This action, if successful, will enforce an important right affecting the public interest
would confer a significant benefit, whether pecuniary or non-pecuniary, for the general public.
Because this case is brought for the purposes of enforcing important rights affect the public interest,
plaintiff also seeks recovery of attorney's fees and costs in prosecuting this action against defendants
under code of civil procedure § 1021.5 and other applicable law.

### SIXTH CAUSE OF ACTION
### INVASION OF PRIVACY
*Against All Defendants*

91.    Plaintiff incorporates all allegations of this complaint and re-alleges them as though
they were fully set forth herein.

92.    The California Constitution provides: "All people are by nature free and independent
and have inalienable rights. Among these are enjoying the defending life and liberty, acquiring
possession, and protecting property, and pursuing and obtaining safety, happiness and privacy." Cal.
Const. Art. I., § 1.

93.    Plaintiff had a legitimate expectation of privacy of his person, personal information
e.g. regarding his undisclosed full name, private telephone number, private address, private pictures,
private text messages, private communications, private medical decisions, private vaccine history,

1   private location of places where he works and socializes, and was entitled to the protection of this

2   private information against disclosure to unauthorized third parties.

3   94.     As noted above, California Penal Code § 653.2 makes it illegal to harass someone by

4   distributing, posting, emailing and/or disclosing any other person's information without his or her

5   consent, in particular when the likely effect would occur when said sending or distribution would

6   incite and/or harass a third party.

7

8   95.     Defendants allowed unauthorized and unknown third parties access to and

9   examination of plaintiff personal information noted above.

10  96.     Said unauthorized release of information to and examination by unauthorized third

11  parties of plaintiff's personal information is highly offensive to a reasonable person.

12

13  97.     The intrusion at issue concerned defendants' conspiracy to harm plaintiff by said

14  disclosure of information which was private and is entitled to be private. Plaintiff was reasonable in

15  his belief that such information would be kept private and would not be disclosed without his

16  authorization.

17

18  98.     Defendants' disclosure of plaintiff's private information constitutes an intentional

19  interference with plaintiff's interest in solitude and seclusion, either as to his person and/or as to his

20  private affairs and/or concerns and/or those of his friends and family, of a kind that would be highly

21  offensive to a reasonable person. Defendants' disclosure of private information of plaintiff without

22  his consent has led to severe stalking and harassment of plaintiff over the course of years and with no

23  end in sight.

24

25  99.     Defendants clearly conspired to harm plaintiff. This is shown in how administrators

26  and moderators both: 1) violated plaintiff's rights to free speech to defend himself by refusing to

27  allow him to join said Facebook groups; and 2) coached their co-conspirators on how to cyberbully,

28

- 24 -
Plaintiff Dr. Murrey's First Amended Complaint v. Facebook et al.

harass, defame, etc. plaintiff, as when Sanchez would instruct her co-conspirators to use a coded

language that included phrases such as, but not limited to: "Does anyone have any tea to spill?"

100.    Defendants acted with a knowing and negligent state of mind when they permitted

unauthorized third parties to gain access to plaintiff's personal information, because they knew and/or

reasonably should have known that their reckless disclosure of plaintiff's information would cause

plaintiff injury.

101.    As a proximate result of the above acts and omissions of defendants, plaintiff's

information was disclosed to third parties without authorization, causing plaintiff to suffer damages

in an amount according to proof.

102.    Unless and until enjoined and restrained by order of this Court, defendants' wrongful

conduct will continue to cause irreparable harm to plaintiff, entitling him to seek declaratory relief.

103.    This action, if successful, will enforce an important right affecting the public interest

would confer a significant benefit, whether pecuniary or non-pecuniary, for the general public.

Because this case is brought for the purposes of enforcing important rights affect the public interest,

plaintiff also seeks recovery of attorney's fees and costs in prosecuting this action against defendants

under code of civil procedure § 1021.5 and other applicable law.

### SEVENTH CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
*Against All Defendants*

104.    Plaintiff incorporates all allegations of this complaint and re-alleges them as though

they were fully set forth herein.

105.    The conduct of defendants' harm of plaintiff was and is outrageous and extreme, the

type of which cannot be tolerated in a civilized community or society.

106.    When defendants harmed plaintiff on Facebook and elsewhere by conspiring secretly

to post, comment, circulate, etc. false and harmful statements causing plaintiff to suffer various injuries, defendants intended to cause plaintiff emotional distress, or acted with reckless disregard of the probability of causing plaintiff emotional distress.

107.   Defendants clearly conspired to harm plaintiff. This is shown in how administrators and moderators both: 1) violated plaintiff's rights to free speech to defend himself by refusing to allow him to join said Facebook groups; and 2) coached their co-conspirators on how to cyberbully, harass, defame, etc. plaintiff, as when Sanchez would instruct her co-conspirators to use a coded language that included phrases such as, but not limited to: "Does anyone have any tea to spill?"

108.   As the actual and proximate result of the intentional acts of defendants, plaintiff suffered serious, lasting emotional distress, including but not limited to: emotional distress, mental and physical harm, post-traumatic stress syndrome, mortification and grief.

109.   Plaintiff has had to hire and retain physicians and health care professionals to treat him for the psychological and physical harm he has suffered. Plaintiff has suffered medical special damages and incurred medical bills and has suffered general damages of fright, pain, grief, mortification and harm, all in amounts to be proven at the time of the trial herein.

110.   Unless and until enjoined and restrained by order of this Court, defendants' wrongful conduct will continue to cause irreparable harm to plaintiff, entitling him to seek declaratory relief.

111.   This action, if successful, will enforce an important right affecting the public interest would confer a significant benefit, whether pecuniary or non-pecuniary, for the general public. Because this case is brought for the purposes of enforcing important rights affect the public interest, plaintiff also seeks recovery of attorney's fees and costs in prosecuting this action against defendants under code of civil procedure § 1021.5 and other applicable law.

## EIGHTH CAUSE OF ACTION
## INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

*Against All Defendants*

1   112.   Plaintiff incorporates all allegations of this complaint and re-alleges them as though

they were fully set forth herein.

113.   Plaintiff has and or had existing and prospective scholarly and business relationships

with various publishers, professors and clients in academia, education, science, computer software

and "tech" in general with the probability of economic benefit from those relationships. Plaintiff

suffered damages that includes, but is not limited to, the loss of millions of dollars of earnings in

regard to said scholarly writings, legal work and entrepreneurial ventures from 2019 through the

present.

114.   At all relevant times, defendants were aware of plaintiff's existing and reasonably

expected relationships with third parties and plaintiff's probability of future economic benefit from

those relationships.

115.   Defendants knew of and intentionally interfered with plaintiff's prospective economic

advantage by their above-noted conspiracy and their postings on and publications on Facebook and

elsewhere causing plaintiff to suffer various damages. Defendants expressly targeted plaintiff and his

prospects and attempted to dissuade those third parties from doing business with plaintiff through

threats and misrepresentations.

116.   Defendants continue to severely harm plaintiff's economic advantages by their severe

harassment and defamation and injury as noted above.

117.   As a direct and proximate consequence of this interference plaintiff's relationships

with third parties have been harmed and plaintiff has suffered actual damage to his economic

prospects. Plaintiff has lost prospects that would otherwise have continued but for defendants'

heinous acts.

118.    Unless and until enjoined and restrained by order of this Court, defendants' wrongful conduct will continue to cause irreparable harm to plaintiff, entitling him to seek declaratory relief.

119.    This action, if successful, will enforce an important right affecting the public interest would confer a significant benefit, whether pecuniary or non-pecuniary, for the general public. Because this case is brought for the purposes of enforcing important rights affect the public interest, plaintiff also seeks recovery of attorney's fees and costs in prosecuting this action against defendants under code of civil procedure § 1021.5 and other applicable law.

### NINTH CAUSE OF ACTION
### NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
*Against All Defendants*

120.    Plaintiff incorporates all allegations of this complaint and re-alleges them as though they were fully set forth herein.

121.    At all relevant times defendants were aware or should have reasonably been aware that if they did not act with due care, their acts would interfere with or disrupt plaintiff's prospective economic advantages. Defendants therefore owed plaintiff a duty to act with such care.

122.    Defendants breached that duty by engaging in wrongful conduct by their above-noted conspiracy and their postings on Facebook and elsewhere causing plaintiff to suffer various damages. Defendants expressly targeted plaintiff and his prospects and attempted to dissuade those third parties from doing business with plaintiff through threats and misrepresentations. Worse, defendants continue with their attacks on plaintiff e.g. on Facebook and elsewhere. Thus defendants clearly should have known their statements and extortion fees would interfere with plaintiff's prospective economic advantage.

123.    As a direct and proximate consequence of defendants' interference with plaintiff's

1 relationships with third parties, plaintiff has suffered actual damage to his trade and occupation.

2 Plaintiff has lost business clients who would have otherwise continued to conduct business with

3 plaintiff and/or would have begun to conduct business with plaintiff. Plaintiff suffered damages that

4 includes, but is not limited to, the loss of millions of dollars of earnings in regard to his scholarly

5 writings, legal work and entrepreneurial ventures from 2019 through the present.

6

7     124.    Unless and until enjoined and restrained by order of this Court, defendants' wrongful

8 conduct will continue to cause irreparable harm to plaintiff, entitling him to seek declaratory relief.

9     125.    This action, if successful, will enforce an important right affecting the public interest

10 would confer a significant benefit, whether pecuniary or non-pecuniary, for the general public.

11 Because this case is brought for the purposes of enforcing important rights affect the public interest,

12 plaintiff also seeks recovery of attorney's fees and costs in prosecuting this action against defendants

13 under code of civil procedure § 1021.5 and other applicable law.

14

15 <center>**TENTH CAUSE OF ACTION**
**CIVIL CONSPIRACY**
*Against All Defendants*</center>

16

17

18     126.    Plaintiff incorporates all allegations of this complaint and re-alleges them as though

19 they were fully set forth herein.

20     127.    Sometime beginning in 2019, if not before, defendants and other nonparties and each

21 of them knowingly and willfully conspired and agreed among themselves to discriminate against

22 plaintiff on his sex and his exercising of his right to freedom of speech.

23     128.    Defendants and nonparties engaged and continue to engage in a campaign of crimes

24 and civil torts against plaintiff that include cyberbullying, electronic harassment, severe defamation,

25 breaching of contracts, unfair competition, false light, invasion of plaintiff's privacy, inflicting

26

27

28

<center>- 29 -
Plaintiff Dr. Murrey's First Amended Complaint v. Facebook et al.</center>

1  emotion distress onto plaintiff and harming his right to earn a living all because plaintiff is male and

2  lawfully and legally exercising his right to freedom of speech.

3      129.    All of the actions of defendants set forth in the preceding paragraphs, incorporated

4  herein, were in violation of the rights of plaintiffs and committed in furtherance of the

5  aforementioned conspiracies and agreements. Moreover, each of the aforementioned defendants lent

6  aid and encouragement and knowingly financed, ratified and adopted the acts of the other. As a

7

8  proximate result of the wrongful acts herein alleged, plaintiff has suffered significant damage to be

9  determined at trial.

10     130.    These acts constituted malicious conduct which was carried on by said defendants

11  with willful and conscious disregard for plaintiffs' rights with the intention of making plaintiff's life

12  unbearable by effectively "canceling" him from the Internet and any and all online working and

13

14  socializing, in particular since unlawful monopoly platforms like Facebook currently and illegally

15  dominate the Internet traffic. Defendants intended to and causes said injury or otherwise caused

16  injury, and engaged in despicable conduct that subjected plaintiff to a cruel and unjust hardship so as

17  to justify an award of exemplary and punitive damages. Accordingly, punitive damages should be

18  awarded against defendants to punish them and deter them and other such persons from committing

19

20  such wrongful and malicious acts in the future.

21              **ELEVENTH CAUSE OF ACTION**
                **DECLARATORY RELIEF**
22                *Against All Defendants*

23

24     131.    Plaintiff incorporates all allegations of this complaint and re-alleges them as though

25  they were fully set forth herein.

26     132.    Because of the ongoing severe harm suffered by plaintiff, he requests a judicial

27

28

- 30 -
Plaintiff Dr. Murrey's First Amended Complaint v. Facebook et al.

declaration for defendants to remove and/or delete any and all defamatory and/or disparaging statements about plaintiff and/or statements misrepresenting plaintiff. This includes a request not only to remove forthwith the postings of Kelly Gibbons aka Kel Culb Gib, Liv Burger, Elly Shariat, Ainka Wiz, Anonymous Group Member 1, Amy Blalock, Vanessa Valdes, Lena Vanderford, Michal Ofek, Kelyn Rodriguez, any and all administrators and/or moderators and Facebook itself as well as all those mentioned and named in footnote number two (2) of this complaint, but also the pure fictional stories concocted by defendants Elly Shariat and Amy Blalock (See the concurrently filed in support of declaratory relief Decl. of Plaintiff Dr. Murrey, ¶ 3 & Ex. 1; and see ¶¶ 1-14).

133.    Further, plaintiff requests a judicial declaration prohibiting defendants from repeating and/or circulating said defamatory, disparaging and misrepresenting statements (Ibid.).

134.    Plaintiff requests a judicial declaration wherein the Court orders that defendants, their agents, all persons acting on their behalf or purporting to act on their behalf and all other persons in active concert and participation with them, be and hereby are, permanently enjoined from engaging in and/or performing directly, any of the following acts:

135.    Defendants are prohibited from initiating contact with plaintiff and/or any and all persons known to plaintiff and/or any and all associates of plaintiff. Any complaints defendants may have concerning plaintiff must be communicated to an associate of plaintiff who will be identified by plaintiff for defendants and for which plaintiff will provide to defendants (Ibid.).

136.    Defendants are prohibited from making the following defamatory and fictitious statements about plaintiff to third persons: plaintiff has been involved in a murder case; plaintiff has been charged with any crime; plaintiff has been convicted of any crime; plaintiff has committed any civil tort; plaintiff has any STDs; plaintiff is deceitful and/or acts fraudulently; plaintiff does not have

a Ph.D; plaintiff's writings and works lack credibility; plaintiff has taken an interest in, stalked and/or harassed any of them, etc. (Ibid.)

137.    Defendants are prohibited from posting about plaintiff whatsoever, including posting of his personal and private information, pictures, texts, telephone number, address, medical information, etc. (Ibid.)

138.    Defendants are prohibited from filming (whether by video camera or still photography) within fifty (50) feet of plaintiff and/or his premises (Ibid.).

139.    Defendants are prohibited from using Facebook and/or any Meta social media application and/or platform (including, but not limited to: Instagram, Whatsapp, etc.), and especially from participating in any Facebook group and/or any other social media application and/or platform and defendants are prohibited from using any and all online dating applications and/or platforms (Ibid.).

140.    Defendants are prohibited from reporting plaintiff to any third party whatsoever (Ibid.).

## PRAYER FOR RELIEF

Plaintiff prays for relief as follows:

1)  A permanent declaration enjoining and restraining defendants and all persons or entities in concert with them from committing any violations of law against plaintiff as set forth above;

2)  For economic damages, to be proven at trial;

3)  For general, special and compensatory damages, to be proven at trial;

4)  For exemplary and punitive damages to be proven at trial;

5)  For costs of suit and reasonable attorney fees herein incurred;

6) For pre- and post-judgment interest at the maximum allowable rate on any amounts

awarded;

7) For a tax-neutralization award;

8) For attorney fees;

9) For such other and further relief as the Court may deem just and proper.

Dated: 1 November 2023

Dr. Stewart Lucas Murrey
Plaintiff in *Pro Per*

**DEMAND FOR TRIAL BY JURY**

Plaintiff Dr. Stewart Lucas Murrey hereby demands a trial by jury, as to the law and the facts.

Dated: 1 November 2023

Dr. Stewart Lucas Murrey
Plaintiff in *Pro Per*

1   Dr. Stewart Lucas Murrey

    1217 Wilshire Blvd. # 3655

2   Santa Monica, CA 90403

    Tel.: (424) 278-3017

3   Email: 2@lucasmurrey.io

    Websites: sickoscoop.com/lucas, lucasmurrey.com

4

5   Plaintiff & Plaintiff In Pro Per

6

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

NOV 02 2023

David W. Slayton, Executive Officer/Clerk of Court

7        **SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

8                              **STANELY MOSK COURTHOUSE**

9

10  DR. STEWART LUCAS MURREY, an        )    Case No. 23STCV14890
    individual;                         )
11                                      )    Dept.: 61
          Plaintiff,                    )
12                                      )    **DECLARATION OF PLAINTIFF DR.**
    Vs.                                 )    **MURREY IN SUPPORT OF PLAINTIFF'S**
13                                      )    **REQUEST FOR DECLARATORY RELIEF**
                                        )
14  Kelly Gibbons a.k.a. Kel Culb Gib, an )
    individual; Liv Burger, an individual; Elly )  Complaint Filed: 27 June 2023
15  Shariat, an individual; Ainka Wiz, an individual; )  Hon. Gregory Keosian
    Anonymous Group Member 1, an individual; )
16  Amy Blalock, an individual; Vanessa Valdes, an )
    individual; Lena Vanderford, an individual; )
17                                      )
    Michal Ofek, an individual; Kelyn Rodriguez, an )
18  individual; and DOES 1 through 50, inclusive; )
                                        )
19        Defendants.                   )
                                        )
20                                      )
                                        )
21                                      )
                                        )
22  _____)

23

    I, Dr. Stewart Lucas Murrey, declare as follows:

24

25    1.  That I am the plaintiff in this action; that I am over the age of 18 years and that I have

26        personal knowledge of the facts contained in this declaration. If called upon to testify I could

27        and would testify competently as to the truth of the facts stated herein.

28

- 1 -
Declaration of Plaintiff Dr. Murrey

2.  I received my Doctorate of Philosophy (Ph.D) from Yale University in 2011. Since then I have published several books and articles and engaged in various creative projects, some of which include blockchain technology. Based upon these achievements I use the title doctor in front of my name.

3.  A true and correct copy of an excerpt of the countless postings and hundreds of comments in the Facebook group: "Are We Dating The Same Guy? Los Angeles" and other similar Facebook groups such as, but not limited to "Are We Dating The Same Guy? Orange County OC Irvine Huntington Beach" and "Do not date Him/Dating Advice Group For Women All Around The World" made by defendants Kelly Gibbons aka Kel Culb Gib, Liv Burger, Elly Shariat, Ainka Wiz, Anonymous Group Member 1, Vanessa Valdes, Lena Vanderford, Michal Ofek, Kelyn Rodriguez, et al. is hereto attached as Exhibit "1".

4.  Defendants wrote, published and circulated defamatory statements about me to millions of users on Facebook (i.e. Meta who also owns Facebook, Instagram, Whatsapp, etc.) during the past two-three (2-3) years that include the following statements: "Public records show" [that plaintiff has] involvement in [a] MURDER case of his ex wife", is "suspected of murder"; [h]as several domestic violence charges filed against him"; "[has] "[f]iled […] court cases against women […] trying to extort money from them"; "[h]as acted aggressively in court", "has STDs", has an "ex-wife who was killed", deserves to be "ARRESTED"; "claim[s] he is an attorney"; and that plaintiff is listed on the California court's public record as being a "vexatious litigant".

5.  All of these statements are false. I have no criminal record whatsoever, and thus there are no such public records. I have never been involved in a murder case, much less one involving my wife – and not only because I was never married. I had a girlfriend who passed from cancer in

March of 2018 and for whom I cared lovingly as best as I could up until she passed. I have never been charged, much less convicted of any crime my entire life. I have never filed a frivolous lawsuit, much less tried to extort anyone. I have never acted aggressive in court. I am in good health and do not have any sexually transmitted diseases ("STDs"). I have never claimed that I am an attorney; I am content as an independent scholar with a Ph.D from Yale University. And I am not a vexatious litigant, nor have I ever been labeled one by any court anywhere.

6. Defendants further wrote, published and circulated defamatory statements about me to millions of users on Facebook during the past two-three (2-3) years that include the following statements: Plaintiff has committed fraud; has been caught acting fraudulent; is deceitful; he *falsely claims to have a doctoral degree (Ph.D); and that plaintiff is the subject of a "murder suspicion article"*.

7. Again, all of these statements are false. Said events similarly never actually happened and/or are false. In truth and actual fact, I have not committed fraud nor acted deceitful. I am well-known for being an honest and fair person. I properly obtained a Ph.D from Yale University in 2011 before going on to write and publish several books and articles recognized by leading scholars around the world such as Noam Chomsky who celebrates my works on the backs of my books – and my writings are available at practically all libraries of every university and college within and beyond the United States. I am unaware of any "murder suspicion article" of which I am the subject, nor should I be, as this would also be yet another instance of libel and libelous defamation *per se*.

8. Any and all court documents posted and/or linked by defendants thus betrays defendants' malicious misrepresentation of court documents. In past cases wherein I was a party to any

- 3 -
Declaration of Plaintiff Dr. Murrey

action, opposing parties of earlier cases misrepresented and lied about countless facts i.e. they abused process to create a false picture. As defendants of this present action praise themselves as experts in law and give one another legal advice know, none of these past statements wherein I was unfairly attacked ever turned out to be true. Thus defendants maliciously post links to past court documents about me to misrepresent the past in their conspiracy to cause harm.

9. Defendants clearly conspired to harm me. This is seen, for instance, in the purely fictional story invented by the Facebook criminal Elly Shariat. Shariat falsely claimed that I was interested in meeting her; that I stalked her and a client of hers at a hotel until she was spontaneously "rescued" by "a British guy". This entire story is pure fiction. However, Shariat's Facebook criminal co-conspirators Kelly Gibbons aka Kel Culb Gib, Liv Burger, Anonymous Group Member, Vanessa Valdes, Lena Vanderford, Michal Ofek, Kelyn Rodriguez and countless other Facebook accounts intentionally "reacted" *as if* Shariat's sham story was true. The Facebook criminal Amy Blalock tells a similarly fictional story to harm me. <u>Defendants invented said fictional stories out of malice to create a fake network effect with millions of users to severely harm plaintiff.</u> All the stories referring to plaintiff in said Facebook groups are fictional (as in Shariat's, Blakock's and many others' stories) and/or, at best, are maliciously taken out of context to severely harass and harm me.

10. Defendants include hundreds of Facebook accounts (that further also include administrators and moderators), and many of these said Facebook accounts are anonymous and/or may well be fake.

11. Defendants posted hundreds of comments and sub-comments and often included private pictures of myself and my private information all of which without my consent.

- 4 -
Declaration of Plaintiff Dr. Murrey

12. The scale of the hundreds of Facebook accounts sometimes each posting hundreds of comments is suspiciously large in scope. To defend myself and exercise my right to free speech I diligently tried to join said Facebook groups on 26 February 2023 and again on 28 February 2023 and I have tried since this last date as well into the present. Facebook group administrators and moderators et al. refused to ever let me join said Facebook groups to defend my reputation and livelihood. I also diligently reported the above-noted serious crimes and civil torts to Facebook. Specifically, I contacted the "Reporting Abuse" division of Facebook's "Help Center" and Facebook's legal team in early March 2023 and again on 9 April 2023. Facebook failed and continues to fail to respond whatsoever, much less stop said ongoing serious criminal harm. Further, I contacted the LAPD and FBI and filed reports with both about said crimes and since then hundreds of comments have been removed and/or deleted from Facebook. I also properly gave Facebook notice on 31 March 2023 (and after said date) to preserve any and all data and/or meta-data relevant to the above-noted Facebook groups along with any other reasonably suspected data and meta-data relevant to this and any other related actions that Meta has collected.

13. Among defendants' anonymous assaults is their threat to stalk and harass me, as when Liv Burger suggests that she and her Facebook criminal co-conspirators should "wear shirts with [a] picture of his ex who was killed". In response to Burger, defendant and Facebook criminal Anonymous Group Member 1 states: "Some of us can dress like CIA agents and get him spooked out..." As this is unusual, it is critical to make this clear. What is being said by defendants is that their tactic for harm is: 1) "wear[ing] shirts with [a] picture of [my] ex who was killed" and "dress[ing] like CIA agents". The reason the above-noted sinister tactic is worth mentioning is because defendants further react aggressively to my civil criticisms of

unlawful national security state agencies like the CIA. For instance, defendants' illegally stole

some of my copyrighted writings and images from my personal website wherein I exercise

my right to free speech and offer reasonable criticisms of the CIA. Defendants then

unlawfully re-published my writings on Facebook without my consent and with the clear

intent to disparage, though defendants failed to offer any rationale for their position. I have

contacted Facebook. As usual Facebook refuses to also remedy their users' crimes against my

intellectual property ("IP") rights and violation of my rights in general, including even my

copyright rights. And of course defendants are bizarrely obsessed with something called "Q-

anon" that seems to be a CIA psychological operation ("psyop") to disparage anyone who

exercises free thought and speech and with which plaintiff has never had any relation.

14. The severe harm and damages caused by defendants and the afore-mentioned Facebook

conspiracy to harm me make my request for declaratory relief legitimate.


I declare under penalty of perjury under the laws of the State of California that the foregoing is

true and correct.

Executed on 1 November 2023 at Los Angeles, California.


Dr. Stewart Lucas Murrey, Declarant

- 6 -
Declaration of Plaintiff Dr. Murrey

**EXHIBIT 1**





**Are We Dating The Same Guy? |
Los Angeles**

Private group · 42.6K members

**Kel Culb Gib**
August 3, 2022 😊

▶ ▶ ▶ Tea in comments if approved- but I'm curious if anyone has met "Lucas" in person
(I'm not sure if that's even his real name)▶ ▶ ▶



👍😮 41                                              307 comments

👍 Like            💬 Comment            ◉ Send







**Anonymous member**
November 9, 2022

Any info on Lucas ?



2                                              49 comments





49 comments



**Do not date Him / Dating Advice Group
For Women All Around The World**

• • •

Group member · Oct 11 · 🔳

I posted Lucas (who also goes by the name Stewart)
in my Los Angeles group after my gut told me *twice*
to cancel on him and I'm so glad I did.

After posting, I discovered through other group
members that this man is DANGEROUS. He has at
least 11 lawsuits out against women he ha... See more







# Are We Dating The Same Guy? | Orange County OC / Irvine / Huntington Beach

🔒 Private group · 16.8k members



21 comments

Send

**EXHIBIT B**

**Case Number:** 23STCV14890   **Hearing Date:** May 29, 2024   **Dept:** 61
STEWART LUCAS MURREY vs KELLY GIBBONS, et al.

TENTATIVE

Defendant Elmira Shariat's Motion to Quash Service of Summons is GRANTED. Moving party to provide notice.
Defendant Amy Blalock's Special Motion to Strike (Anti-SLAPP) the First Amended Complaint is GRANTED as to the third, fourth, and sixth through eleventh causes of action, and DENIED as to the first, second, and fifth causes of action for defamation and false light. Moving party to provide notice.
Defendant Michal Ofek's Special Motion to Strike (Anti-SLAPP) the First Amended Complaint is GRANTED. Moving party to provide notice.

DISCUSSION
MOTION TO QUASH SERVICE OF SUMMONS
Code of Civil Procedure section 418.10, subd. (a)(1) states: "A defendant, on or before the last day of his or her time to plead or within any further time that the court may for good cause allow, may serve and file a notice of motion for one or more of the following purposes . . . (1) To quash service of summons on the ground of lack of jurisdiction of the court over him or her."
"'[C]ompliance with the statutory procedures for service of process is essential to establish personal jurisdiction." (Ellard v. Conway (2001) 94 Cal.App.4th 540, 544.) Mere notice of litigation does not confer personal jurisdiction absent substantial compliance with the statutory requirements for service of summons. (MJS Enterprises, Inc. v. Superior Court (1984) 153 Cal.App.3d 555, 557.)
While courts are not required to accept self-serving evidence — such as declarations that one was not served — submitted to support a motion to quash, facial defects of the proof of service will rebut its presumption of proper service. (American Exp. Centurion Bank, supra, 199 Cal.App.4th at p. 390.) The burden is on a plaintiff to prove facts showing that service was effective. (Summers v. McClanahan (2006) 140 Cal.App.4th 403, 413.)
Defendant Elly Shariat (Shariat) moves to quash service of summons upon her on the grounds that the purported personal service made against her was not actually made. Although a proof of service filed on December 27, 2023, states that she was personally served on December 22, 2023, at 6:24 p.m., at an address on South Palm Canyon Drive in Palm Springs, Shariat

denies that she was present at the location at the time served, and presents a photo with geolocation data taken on her phone at a location near Monrovia at 6:10 p.m. (Motion Exh. B.)

Plaintiff Stewart Lucas Murrey (Plaintiff) argues that Shariat was served by a registered process server as indicated in the proof of service, and that the evidence Shariat presents in her motion is unauthenticated by any declaration. (Opposition at pp. 4–7.) Plaintiff presents his own declaration, stating that he "professionally obtained" the address in question. (Murrey Decl. ¶ 16.) Plaintiff also presents the declaration of the process server, Daniel Rolfe, who states he thrice attempted service at the address in question: once on December 18, 2023, when Shariat answered the door and "fraudulently acted as if she was someone else to elude service" (Rolf Decl. ¶ 6); once on December 20, 2023, when no one answered the door but Rolfe could hear the floor creaking and saw the window was open (Rolfe Decl. ¶ 8); and finally on December 22, 2023, when Rolfe spoke to the same woman he saw before, who refused to show her ID, at which point he "drop served" her. (Rolfe Decl. ¶ 9.)

Shariat in reply belatedly presents a declaration stating that at the time of alleged service, she was 100 miles away at her partner's home, as indicated by the geolocation data accompanying the phone-image presented in her motion. (Shariat Decl. ¶ 4.) Shariat states that, in response to Plaintiff's opposition, she travelled to Palm Springs on May 18, 2024, and attempted to contact the resident of the appropriate unit without success. (Shariat Decl. ¶ 5.) She does, however, present the declaration of Bryce Hansen, the resident of the unit across from the unit served, who states that Shariat is not the occupant of the unit in question, and that he had never met Shariat until she contacted him on May 18, 2024. (Shariat Decl. ¶ 5, Exh. C.)

The evidence presented by both parties uniformly supports the proposition that Shariat was not served. The sole evidence that Plaintiff presents for the proposition that Shariat resides at the unit in question is that portion of his declaration stating that he "professionally obtained" her address, without elaboration. (Murrey Decl. ¶ 16.) The process server states that he served the papers upon the address, apparently in accordance with Plaintiff's instructions. (Rolfe Decl. ¶ 5.) The resident of the unit denied that they were Shariat, and Plaintiff presents no evidence to suggest otherwise. The process server does not claim that the person served matched the photos that Plaintiff provided him. (Rolfe Decl. ¶ 7.) Shariat instead presents evidence that she was some hundred miles away from the unit in question on the

evening of service, and further that she is not the occupant of the unit in question. (Shariat Decl. ¶¶ 4–5, Exh. C. Plaintiff argues in opposition that Shariat is falsifying evidence and perjuring herself in an effort to evade this court's jurisdiction. Plaintiff, however, presents no evidence on this point. It is more likely that Plaintiff simply has the wrong address.

The motion to quash is GRANTED.

SPECIAL MOTIONS TO STRIKE

In 1992 the Legislature enacted Code of Civil Procedure section 425.16 as a remedy for the "disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (Code Civ. Proc., §425.16, subd. (a); Wilcox v. Superior Court (1994) 27 Cal.App.4th 809, 817.) The lawsuits are commonly referred to as "SLAPP" lawsuits, an acronym for "strategic lawsuit against public participation." (Equilon Enterprises, LLC v. Consumer Cause, Inc. (2002) 29 Cal.4th 53, 57, fn. 1.) A defendant opposing a SLAPP claim may bring an "anti-SLAPP" special motion to strike any cause of action "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue . . . ." (Code Civ. Proc., § 425.16, subd. (b)(1).) An anti-SLAPP motion may be addressed to individual causes of action and need not be directed to the complaint as a whole. (Shekhter v. Financial Indemnity Co. (2001) 89 Cal.app.4th 141, 150.)

In ruling on an anti-SLAPP motion, a trial court uses a "summary-judgment-like procedure at any early stage of the litigation." (Varian Medical Systems, Inc. v. Delfino (2005) 35 Cal.4th 180, 192.) This is a two-step process. First, the defendants must show that the acts of which the plaintiff complains were taken "in furtherance of the [defendant]'s right of petition or free speech under the United States of California Constitution in connection with a public issue." (Code Civ. Proc., §425.16 subd. (b)(1).) Next, if the defendant carries that burden, the burden shift to the plaintiff to demonstrate a probability of prevailing on the claim. (Code Civ. Proc., § 425.16 subd. (b)(3).)

In making both determinations the trial court considers "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (Code Civ. Proc., § 425.16, subd. (b)(2); Equilon Enterprises, supra, 29 Cal.4th at p. 67.)

A. PROTECTED ACTIVITY

The anti-SLAPP statute defines protected activities as:

(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

(Code Civ. Proc., § 425.16, subd. (e), emphasis added.)

Defendants Amy Blalock and Michal Ofek argue that the claims alleged against them arise from protected activity, namely "written or oral statement[s] or writing[s] made in a place open to the public or a public forum in connection with an issue of public interest," as well as "any other conduct in furtherance of the exercise of the constitutional right of free speech in connection with a public issue or an issue of public interest." (Motion at p. 4.) Defendants base this contention on the nature of the conduct alleged against them, which consists of posts made in a Facebook group called "Are We Dating the Same Guy – Los Angeles," evidently a Facebook group in which users post or inquire with other users about men whom they have dated or are looking into dating. (Motion at p. 2; FAC ¶ 4.)

Plaintiff alleges the following misconduct collectively against Valdes and other defendants:

Defendants wrote, published, and circulated defamatory statements about plaintiff to millions of users on Facebook . . . that include the following states: "Public records show" [that plaintiff has] involvement in [a] MURDER case of his ex wife," is "suspected of murder"; [h]as several domestic violence charges filed against him"; has "filed court cases against women trying to extort money from them"; "[h]as acted aggressively in court"; "has STDs"; has an "ex-wife who was killed"; deserves to be "ARRESTED"; "claim[s] he is an attorney"; and that plaintiff is listed on the California court's public record as being a vexatious litigant."

(FAC ¶ 8.)

It is unclear from the pleading which of the above statements Plaintiff attributes to which defendant. In opposition to the present motions, Plaintiff presents the

following statements made by Defendant Blalock on the Facebook group in question, in reference to Plaintiff:

Back in 2017, I matched with him and before we went on a date my coworker was like – you better look him up. So I did, saw that he is likely a sociopath. So naturally, I went on a date with him. [laughing emoji] secretly it was so I could record him bc my life needs more drama.
I have a work phone and a personal phone. I put them stacked on the bar in front of me and one of them was recording. About 5 minutes into sitting there, he grabbed both of my phones and was like 'let me see these' and I was like OH SHIT, I'm caught but luckily I got the phones away from him. Like who does that?
Anyway, after like one drink, he's asked me to join him at his friend's house. Which I declined. It's weird how he tries to get you to leave a place with him.
(Murrey Decl. Exh. 12.)

A comment responding to Blalock's story said, "NEVER GO TO THE SECOND LOCATION! Lol." (Ibid.) Blalock responded:
what happens at the second location?!!!! I'm afraid if there's any missing women in LA – he has something to do with it. The weird part is – he knows all this info is out there about him. Why does he stay in LA / Lake Arrowhead?!
(Ibid.)

In another statement, evidently made in regards to a proposed documentary about Plaintiff, Blalock stated:

We could all share our stories on the documentary like The Tinder Swindler.
Then again, I think this would boost his ego more.
Can't win with that guy.
(Murrey Decl. Exh. 13.)

In another comment, in response to a chain of comments advising people not to date Plaintiff, Blalock also stated:
No no no no no. Read the other post with comments. Went out with him. He's going to end up on Dateline one day. Not sure why he stays in LA – so many women know he's a sociopath. I also know he uses fake profiles to access sites like this that talk about him. He's so narcissistic.

(Murrey Decl. Exh. 14.)

As to Defendant Ofek, Plaintiff presents one comment Ofek made in response to
another post inquiring whether anyone was interest in "figuring out a mini-doc vibe
about that Lucas fellow" with the reply, "you're hilarious, I love you boo." (Murrey
Decl. Exh. 10.)

Plaintiff cites another statement by Ofek, in response to a picture listing a number of
allegations against Plaintiff, asking "what's the name of this group" in which the
allegations were posted, and stating that she "couldn't find the group" named by
another commenter. (Murrey Decl. Exh. 10.)

Plaintiff cites another post where Ofek responded to a comment that asked, "is it
defamation if it's true???" with the statement, "truth is a viable defense [smile
emoji]." (Murrey Decl. Exh. 10.)

Plaintiff states that he recalls Ofek with another defendant attempting to film him
one evening in May 2023. (Murrey Decl. ¶ 35.)

The allegations of wrongdoing against Ofek and Blalock are similar in character to
the allegations made against Defendant Vanessa Valdes, which were the subject of a
prior anti-SLAPP motion granted by this court on April 8, 2024. The analysis of that
ruling is applicable to both Blalock and Ofek here.

From the above, there is ample basis to conclude that Plaintiff's suit against Valdes
arises from protected activity, both through statements made in a public forum
concerning an issue of public interest and through conduct in furtherance of the
exercise of the constitutional right of free speech in connection with a public issue
or an issue of public interest. Valdes's statements were made in an online Facebook
group to what Plaintiff's FAC characterizes as an audience of "millions." (FAC ¶
10.) Similar online postings have been held to involve a "classic public forum."
(Chaker v. Mateo (2012) 209 Cal.App.4th 1138, 1146.)

Plaintiff's objection that he was not permitted to join the group in question does not obviate the
character of public forum. (Opposition at pp. 10–11.) Smaller scale, closed publications have
been held to amount to public fora. Statements made in a newsletter of limited circulation to a

small neighborhood of homeowners and characterized as "a mouthpiece for a small group of homeowners who generally would not permit contrary viewpoints to be published in the newsletter" has likewise been held to be a public forum. (Damon v. Ocean Hills Journalism Club (2000) 85 Cal.App.4th 468, 476.) A federal court applying this precedent ruled that even a private Facebook group of 14,900 members could constitute a public forum under the anti-SLAPP statute. (Hicks v. Bradford (C.D. Cal., Dec. 13, 2022, No. CV217330DMGGJSX) 2022 WL 20689541, at *4.) Thus the statements at issue here were made in a public forum.

The evidence and pleadings also establish that Valdes's posts involved a matter of public interest: women's security against male violence and harassment. Plaintiff's allegations disclose as much. He states that these and other Facebook groups "allegedly exist to protect women." (FAC ¶ 59.) In his original Complaint, he found fault with Defendants "postur[ing] about protecting women" in their posts. (Complaint ¶ 30.) He contended that the posters "aggressively promote themselves . . . as champions and protectors of women." (Complaint ¶ 31.) . . . Although Plaintiff contends that these representations are insincere, this alleged insincerity would not remove the subject of discussion from the public interest. Courts have held comments made on a "Ripoff Report Web site" about a business owner's "character and business practices," concerned a public interest under the anti-SLAPP statute. (Chaker, supra, 209 Cal.App.4th at p. 1146.) Valdes' comments about Plaintiff's harassing conduct, on a forum directed to warning women against men who engage in such conduct, concerned at least as great a public interest.
(4/9/2024 Ruling.)

Plaintiff claims that his only allegations against Ofek stem from her role in the conspiracy against him, not from any statements she made on the Facebook group, and that he alleges no defamation claims against her. (Opposition at p. 6.) This is false, however, as all claims in the FAC are alleged against all Defendants, including Ofek, and none of them arises from any claimed instance of video recording.

Thus the present case against Defendants arises from protected activity within the meaning of the anti-SLAPP statute.

## B. LIKELIHOOD OF PREVAILING

After a defendant meets their burden of showing that the gravamen of the complaint involves protected activity, the plaintiff must then "demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." (Matson v. Dvorak (1995) 40 Cal.App.4th 539, 548.) A defendant can meet its burden if it can establish that the plaintiff cannot overcome an affirmative defense. (Birkner v. Lam (2007) 156 Cal.App.4th 275 at 285.)

"[A] plaintiff cannot simply rely on his or her pleadings, even if verified. Rather, the plaintiff must adduce competent, admissible evidence." (Grenier v. Taylor (2015) 234 Cal.App.4th 471, 480.)

"Legally sufficient" means that the cause of action would satisfy a demurrer. (Dowling v. Zimmerman (2001) 85 Cal.App.4th 1400, 1421.) The evidentiary showing must be made by competent and admissible evidence. (Morrow v. Los Angeles Unified School District (2007) 149 Cal.App.4th 1424, 1444.) Proof, however, cannot be made by declaration based on information and belief. (Evans v. Unkow (1995) 38 Cal.App.4th 1490, 1497–1498.) The question is whether the plaintiff has presented evidence in opposition to the defendant's motion that, if believed by the trier of fact, is sufficient to support a judgment in the plaintiff's favor. (Zamos v. Stroud (2004) 32 Cal.4th 958, 965.)

1. Ofek
2.

Here, Plaintiff does not attempt to argue for the legal or factual sufficiency of any claims against Ofek, save for the sixth cause of action for invasion of privacy, the eighth cause of action for intentional infliction of emotional distress, and the tenth cause of action for civil conspiracy. (Opposition at pp. 7–13.) As no effort has been made to establish the legal and factual sufficiency of Plaintiff's other claims against Ofek, the motion is properly GRANTED as the outset to all causes of action other than the sixth, eighth, and tenth causes of action.

As to the remaining claims, Plaintiff argues that Ofek has stalked him within the meaning of Penal Code § 646.9, which applies criminal penalties against "[a]ny person who willfully, maliciously, and repeatedly follows or willfully and maliciously harasses another person and who makes a credible threat with the intent

to place that person in reasonable fear for his or her safety, or the safety of his or her immediate family." (Penal Code § 646.9, subd. (a).) Plaintiff also claims that Ofek's actions amount to misappropriation of his likeness for a proposed documentary. (Opposition at pp. 9–10.)

These arguments are weak. The factual predicate for Ofek's involvement in either of these activities is an instance in May 2023 in which Ofek and Defendant Kelly Gibbons filmed Plaintiff as he exited a hotel. (Murrey Decl. ¶ 19.)1 This conduct forms no part of the allegations in Plaintiff's pleadings, and is neither "repeated" nor a "credible threat" of violence within the stalking statute. (Penal Code § 646.9.) And although Plaintiff identifies discussions in the Facebook postings about a documentary, no such documentary or other film has actually been produced. Although Plaintiff claims that Gibbons shared Plaintiff's private information, he presents no evidence to support that any such disclosure has occurred, let alone evidence that Ofek participated or conspired in its occurrence. (Opposition at pp. 11–12.)

Plaintiff has failed to establish the legal or factual sufficiency for any claim against Ofek, and the motion is therefore GRANTED in its entirety.

2. Blalock

Defamation "involves (a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage." (Price v. Operating Engineers Local Union No. 3 (2011) 195 Cal.App.4th 962, 970.) A false light claim based upon the same facts as a defamation claim "must meet the same requirements." (Hawran v. Hixson (2012) 209 Cal.App.4th 256, 277.) "The sine qua non of recovery for defamation ... is the existence of falsehood." [Citation.] Because the statement must contain a provable falsehood, courts distinguish between statements of fact and statements of opinion for purposes of defamation liability. Although statements of fact may be actionable as libel, statements of opinion are constitutionally protected." (ZL Technologies, Inc. v. Does 1-7 (2017) 13 Cal.App.5th 603, 624.)

Plaintiff has presented evidence to show the legal and factual sufficiency of his first, second, and third causes of action for defamation and false light against Blalock. "[F]alse statements charging the commission of crime, or tending directly to injure a plaintiff in respect to his or her profession by imputing dishonesty or questionable

professional conduct are defamatory per se." (Burrill v. Nair (2013) 217 Cal.App.4th 357, 383 [158 Cal.Rptr.3d 332, 351] disapproved on other grounds in Baral v. Schnitt (2016) 1 Cal.5th 376.) Plaintiff has presented a statement by Blalock that are reasonably interpreted as charging the commission of a crime: "if there's any missing women in LA – he has something to do with it." (Murrey Decl. Exh. 12.) Plaintiff testifies that this statement is false, as he has "never murdered anyone." (Murrey Decl. ¶ 14.)

Accordingly, the motion is DENIED as to the first, second, and fourth causes of action for defamation and false light.

Plaintiff has not, however, presented any evidence to support his remaining claims against Blalock. There is no invasion of privacy claim against Blalock, as Plaintiff presents no evidence that any alleged date with Blalock — the one detail she disclosed — constituted a "private fact." (Morrow v. Los Angeles Unified School Dist. (2007) 149 Cal.App.4th 1424.) And although Blalock claimed in her Facebook post that she attempted to secretly record Plaintiff on this date, Plaintiff himself denies that this date ever occurred. (Opposition at pp. 9–10.)

Nor is there a factual basis for a claim of intentional infliction of emotional distress against Blalock. "The elements of a prima facie case for the tort of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." (Miller v. Fortune Commercial Corporation (2017) 15 Cal.App.5th 214, 228–29.) Here, Plaintiff does not present any evidence or testimony concerning the emotional distress he claims to have suffered as a result of Blalock's posts. (See Wong v. Jing (2010) 189 Cal.App.4th 1354, 1376 ["Severe emotional distress means emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it."], internal quotation marks omitted.)

The cause of action for sex-based discrimination under Civil Code § 51, concerns Defendants' alleged failure to permit Plaintiff to join their Facebook group to challenge their alleged defamatory statements. (FAC ¶¶ 57–68.) But even if a

Facebook group is construed as a "business establishment" under Civil Code § 51, subd. (b), there is no evidence that Blalock had any role in denying him access to the group. Nor has Blalock engaged in "gender violence" against Plaintiff within the meaning of Civil Code § 52.4, as might support Plaintiff's fourth cause of action. (See Civ. Code § 52.4, subd. (c) [defining "gender violence" to mean either a criminal offense that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another" or "[a] physical intrusion or physical invasion of a sexual nature under coercive conditions"].)

Nor is there any evidence that Blalock has intentionally or negligently interfered with Plaintiff's economic relationships. "For intentional interference, the plaintiff must plead and prove: (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship." (Golden Eagle Land Investment, L.P. v. Rancho Santa Fe Assn. (2018) 19 Cal.App.5th 399, 429.) A claim for negligent interference is similar, but relies on a "defendant's failure to act with reasonable care" rather than intentional acts. (See Nelson v. Tucker Ellis, LLP (2020) 48 Cal.App.5th 827, 844 fn. 5.) Here, Plaintiff has produced no evidence that Blalock had any knowledge of any of Plaintiff's economic relationships, or that any such economic relationships were disrupted as a result of her conduct.
Finally, Plaintiff has not attempted to establish the factual or legal sufficiency of his eleventh cause of action declaratory relief against Blalock. Nor can Plaintiff pursue an independent tenth cause of action for conspiracy, because "[c]ivil conspiracy is not an independent tort." (City of Industry v. City of Fillmore (2011) 198 Cal.App.4th 191, 211.)

Accordingly, Blalock's motion is GRANTED as to the third, fourth, and sixth through eleventh causes of action, and DENIED as to the first, second, and fifth causes of action for defamation and false light.

**EXHIBIT C**

Dr. Stewart Lucas Murrey
1217 Wilshire Blvd. # 3655
Santa Monica, CA 90403
Tel.: (424) 278-3017
Email: 2@lucasmurrey.io
Websites: sickoscoop.com/lucas,
lucasmurrey.com

30 March 2024

*Via Mail and Email (Sent as a Scanned Copy of the Signed Document)* to:

| | | |
|---|---|---|
| Kelly Gibbons aka Kel Culb Gib aka kcg | Michal Ofek | Olivia (Liv) Burger |
| 2121 Crenshaw Blvd. | 9015 Burton Way # 304 | 8110 W. 83rd St. # 1 |
| Los Angeles, CA 90016 | Los Angeles, CA 90048-3737 | Playa Del Rey, CA 90293 |
| Tel.: (803) 360-4816 | Tel.: (310) 709-1637 | (231) 590-6751 |
| | Email: ofek.michal@gmail.com | Email: oliviaburger08@gmail.com |
| | | |
| Vanessa Valdes | Amy Blalock | Elly (Elmira) Shariat |
| 1825 Ivar Ave. Apt. 312 | 455 Nectar Rd. | 2160 S. Palm Canyon Dr. # 12 |
| Los Angeles, CA 90028 | Ty Ty, GA 31795 | Palm Springs, CA 92264 |
| Tel.: (818) 632-9258 | Tel.: (310) 569-6182 | |
| Email: vvaldes8@yahoo.com | Email: amyblalock@gmail.com | |

Re:    Dr. Stewart Lucas Murrey v. Kelly Gibbons, et al.
Case No. 23STCV14890
**Defendant Ms. Blalock's Failure to Respond to Dr. Murrey's Form Interrogatories, Special Interrogatories, Requests for Admisisons and Requests for Production of Documents**

Dear Ms. Blalock,

Please be advised that because you have failed to timely respond to the Form Interrogatories, Special Interrogatories, Requests for Production of Documents and Requests for Admission with which you have been served, you have waived all objections to said discovery, including claims of privilege and "work product" protection (Code of Civ. Proc. § 2030.290, subd. (a), 2031.300, subd. (a); see *Leach v. Superior Court* (1980) 111 Cal.App.3d 902, 905-906). Further, if a party to whom discovery was directed fails to serve a timely response, the propounding party may move for an order compelling responses and for a monetary sanction (Code of Civ. Proc. § 2030.290, subd. (b) (Interrogatories), Code of Civ. Proc. § 2031.300, subd. (b) (Document demands).

Please provide complete and thorough responses without any objections to the above-noted discovery properly propounded on you on forthwith, or I will be forced to seek court intervention and any and all appropriate sanctions.

_/s/ Stewart Lucas Murrey_____
Dr. Stewart Lucas Murrey
Plaintiff & Plaintiff in Pro Per

1

**PROOF OF SERVICE**
STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the county of Los Angeles, State of California, I am over the age of 18 and not a party to this action. My business address is: 1217 Wilshire Blvd. # 3655, Santa Monica, CA 90403.

On 30 March 2024 I served the foregoing documents in the matter of Dr. Murrey v. Gibbons et al. (Case No. 23STCV14890) described as: Plaintiff's Meet & Confer re: Defendant Blalock's Failure to Respond to Form and Special Interrogatories and Requests for Admissions and Production of Documents:

| | | |
|---|---|---|
| Kelly Gibbons aka Kel Culb Gib aka kcg | Michal Ofek | Olivia (Liv) Burger |
| 2121 Crenshaw Blvd. | 9015 Burton Way # 304 | 8110 W. 83rd St. # 1 |
| Los Angeles, CA 90016 | Los Angeles, CA 90048-3737 | Playa Del Rey, CA 90293 |
| Tel.: (803) 360-4816 | Tel.: (310) 709-1637 | (231) 590-6751 |
| | Email: ofek.michal@gmail.com | Email: oliviaburger08@gmail.com |
| | | |
| Vanessa Valdes | Amy Blalock | Elly (Elmira) Shariat |
| 1825 Ivar Ave. Apt. 312 | 455 Nectar Rd. | 2160 S. Palm Canyon Dr. # 12 |
| Los Angeles, CA 90028 | Ty Ty, GA 31795 | Palm Springs, CA 92264 |
| Tel.: (818) 632-9258 | Tel.: (310) 569-6182 | |
| Email: vvaldes8@yahoo.com | Email: amyblalock@gmail.com | |

By Mail: _XXX_.

____. I deposited such envelopes in the mail at Los Angeles, California, 90036, the envelope was mailed with first class postage thereon, fully prepaid.

____, I am readily familiar with this firm's practice for collecting and processing correspondence for mailing. Under that practice the above described documents would be deposited in the US Mail on that same day with postage thereon, first class, fully prepaid, in the ordinary course of business. I am aware that on motion of the party affected that service is presumed invalid if the postage meter date or postmark is more than one day after the date stated for deposit in the mail thereon.

By Personal Delivery, Handing a copy to: _____, I caused to be delivered the above described documents, by hand to the address shown above on the date stated herein.

By Fax Transmission: ____, I caused above-described documents to be sent by Facsimille transmission to the following Attorneys/Parties at the following FAX Telephone numbers: _____.

By Email: _XXX_.

I declare under penalty of perjury, under the laws of the State of California that the foregoing is true and correct.

Executed on 30 March 2024

By:   _/s/ Alexander J. Petale_____
Alexander J. Petale, Esq.

# EXHIBIT D

CIV-050

**- DO NOT FILE WITH THE COURT -**
**- UNLESS YOU ARE APPLYING FOR A DEFAULT JUDGMENT UNDER CODE OF CIVIL PROCEDURE § 585 -**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name and Address)*:<br>Dr. Stewart Lucas Murrey<br>1217 Wilshire Blvd. # 3655<br>Santa Monica, CA 90403<br>Web: sickoscoop.com/lucas<br><br>TELEPHONE NO.: (424)278-3017<br><br>ATTORNEY FOR *(name)*: In Pro Per | FOR COURT USE ONLY<br><br>**RECEIVED**<br><br>DEC 20 2023<br><br>STANLEY MOSK COURTHOUSE |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 N. Hill St.
MAILING ADDRESS: 111 N. Hill St.
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME: Los Angeles - Central

PLAINTIFF: Dr. Stewart Lucas Murrey
DEFENDANT: Kelly Gibbons aka Kel Cutb Gib, et al.

| STATEMENT OF DAMAGES<br>(Personal Injury or Wrongful Death) | CASE NUMBER:<br>23STCV14890 |
|---|---|

To *(name of one defendant only)*: Amy Blalock
Plaintiff *(name of one plaintiff only)*: Dr. Stewart Lucas Murrey
seeks damages in the above-entitled action, as follows:

| | | AMOUNT |
|---|---|---|
| 1. | **General damages** | |
| | a. [X] Pain, suffering, and inconvenience ............................... | $ 200,000.00 |
| | b. [X] Emotional distress. ............................................... | $ 200,000.00 |
| | c. [ ] Loss of consortium ............................................... | $ |
| | d. [ ] Loss of society and companionship *(wrongful death actions only)* ... | $ |
| | e. [ ] Other *(specify)* ............................................... | $ |
| | f. [ ] Other *(specify)* ............................................... | $ |
| | g. [ ] Continued on Attachment 1.g. | |
| 2. | **Special damages** | |
| | a. [X] Medical expenses *(to date)* ................................... | $ 100,000.00 |
| | b. [X] Future medical expenses *(present value)* ...................... | $ 100,000.00 |
| | c. [ ] Loss of earnings *(to date)* ................................... | $ |
| | d. [ ] Loss of future earning capacity *(present value)* .............. | $ |
| | e. [ ] Property damage ............................................... | $ |
| | f. [ ] Funeral expenses *(wrongful death actions only)* .............. | $ |
| | g. [ ] Future contributions *(present value) (wrongful death actions only)* | $ |
| | h. [ ] Value of personal service, advice, or training *(wrongful death actions only)* | $ |
| | i. [ ] Other *(specify)* ............................................... | $ |
| | j. [ ] Other *(specify)* ............................................... | $ |
| | k. [ ] Continued on Attachment 2.k. | |
| 3. | [X] **Punitive damages:** Plaintiff reserves the right to seek punitive damages in the amount of *(specify)*.. $ 2,000,000.00<br>when pursuing a judgment in the suit filed against you. | |

Date: 14 November 2023

Dr. Stewart Lucas Murrey
_____
(TYPE OR PRINT NAME)

► _____
(SIGNATURE OF PLAINTIFF OR ATTORNEY FOR PLAINTIFF)

(Proof of service on reverse)

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CIV-050 [Rev. January 1, 2007]

**STATEMENT OF DAMAGES**
**(Personal Injury or Wrongful Death)**

Code of Civil Procedure, §§ 425.11, 425.115
www.courts.ca.gov

**CIV-050**

| PLAINTIFF: Dr. Stewart Lucas Murrey | CASE NUMBER: |
|---|---|
| DEFENDANT: Kelly Gibbons aka Kel Culb Gib, et al. | 23STCV14890 |

## PROOF OF SERVICE

*(After having the other party served as described below, with any of the documents identified in Item 1, have the person who served the documents complete this Proof of Service. Plaintiff cannot serve these papers.)*

1. I served the
   a. [X] Statement of Damages   [ ] Other   *(specify):*
   b. on *(name):* Amy Bialock
   c. by serving [X] defendant   [ ] other   *(name and title or relationship to person served):*
   d. [ ] by delivery   [X] at home   [ ] at business
      (1) date: 17 December 2023
      (2) time: 10:02 PM
      (3) address: 1427 N Poinsettia Pl Apt 310, Los Angeles, CA 90046
   e. [ ] by mailing
      (1) date:
      (2) place:

2. Manner of service *(check proper box):*
   a. [X] **Personal service. By personally delivering copies.** (CCP § 415.10)
   b. [ ] **Substituted service on corporation, unincorporated association (including partnership), or public entity.** By leaving, during usual office hours, copies in the office of the person served with the person who apparently was in charge and thereafter mailing (by first-class mail, postage prepaid) copies to the person served at the place where the copies were left. (CCP § 415.20(a))
   c. [ ] **Substituted service on natural person, minor, conservatee, or candidate.** By leaving copies at the dwelling house, usual place of abode, or usual place of business of the person served in the presence of a competent member of the household or a person apparently in charge of the office or place of business, at least 18 years of age, who was informed of the general nature of the papers, and thereafter mailing (by first-class mail, postage prepaid) copies to the person served at the place where the copies were left. (CCP § 415.20(b)) **(Attach separate declaration or affidavit stating acts relied on to establish reasonable diligence in first attempting personal service.)**
   d. [ ] **Mail and acknowledgment service.** By mailing (by first- class mail or airmail, postage prepaid) copies to the person served, together with two copies of the form of notice and acknowledgment and a return envelope, postage prepaid, addressed to the sender. (CCP § 415.30) **(Attach completed acknowledgment of receipt.)**
   e. [ ] **Certified or registered mail service.** By mailing to an address outside California (by first-class mail, postage prepaid, requiring a return receipt) copies to the person served. (CCP § 415.40) **(Attach signed return receipt or other evidence of actual delivery to the person served.)**
   f. [ ] Other *(specify code section):*
      [ ] additional page is attached.

3. At the time of service I was at least 18 years of age and not a party to this action.
4. Fee for service: $ 50.00
5. Person serving:
   a. [ ] California sheriff, marshal, or constable
   b. [ ] Registered California process server
   c. [ ] Employee or independent contractor of a registered California process server
   d. [X] Not a registered California process server
   e. [ ] Exempt from registration under Bus. & Prof. Code § 22350(b)

   f. Name, address and telephone number and, if applicable, county of registration and number:
   Elliot Wenik
   5478 Wilshire Blvd. # 430, Los Angeles, CA 90036
   (323) 240-3894

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

*(For California sheriff, marshal, or constable use only)*
I certify that the foregoing is true and correct.

Date: 19 December 2023

Date:

▶ _____
(SIGNATURE)

▶ _____
(SIGNATURE)

CIV-050 [Rev. January 1, 2007]

**PROOF OF SERVICE**
**(Statement of Damages)**

Page 2 of 2
Code of Civil Procedure §§ 425.11, 425.115