FILED

JUL 17 2024

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:                      Deputy Clerk

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

In re:

Amy Lynne Blalock,

Debtor(s),

Dr. Stewart Lucas Murrey,

Plaintiff(s),

Vs.

Amy Lynne Blalock,

Defendant(s).

Case No.: 2:24-bk-12532-BR

Chapter: 7

Adversary No.: 2:24-ap-01152-BR

**NOTICE OF HEARING ON DEFENDANT'S MOTION TO DISMISS**

Date:  August 20, 2024
Time:  10:00 A.M.
Location: 1668
Edward Roybal Building
255 E Temple Street
Los Angeles, Ca 90012

**NOTICE IS HEREBY GIVEN** that Defendant's motion to dismiss is set for hearing on August 20 2024 at 10:00 am in courtroom 1668, Edward Roybal Building, 255 E Temple Street, Los Angeles CA 90012.

Written opposition to the motion is due no later than August 6, 2024.  Written reply to the opposition shall be due no later than August 13, 2024.

Date:  7/17/2024

_____
Deputy Clerk

- 1

**AMY BLALOCK**
**1001 Gayley Ave #24381**
**Los Angeles, California 90024**
**Defendant, Pro Se**



**UNITED STATES BANKRUPTCY COURT CENTRAL DISTRCT OF CALIFORNIA**
**FOR THE COUNTY OF LOS ANGELES**

In Re
**AMY LYNNE BLALOCK,**
**Debtor,**

**CASE NO. 2:24-bk-12532-BR**
**ADVOCACY NO. 2:24-ap-01152** BR

**STEWART LUCAS MURREY,**
**Plaintiff,**

**CHAPTER 7**

**vs.**

**AMY LYNNE BLALOCK,**
**Defendant**

### MOTION TO DISMISS UNDER RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM, OR, IN THE ALTERNATIVE, FOR ABSTENTION PURSUANT TO 28 U.S.C. § 1334(C)(2) OR (C)(1), OR, IN THE ALTERNATIVE, AN ABEYANCE OF THIS ADVERSARY PROCEEDING

Defendant Amy Lynne Blalock ("Defendant") respectfully submits this response to

Plaintiff Stewart Lucas Murrey ("Plaintiff") adversary complaint to determine the

nondischargeability of debt pursuit to 11 U.S.C § 523(a)(6) filed on June 13, 2024. Defendant

also respectfully puts forth their request for this honorable court to dismiss the above adversary

proceedings under Federal Rule of Civil Procedure Rule 12(b)(6) For Failure to State a Claim

and in the alternative, an abeyance until further resolution of this litigation. Defendant hereby

responds as follows:

### I.    PRELIMINARY STATEMENT

1. On April 2, 2024, the Defendant filed a voluntary petition for relief under Chapter 7 of

   the Bankruptcy Code in United States Bankruptcy Court for the Central District of

   California.  On June 27, 2023, Plaintiff filed a civil complaint against Defendant for

1

general, special and punitive damages incurred because of alleged defamatory statements

Defendant made online. Plaintiff has yet to serve over 50+ other individuals involved in

this allegation of defamation, despite possessing identifiable information to properly

serve them in their jurisdiction. Before Defendant had an opportunity to respond to this

complaint, Plaintiff served a complaint through the bankruptcy court to determine the

nondischargeability of her debt. Plaintiff attempts to misuse this Court's resources and

duplicate and confuse contentious areas of state and federal law as he has done in at least

15 similar cases he's brought forth in the past 7 years. He has been sanctioned in the

current civil case for misusing the courts resources for failure to serve all parties in over a

year's time. See Exhibit A.

2. Through this Motion, Defendant seeks an order from this Court dismissing this

Adversary Proceeding, pursuant to Rule 12(b)(6) (specifically made applicable to this

proceeding by Federal Rule of Bankruptcy Procedure 7012(b)). Alternatively, Defendant

seeks a stay of this Adversary Proceeding. Defendant simply seeks to litigate the alleged

state civil tort claims through the proper channels, not through bankruptcy proceedings.

The Defendant requests the Court to grant the motion for the reasons listed below.

## II.    <u>JURISDICTION</u>

3. Defendant does not deny that this Court has jurisdiction over the parties to and the

subject matter of the Adversary pursuant to 28 U.S.C. § 1334 and 28 U.S.C § 1409. This

is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). Defendant also interjects that

Plaintiff has filed the cmplaint to determine nondischargeability without a judgment of

liability or damages to date.

### III.  FACTS

4.  Defendant does not deny that on June 27, 2023, Plaintiff filed a complaint against
Defendant for general, special and punitive damages incurred because of alleged
defamatory statements Defendant made online related to online gang-stalking and
cyberbullying; Plaintiff however failed to define what the parties and the Court should
consider to be "online gang-stalking" and "cyberbullying." Without a precise definition,
Defendant is unable to respond adequately and thoroughly provide a more definitive
response and fails to meet a valid cause of action that would meet the "willful, malicious
intent" needed to meet the threshold for nondischargeability of a debt.

5.  Defendant denies that Defendant knew and intended for her statement to harm Plaintiff
through the tort of false light. Defendant's primary purpose in the publication of any
statements related to Plaintiff involved a matter of public interest: women's security
against male violence and harassment. The Defendant's opinion expressed in such
publication was intended only to inform.

6.  Defendant does not deny that Plaintiff attached a true and correct copy of the complaint
in this proceeding.

7.  Defendant does not have enough information to adequately respond to Plaintiff's request
for discovery responses related to the aforementioned matter.

8.  Defendant denies Plaintiff's allegation she willfully and maliciously injured Plaintiff.

9.  Defendant denies the allegation Plaintiff was damaged by her actions. In the tentative
ruling, the court states:

"Nor is there a factual basis for a claim of intentional infliction of emotional distress against Blalock. "The elements of a prima facie case for the tort of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." (Miller v. Fortune Commercial Corporation (2017) 15 Cal.App.5th 214, 228–29.) Here, Plaintiff does not present any evidence or testimony concerning the emotional distress he claims to have suffered as a result of Blalock's posts. (See Wong v. Jing (2010) 189 Cal.App.4th 1354, 1376 ["Severe emotional distress means emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it."], internal quotation marks omitted.)"

"Nor is there any evidence that Blalock has intentionally or negligently interfered with Plaintiff's economic relationships. "For intentional interference, the plaintiff must plead and prove: (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship." (Golden Eagle Land Investment, L.P. v. Rancho Santa Fe Assn. (2018) 19 Cal.App.5th 399, 429.) A claim for negligent interference is similar but relies on a "defendant's failure to act with reasonable care" rather than intentional acts. (See Nelson v. Tucker Ellis, LLP (2020) 48 Cal.App.5th 827, 844 fn. 5.) Here, Plaintiff has produced no evidence that Blalock had any knowledge of any of Plaintiff's economic relationships, or that any such economic relationships were disrupted as a result of her conduct.

See Exhibit B.

10. Defendant denies Plaintiff's statement that their causes of action are likely to prevail in the state case, as that statement is wholly inaccurate and unfounded. At this point, there is no basis for determination that moving forward in a civil state case that the Plaintiff would prevail whatsoever.

11. Defendant responds that Plaintiff's allegation of Defendant's "utter lack of remorse or reflection" has no bearing on this litigated matter and should be struck from the record.

12. Defendant denies Plaintiff's allegation that all future debts of Defendant are not dischargeable per applicable statements based on willful, malicious and intentional personal injury to Plaintiff.

## IV.  RELIEF REQUESTED

4

## ARGUMENT

**A. This Court Should Dismiss This Adversary Proceeding Pursuant to Bankruptcy Rule 7012 and Federal Rule of Civil Procedure 12(b)(6).**

13. Through this response, Defendant also requests for this Court to dismiss this adversary proceeding through Rule 12(b)(6) of the Federal Rules of Civil Procedure as made applicable to adversary proceedings by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure.  The purpose of Rule 12(b)(6) is to test the formal sufficiency of a claim for relief rather than the substantive merits of the claim. Specifically, the court determines whether there are "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). With the presumption of truth, these facts must establish "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2007).

    "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted; quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 555, 557 (2007)).

14. In this case, the allegations in this Complaint do not state a plausible claim for relief under 11 U.S.C § 523(a)(6). The Plaintiff only dictates general assertions without adequate factual foundations. Specifically, the Plaintiff's allegations are insufficient for their 11 U.S.C § 523(a)(6) action to proceed. Although the law allows courts to be more lenient with pro se plaintiffs, the Court is not required to assume the role of advocate on behalf of a *pro se* party. *Merryfield v. Jordan*, 584 F.3d 923, 924 n. 1 (10th Cir. 2009)).

5

15. For the reasons stated above, Defendant asks this Court to find the allegations in
Plaintiff's complaint insufficient to state a claim for relief.

**B. In the Alternative, This Court Should Abstain from Adjudicating This Adversary
Proceeding**

16. 11 U.S.C § 523(a)(6) section states:

> "A willful and malicious injury under Section 523(a)(6) requires proof of a
> "deliberate or intentional injury, not merely a deliberate or intentional act that
> leads to injury." See *Kawaauhau v. Geiger,* 523 U.S. 57, 61 (1998).

17. Indeed, it is not enough under the statute that the creditor suffer injury to itself or
property; the injury must have been caused by willful and malicious conduct of the
debtor. Specifically, the "willful injury" requires proof that either the debtor had the
subjective motive to inflict the injury or that the debtor believed that injury was
substantially certain to occur as a result of their conduct."*Id,* citing *Petralia v. Jercich* (In
re Jercich), 238 F.3d 1202, 1208 (9th Cir. 2001). In other words, an injury is willful under
the Bankruptcy Code only if the actor purposefully inflicted the injury or acted with
substantial certainty that injury would result. *Id; Conte v. Gautam (In re Conte)*, 33 F.3d
303, 307 (3d Cir. 1994). As to malice, the act resulting in the injury must be "_wrongful
and without just cause or excuse, even in the absence of personal hatred, spite or ill-
will." Id; See Wymard v. Ali (In re Ali), 321 B.R. 685, 693 (Bankr. W.D. Pa. 2005)
(citing 4 Collier on Bankruptcy ¶ 523.12[1] at 523-91).

18. In this case, the sufficiency of Plaintiff's § 523(a)(6) claims cannot be determined
because of the well-established fact that a bankruptcy court cannot declare a debt
nondischargeable until the creditor establishes the existence and amount of that debt; this

6

adversary proceeding is the type of dischargeability action that involves a two-step

process: (1) the establishment of the debt and (2) a determination of the dischargeability

of that debt.

19. While the first step of the process has been met, the second step is in dispute. Plaintiff

allegedly established damages via the complaint. However, there has yet to be a

determination of damages in this matter. Therefore, the absence of a final ruling on the

matter indicates there is no valid judgement at the state level to support the

aforementioned adversary proceeding.

20. In the alternative, Plaintiff's allegations of libel, libel per se, and false light, are not

claims for which this Court can grant relief. Here, Plaintiff's first amended complaint

alleges that Defendant was involved in a colorful variety of civil, tort-based claims,

claims that do not invoke substantive rights created by the Bankruptcy Code, and as such,

they are not claims "arising under" the Bankruptcy. Plaintiff is merely attempting to

undercut and duplicate the Court's time and resources in this adversary proceeding;

regardless of any similar transactions or occurrences nestled within the various claims.

21. As Plaintiff aims to enjoy his right to free speech, so does Defendant. Any alleged

"fictional story" by Defendant about the Plaintiff is surely spun out of proportion and

dare to say, attempts to undercut Defendant's substantive rights and freedoms. Any

resulting events after the alleged tale about the Plaintiff are not within Defendant's

purview to remedy; Defendant does not owe a duty of care to any individual outside of

those with whom Defendant has a special relationship with. See Chen v. Fineman, No.

223CV08269HDVPVC, 2024 WL 1136307 *2 (C.D. Cal. Feb. 6, 2024) ("A duty of care

exists when one person has a legal obligation to prevent harm to another person, such that

breach of that obligation can give to liability." *Issakhani v. Shadow Glen Homeowners Ass'n., Inc.*, 63 Cal. App. 5th 917, 924 (2021) (citing Brown v. USA Taekwondo, 483 P.3d 159, 161 (Cal. 2021)); Id, Potter v. Firestone Tire & Rubber Co., 863 P.2d 795, 807 (Cal. 1993)( In most situations there is no duty to act to protect others from conduct of third parties unless an exception exists, such as if the defendant has a special relationship with the victim. )

**C. In the Alternative, the Court Should Enter an Order Staying the Adversary Proceeding until the Los Angeles Court Adjudicates the Petition.**

22. "[A]s part of its traditional equipment for the administration of justice, a federal court can stay the enforcement of a judgment pending the outcome of an appeal. "*In re Yan Sui, No. SA* CV-13-00519-MWF, 2013 WL 12453688 *2 (C.D. Cal. Oct. 25, 2013) (citing *Landis v. North Am. Co.*, 299 U.S. 248, 254-55, 57 S. Ct. 163, 81 L. Ed. 153 (1936)) (stating that the power to stay proceedings is soundly within the Court's discretion and "is incidental to the power inherent in every court to manage the schedule of cases on its docket to ensure fair and efficient adjudication"); See *Musselman v.Home Ins. Co. of Ind.* (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson &Casey), 1990 U.S. Dist. LEXIS 10235, at *2 (S.D.N.Y. August 7, 1990) (the bankruptcy court has the authority to enter a stay of an adversary proceeding). In determining whether a proceeding should be stayed, courts generally weigh the interests of the parties, the interests of good case management, and the public interest. See *Nken v. Holder*, 556 U.S. 418, 434, 129 S. Ct. 1749, 173 L. Ed. 2d 550 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S. Ct. 2113, 95 L. Ed. 2d 724 (1987).

23. In this case, a stay would further judicial economy, avoid inconsistent adjudication and promote the public interest. For one, there needs to be proper jurisdiction before this court can enter a permanent binding decision on Defendant. Second, multiple Defendants and possible Defendants could become involved in this case and potentially alter the course of litigation, including but not limited to, outcomes, strategies and defenses. Third, staying this proceeding would save precious tax dollars on potentially duplicative proceedings, and disallow future Plaintiff from engaging in this lowball tactics in efforts to vindicate their side of the story. For these reasons and more, Defendant requests for this humble Court to stay the proceedings.

## V. PRAYER FOR RELIEF

For the reasons stated above, Defendant respectfully request that this honorable Court dismiss Plaintiff's Complaint, award sanctions, and seek any and all further relief deemed to be just and equitable under the circumstances, without further notice. In the alternative to dismissal, Defendant hereby requests the Court to hold the issue of dischargeability in abeyance until resolution of the other aspects of this litigation.

Dated: July 15, 2024

Respectfully submitted,

Amy Blalock, Defendant

# EXHIBIT A

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
Central District, Stanley Mosk Courthouse, Department 61

**23STCV14890**                                                                July 8, 2024
**STEWART LUCAS MURREY vs KELLY GIBBONS, et al.**                              10:00 AM

Judge: Honorable Lynne M. Hobbs            CSR: None
Judicial Assistant: V. Trujillo            ERM: None
Courtroom Assistant: Sky SoYeon Hahn       Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): No Appearances

For Defendant(s): Amy Blalock via LACC; Kelly Gibbons via LACC

Other Appearance Notes: Plaintiff STEWART LUCAS MURREY, personally appearing, Michal Ofek, appearing via LACC

**NATURE OF PROCEEDINGS:** Hearing on Motion for Order authorizing limited third-party discovery necessary to identify defendants; Case Management Conference; Order to Show Cause Re: Failure to File Proof of Service

The Court's tentative ruling is electronically posted on the Court's website before the hearing is held.

The matter is called for hearing and argued.

Supplemental documentation provided to the Court is deemed untimely.

After considering the moving papers, all documents relating to the motion, and oral arguments, the Court adopts its tentative ruling as the final ruling of the Court as follows:

TENTATIVE

Plaintiff Stewart Lucas Murrey's Motion for Leave to Conduct Third Party Discovery is DENIED without prejudice.

DISCUSSION

"In any action predicated on anonymous speech, regardless of legal theory, the plaintiff should not be able to discover the speaker's identity without first making a prima facie showing that the speech in question is actionable." (Glassdoor, Inc. v. Superior Court (2017) 9 Cal.App.5th 623, 634–635.) "[I]f the defendant has not received notice of the attempt to lift the shield of anonymity, the plaintiff must make reasonable efforts to provide such notice." (Glassdoor, Inc. v.

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 61

| | |
|---|---|
| **23STCV14890** | July 8, 2024 |
| **STEWART LUCAS MURREY vs KELLY GIBBONS, et al.** | 10:00 AM |

| | |
|---|---|
| Judge: Honorable Lynne M. Hobbs | CSR: None |
| Judicial Assistant: V. Trujillo | ERM: None |
| Courtroom Assistant: Sky SoYeon Hahn | Deputy Sheriff: None |

Superior Court (2017) 9 Cal.App.5th 623, 634.)

Plaintiff Stewart Lucas Murrey (Plaintiff) seeks an order authorizing him to conduct "limited third-party discovery to identify defendants in this action." (Motion at p. 1.) Plaintiff's case arises from myriad statements made in Facebook groups entitled "Are We Dating the Same Guy," in which several defendants made statements to the effect that Plaintiff was involved in the murder of his ex-wife, that he was a vexatious and frequent litigant against women, and that he engaged in unpleasant and unwelcome conduct toward women he was interested in dating.

This is the second such motion Plaintiff has brought before the court. The court denied the prior motion to conduct similar discovery on September 28, 2023, without prejudice, reasoning as follows:

The present motion is defective in a number of ways. First, Plaintiff does not present this court with the "limited discovery" he seeks leave to undertake. In Glassdoor, the court was presented with a subpoena directing the relevant website to produce a copy of an offending review and to produce information identifying its author. (Glassdoor, Inc., supra, 9 Cal.App.5th at p. 627 .) Plaintiff here has neither served nor presented the court with the subpoena or other discovery — presumably to be leveled against Facebook — that he seeks leave to undertake here.

Indeed, it is unclear which persons Plaintiff seeks to identify. The Complaint lists ten individual defendants in the caption, as well as 50 potential Doe defendants. His Complaint also contends that Facebook itself, and potentially its "administrators/moderators," are defendants as well. (Complaint ¶ 33.) Plaintiff further confuses matters in his declaration by identifying scores of other women whom he claims participated in the wrongful conduct at issue. (Murrey Decl. ¶¶ 49–51, 52, 55, 57), as well as a large number of Facebook moderators whom he claims "operate behind the scenes and with no responsibility to the law." (Murrey Decl. ¶ 59.) Plaintiff does not indicate the individuals for whom discovery is sought, and the potential scope is incredibly broad.

What's more, Plaintiff has not shown that discovery is necessary to identify several of the individuals at issue. Plaintiff himself claims to have met or texted with several of the Defendants at issue, and he identifies one named defendant (Michal Ofek) as a licensed attorney, whose contact information is published on the California State Bar's website. (Murrey Decl. ¶¶ 14, 22, 42.)

Finally, Plaintiff has not attempted to notify Defendants of his attempts to secure their information, and thus provide an opportunity for their objections, if any, to be heard. A plaintiff

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
Central District, Stanley Mosk Courthouse, Department 61

23STCV14890                                                        July 8, 2024
STEWART LUCAS MURREY vs KELLY GIBBONS, et al.                     10:00 AM

Judge: Honorable Lynne M. Hobbs          CSR: None
Judicial Assistant: V. Trujillo          ERM: None
Courtroom Assistant: Sky SoYeon Hahn     Deputy Sheriff: None

seeking discovery of an anonymous defendant's identity must make "reasonable efforts" to provide notice of the discovery sought to the defendant. (Glassdoor, supra, 9 Cal.App.5th at p. 634.) Here, no such notice has been attempted, or indeed could have been on the facts presented here, since Defendant does not identify the discovery sought or who is to be the subject of his inquiries. (9/28/2023 Ruling.)

Plaintiff's present motion does not differ much from his prior motion. He now seeks to identify the anonymous authors of several specific Facebook posts made about him, some of which accuse him of "murder," "crimes," and being labeled a vexatious litigant. (Murrey Decl. Exhs. 2–6.) Plaintiff also seeks identifying information for the following named Facebook posters: Lena Vanderford, Ainka Wiz, Katherine Frame, Wendy Wang, and Mark DeLisle. These individuals are accused of making defamatory comments (Vanderford, Rodriguez, Wang), posting an image of his blog post about links between the CIA and Israeli intelligence and the Jeffrey Epstein case (Ainka Wiz), and of making a death threat against Plaintiff on another user's Facebook page (DeLisle). (Murrey Decl. Exhs. 7–19, 23.) Plaintiff also seeks, as with the previous motion, information on the moderators of the Facebook group at issue.

Plaintiff's motion remains defective for much the same reasons as his prior motions. He offers the court no example of the discovery that he hopes to conduct, or the subpoena that he hopes to propound upon Facebook. Plaintiff does not state which claims he hopes to allege against which Defendants, and make little effort to establish a prima facie case for any of his claims against them. And Plaintiff once again presents no evidence that he has made any effort to provide the individuals concerned in his motion with notice that he is seeking their information. (See Glassdoor, supra, 9 Cal.App.5th at p. 634 ["[I]f the defendant has not received notice of the attempt to lift the shield of anonymity, the plaintiff must make reasonable efforts to provide such notice."].)

The motion is therefore DENIED without prejudice.

The following is set:

Order to Show Cause Re: Sanctions in the Amount of $60.00 Against Plaintiff for Failing to File Proof of Service is scheduled for 09/04/2024 at 09:00 AM in Department 61 at Stanley Mosk Courthouse.

Order to Show Cause Re: Why Monetary Sanctions Should Not be Imposed for Non-Compliance with CRC Rule 3.720, Against Kelly Gibbons is scheduled for 09/04/2024 at 09:00 AM in Department 61 at Stanley Mosk Courthouse.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 61

**23STCV14890**                                                              July 8, 2024
**STEWART LUCAS MURREY vs KELLY GIBBONS, et al.**                            10:00 AM

Judge: Honorable Lynne M. Hobbs          CSR: None
Judicial Assistant: V. Trujillo          ERM: None
Courtroom Assistant: Sky SoYeon Hahn     Deputy Sheriff: None

On the Court's own motion, the Case Management Conference scheduled for 07/08/2024, and Order to Show Cause Re: Failure to File Proof of Service scheduled for 07/08/2024 are continued to 09/04/2024 at 09:00 AM in Department 61 at Stanley Mosk Courthouse.

Clerk is to give notice.

Certificate of Mailing is attached.

---

Minute Order                                                            Page 4 of 4

# EXHIBIT B

## DEPARTMENT 61 LAW AND MOTION RULINGS

**Case Number:** 23STCV14890    **Hearing Date:** May 29, 2024    **Dept:** 61

STEWART LUCAS MURREY vs KELLY GIBBONS, et al.

TENTATIVE

Defendant Elmira Shariat's Motion to Quash Service of Summons is GRANTED. Moving party to provide notice.

Defendant Amy Blalock's Special Motion to Strike (Anti-SLAPP) the First Amended Complaint is GRANTED as to the third, fourth, and sixth through eleventh causes of action, and DENIED as to the first, second, and fifth causes of action for defamation and false light. Moving party to provide notice.

Defendant Michal Ofek's Special Motion to Strike (Anti-SLAPP) the First Amended Complaint is GRANTED. Moving party to provide notice.

DISCUSSION

MOTION TO QUASH SERVICE OF SUMMONS

Code of Civil Procedure section 418.10, subd. (a)(1) states: "A defendant, on or before the last day of his or her time to plead or within any further time that the court may for good cause allow, may serve and file a notice of motion for one or more of the following purposes . . . (1) To quash service of summons on the ground of lack of jurisdiction of the court over him or her."

"'[C]ompliance with the statutory procedures for service of process is essential to establish personal jurisdiction." (Ellard v. Conway (2001) 94 Cal.App.4th 540, 544.) Mere notice of litigation does not confer personal jurisdiction absent substantial compliance with the statutory requirements for service of summons. (MJS Enterprises, Inc. v. Superior Court (1984) 153 Cal.App.3d 555, 557.)

While courts are not required to accept self-serving evidence — such as declarations that one was not served — submitted to support a motion to quash, facial defects of the proof of service will rebut its presumption of proper service. (American Exp. Centurion Bank, supra, 199 Cal.App.4th at p. 390.) The burden is on a plaintiff to prove facts showing that service was effective. (Summers v. McClanahan (2006) 140 Cal.App.4th 403, 413.)

Defendant Elly Shariat (Shariat) moves to quash service of summons upon her on the grounds that the purported personal service made against her was not actually made. Although a proof of service filed on December 27, 2023, states that she was personally served on December 22, 2023, at 6:24 p.m., at an address on South Palm Canyon Drive in Palm Springs, Shariat denies that she was present at the location at the time served, and presents a photo with geolocation data taken on her phone at a location near Monrovia at 6:10 p.m. (Motion Exh. B.)

Plaintiff Stewart Lucas Murrey (Plaintiff) argues that Shariat was served by a registered process server as indicated in the proof of service, and that the evidence Shariat presents in her motion is unauthenticated by any declaration. (Opposition at pp. 4–7.) Plaintiff presents his own declaration, stating that he "professionally obtained" the address in question. (Murrey Decl. ¶ 16.) Plaintiff also presents the declaration of the process server, Daniel Rolfe, who states he thrice attempted service at the address in question: once on December 18, 2023, when Shariat answered the door and "fraudulently acted as if she was someone else to elude service"

(Rolf Decl. ¶ 6); once on December 20, 2023, when no one answered the door but Rolfe could hear the floor creaking and saw the window was open (Rolfe Decl. ¶ 8); and finally on December 22, 2023, when Rolfe spoke to the same woman he saw before, who refused to show her ID, at which point he "drop served" her. (Rolfe Decl. ¶ 9.)

Shariat in reply belatedly presents a declaration stating that at the time of alleged service, she was 100 miles away at her partner's home, as indicated by the geolocation data accompanying the phone-image presented in her motion. (Shariat Decl. ¶ 4.) Shariat states that, in response to Plaintiff's opposition, she travelled to Palm Springs on May 18, 2024, and attempted to contact the resident of the appropriate unit without success. (Shariat Decl. ¶ 5.) She does, however, present the declaration of Bryce Hansen, the resident of the unit across from the unit served, who states that Shariat is not the occupant of the unit in question, and that he had never met Shariat until she contacted him on May 18, 2024. (Shariat Decl. ¶ 5, Exh. C.)

The evidence presented by both parties uniformly supports the proposition that Shariat was not served. The sole evidence that Plaintiff presents for the proposition that Shariat resides at the unit in question is that portion of his declaration stating that he "professionally obtained" her address, without elaboration. (Murrey Decl. ¶ 16.) The process server states that he served the papers upon the address, apparently in accordance with Plaintiff's instructions. (Rolfe Decl. ¶ 5.) The resident of the unit denied that they were Shariat, and Plaintiff presents no evidence to suggest otherwise. The process server does not claim that the person served matched the photos that Plaintiff provided him. (Rolfe Decl. ¶ 7.) Shariat instead presents evidence that she was some hundred miles away from the unit in question on the evening of service, and further that she is not the occupant of the unit in question. (Shariat Decl. ¶¶ 4–5, Exh. C. Plaintiff argues in opposition that Shariat is falsifying evidence and perjuring herself in an effort to evade this court's jurisdiction. Plaintiff, however, presents no evidence on this point. It is more likely that Plaintiff simply has the wrong address.

The motion to quash is GRANTED.

## SPECIAL MOTIONS TO STRIKE

In 1992 the Legislature enacted Code of Civil Procedure section 425.16 as a remedy for the "disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (Code Civ. Proc., §425.16, subd. (a); Wilcox v. Superior Court (1994) 27 Cal.App.4th 809, 817.) The lawsuits are commonly referred to as "SLAPP" lawsuits, an acronym for "strategic lawsuit against public participation." (Equilon Enterprises, LLC v. Consumer Cause, Inc. (2002) 29 Cal.4th 53, 57, fn. 1.) A defendant opposing a SLAPP claim may bring an "anti-SLAPP" special motion to strike any cause of action "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue . . . ." (Code Civ. Proc., § 425.16, subd. (b)(1).) An anti-SLAPP motion may be addressed to individual causes of action and need not be directed to the complaint as a whole. (Shekhter v. Financial Indemnity Co. (2001) 89 Cal.app.4th 141, 150.)

In ruling on an anti-SLAPP motion, a trial court uses a "summary-judgment-like procedure at any early stage of the litigation." (Varian Medical Systems, Inc. v. Delfino (2005) 35 Cal.4th 180, 192.) This is a two-step process. First, the defendants must show that the acts of which the plaintiff complains were taken "in furtherance of the [defendant]'s right of petition or free speech under the United States of California Constitution in connection with a public issue." (Code Civ. Proc., §425.16 subd. (b)(1).) Next, if the defendant carries that burden, the burden shift to the plaintiff to demonstrate a probability of prevailing on the claim. (Code Civ. Proc., § 425.16 subd. (b)(3).)

In making both determinations the trial court considers "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (Code Civ. Proc., § 425.16, subd. (b)(2); Equilon Enterprises, supra, 29 Cal.4th at p. 67.)

## A. PROTECTED ACTIVITY

The anti-SLAPP statute defines protected activities as:

(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

(Code Civ. Proc., § 425.16, subd. (e), emphasis added.)

Defendants Amy Blalock and Michal Ofek argue that the claims alleged against them arise from protected activity, namely "written or oral statement[s] or writing[s] made in a place open to the public or a public forum in connection with an issue of public interest," as well as "any other conduct in furtherance of the exercise of the constitutional right of free speech in connection with a public issue or an issue of public interest." (Motion at p. 4.) Defendants base this contention on the nature of the conduct alleged against them, which consists of posts made in a Facebook group called "Are We Dating the Same Guy – Los Angeles," evidently a Facebook group in which users post or inquire with other users about men whom they have dated or are looking into dating. (Motion at p. 2; FAC ¶ 4.)

Plaintiff alleges the following misconduct collectively against Valdes and other defendants:

Defendants wrote, published, and circulated defamatory statements about plaintiff to millions of users on Facebook . . . that include the following states: "Public records show" [that plaintiff has] involvement in [a] MURDER case of his ex wife," is "suspected of murder"; [h]as several domestic violence charges filed against him"; has "filed court cases against women trying to extort money from them"; "[h]as acted aggressively in court"; "has STDs"; has an "ex-wife who was killed"; deserves to be "ARRESTED"; "claim[s] he is an attorney"; and that plaintiff is listed on the California court's public record as being a vexatious litigant."

(FAC ¶ 8.)

It is unclear from the pleading which of the above statements Plaintiff attributes to which defendant. In opposition to the present motions, Plaintiff presents the following statements made by Defendant Blalock on the Facebook group in question, in reference to Plaintiff:

Back in 2017, I matched with him and before we went on a date my coworker was like – you better look him up. So I did, saw that he is likely a sociopath. So naturally, I went on a date with him. [laughing emoji] secretly it was so I could record him bc my life needs more drama.

I have a work phone and a personal phone. I put them stacked on the bar in front of me and one of them was recording. About 5 minutes into sitting there, he grabbed both of my phones and was like 'let me see these' and I was like OH SHIT, I'm caught but luckily I got the phones away from him. Like who does that?

Anyway, after like one drink, he's asked me to join him at his friend's house. Which I declined. It's weird how he tries to get you to leave a place with him.

(Murrey Decl. Exh. 12.) A comment responding to Blalock's story said, "NEVER GO TO THE SECOND LOCATION! Lol." (Ibid.) Blalock responded:

what happens at the second location?!!!! I'm afraid if there's any missing women in LA – he has something to do with it. The weird part is – he knows all this info is out there about him. Why does he stay in LA / Lake Arrowhead?!

(Ibid.) In another statement, evidently made in regards to a proposed documentary about Plaintiff, Blalock stated:

lacourt.org/tentativeRulingNet/ui/ResultPopup.aspx

We could all share our stories on the documentary like The Tinder Swindler.

Then again, I think this would boost his ego more.

Can't win with that guy.

(Murrey Decl. Exh. 13.)

In another comment, in response to a chain of comments advising people not to date Plaintiff, Blalock also stated:

No no no no no. Read the other post with comments. Went out with him. He's going to end up on Dateline one day. Not sure why he stays in LA – so many women know he's a sociopath. I also know he uses fake profiles to access sites like this that talk about him. He's so narcissistic.

(Murrey Decl. Exh. 14.)

As to Defendant Ofek, Plaintiff presents one comment Ofek made in response to another post inquiring whether anyone was interest in "figuring out a mini-doc vibe about that Lucas fellow" with the reply, "you're hilarious, I love you boo." (Murrey Decl. Exh. 10.) Plaintiff cites another statement by Ofek, in response to a picture listing a number of allegations against Plaintiff, asking "what's the name of this group" in which the allegations were posted, and stating that she "couldn't find the group" named by another commenter. (Murrey Decl. Exh. 10.) Plaintiff cites another post where Ofek responded to a comment that asked, "is it defamation if it's true???" with the statement, "truth is a viable defense [smile emoji]." (Murrey Decl. Exh. 10.) Plaintiff states that he recalls Ofek with another defendant attempting to film him one evening in May 2023. (Murrey Decl. ¶ 35.)

The allegations of wrongdoing against Ofek and Blalock are similar in character to the allegations made against Defendant Vanessa Valdes, which were the subject of a prior anti-SLAPP motion granted by this court on April 8, 2024. The analysis of that ruling is applicable to both Blalock and Ofek here.

From the above, there is ample basis to conclude that Plaintiff's suit against Valdes arises from protected activity, both through statements made in a public forum concerning an issue of public interest and through conduct in furtherance of the exercise of the constitutional right of free speech in connection with a public issue or an issue of public interest. Valdes's statements were made in an online Facebook group to what Plaintiff's FAC characterizes as an audience of "millions." (FAC ¶ 10.) Similar online postings have been held to involve a "classic public forum." (Chaker v. Mateo (2012) 209 Cal.App.4th 1138, 1146.)

Plaintiff's objection that he was not permitted to join the group in question does not obviate the character of public forum. (Opposition at pp. 10–11.) Smaller scale, closed publications have been held to amount to public fora. Statements made in a newsletter of limited circulation to a small neighborhood of homeowners and characterized as "a mouthpiece for a small group of homeowners who generally would not permit contrary viewpoints to be published in the newsletter" has likewise been held to be a public forum. (Damon v. Ocean Hills Journalism Club (2000) 85 Cal.App.4th 468, 476.) A federal court applying this precedent ruled that even a private Facebook group of 14,900 members could constitute a public forum under the anti-SLAPP statute. (Hicks v. Bradford (C.D. Cal., Dec. 13, 2022, No. CV217330DMGGJSX) 2022 WL 20689541, at *4.) Thus the statements at issue here were made in a public forum.

The evidence and pleadings also establish that Valdes's posts involved a matter of public interest: women's security against male violence and harassment. Plaintiff's allegations disclose as much. He states that these and other Facebook groups "allegedly exist to protect women." (FAC ¶ 59.) In his original Complaint, he found fault with Defendants "postur[ing] about protecting women" in their posts. (Complaint ¶ 30.) He contended that the posters "aggressively promote themselves . . . as champions and protectors of women." (Complaint ¶ 31.) . . . Although Plaintiff contends that these representations are insincere, this alleged insincerity would not remove the subject of discussion from the public interest. Courts have held comments

lacourt.org/tentativeRulingNet/ui/ResultPopup.aspx

made on a "Ripoff Report Web site" about a business owner's "character and business practices," concerned a public interest under the anti-SLAPP statute. (Chaker, supra, 209 Cal.App.4th at p. 1146.) Valdes' comments about Plaintiff's harassing conduct, on a forum directed to warning women against men who engage in such conduct, concerned at least as great a public interest.

(4/9/2024 Ruling.)

Plaintiff claims that his only allegations against Ofek stem from her role in the conspiracy against him, not from any statements she made on the Facebook group, and that he alleges no defamation claims against her. (Opposition at p. 6.) This is false, however, as all claims in the FAC are alleged against all Defendants, including Ofek, and none of them arises from any claimed instance of video recording.

Thus the present case against Defendants arises from protected activity within the meaning of the anti-SLAPP statute.

## B. LIKELIHOOD OF PREVAILING

After a defendant meets their burden of showing that the gravamen of the complaint involves protected activity, the plaintiff must then "demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." (Matson v. Dvorak (1995) 40 Cal.App.4th 539, 548.) A defendant can meet its burden if it can establish that the plaintiff cannot overcome an affirmative defense. (Birkner v. Lam (2007) 156 Cal.App.4th 275 at 285.)

"[A] plaintiff cannot simply rely on his or her pleadings, even if verified. Rather, the plaintiff must adduce competent, admissible evidence." (Grenier v. Taylor (2015) 234 Cal.App.4th 471, 480.)

"Legally sufficient" means that the cause of action would satisfy a demurrer. (Dowling v. Zimmerman (2001) 85 Cal.App.4th 1400, 1421.) The evidentiary showing must be made by competent and admissible evidence. (Morrow v. Los Angeles Unified School District (2007) 149 Cal.App.4th 1424, 1444.) Proof, however, cannot be made by declaration based on information and belief. (Evans v. Unkow (1995) 38 Cal.App.4th 1490, 1497–1498.) The question is whether the plaintiff has presented evidence in opposition to the defendant's motion that, if believed by the trier of fact, is sufficient to support a judgment in the plaintiff's favor. (Zamos v. Stroud (2004) 32 Cal.4th 958, 965.)

## 1. Ofek

Here, Plaintiff does not attempt to argue for the legal or factual sufficiency of any claims against Ofek, save for the sixth cause of action for invasion of privacy, the eighth cause of action for intentional infliction of emotional distress, and the tenth cause of action for civil conspiracy. (Opposition at pp. 7–13.) As no effort has been made to establish the legal and factual sufficiency of Plaintiff's other claims against Ofek, the motion is properly GRANTED as the outset to all causes of action other than the sixth, eighth, and tenth causes of action.

As to the remaining claims, Plaintiff argues that Ofek has stalked him within the meaning of Penal Code § 646.9, which applies criminal penalties against "[a]ny person who willfully, maliciously, and repeatedly follows or willfully and maliciously harasses another person and who makes a credible threat with the intent to place that person in reasonable fear for his or her safety, or the safety of his or her immediate family." (Penal Code § 646.9, subd. (a).) Plaintiff also claims that Ofek's actions amount to misappropriation of his likeness for a proposed documentary. (Opposition at pp. 9–10.)

These arguments are weak. The factual predicate for Ofek's involvement in either of these activities is an instance in May 2023 in which Ofek and Defendant Kelly Gibbons filmed Plaintiff as he exited a hotel. (Murrey Decl. ¶ 19.)1 This conduct forms no part of the allegations in Plaintiff's pleadings, and is neither "repeated" nor a "credible threat" of violence within the stalking statute. (Penal Code § 646.9.) And although

Plaintiff identifies discussions in the Facebook postings about a documentary, no such documentary or other film has actually been produced. Although Plaintiff claims that Gibbons shared Plaintiff's private information, he presents no evidence to support that any such disclosure has occurred, let alone evidence that Ofek participated or conspired in its occurrence. (Opposition at pp. 11–12.)

Plaintiff has failed to establish the legal or factual sufficiency for any claim against Ofek, and the motion is therefore GRANTED in its entirety.

2. Blalock

Defamation "involves (a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage." (Price v. Operating Engineers Local Union No. 3 (2011) 195 Cal.App.4th 962, 970.) A false light claim based upon the same facts as a defamation claim "must meet the same requirements." (Hawran v. Hixson (2012) 209 Cal.App.4th 256, 277.) "The sine qua non of recovery for defamation ... is the existence of falsehood." [Citation.] Because the statement must contain a provable falsehood, courts distinguish between statements of fact and statements of opinion for purposes of defamation liability. Although statements of fact may be actionable as libel, statements of opinion are constitutionally protected." (ZL Technologies, Inc. v. Does 1-7 (2017) 13 Cal.App.5th 603, 624.)

Plaintiff has presented evidence to show the legal and factual sufficiency of his first, second, and third causes of action for defamation and false light against Blalock. "[F]alse statements charging the commission of crime, or tending directly to injure a plaintiff in respect to his or her profession by imputing dishonesty or questionable professional conduct are defamatory per se." (Burrill v. Nair (2013) 217 Cal.App.4th 357, 383 [158 Cal.Rptr.3d 332, 351] disapproved on other grounds in Baral v. Schnitt (2016) 1 Cal.5th 376.) Plaintiff has presented a statement by Blalock that are reasonably interpreted as charging the commission of a crime: "if there's any missing women in LA – he has something to do with it." (Murrey Decl. Exh. 12.) Plaintiff testifies that this statement is false, as he has "never murdered anyone." (Murrey Decl. ¶ 14.)

Accordingly, the motion is DENIED as to the first, second, and fourth causes of action for defamation and false light.

Plaintiff has not, however, presented any evidence to support his remaining claims against Blalock. There is no invasion of privacy claim against Blalock, as Plaintiff presents no evidence that any alleged date with Blalock — the one detail she disclosed — constituted a "private fact." (Morrow v. Los Angeles Unified School Dist. (2007) 149 Cal.App.4th 1424.) And although Blalock claimed in her Facebook post that she attempted to secretly record Plaintiff on this date, Plaintiff himself denies that this date ever occurred. (Opposition at pp. 9–10.)

Nor is there a factual basis for a claim of intentional infliction of emotional distress against Blalock. "The elements of a prima facie case for the tort of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." (Miller v. Fortune Commercial Corporation (2017) 15 Cal.App.5th 214, 228–29.) Here, Plaintiff does not present any evidence or testimony concerning the emotional distress he claims to have suffered as a result of Blalock's posts. (See Wong v. Jing (2010) 189 Cal.App.4th 1354, 1376 ["Severe emotional distress means emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it."], internal quotation marks omitted.)

The cause of action for sex-based discrimination under Civil Code § 51, concerns Defendants' alleged failure to permit Plaintiff to join their Facebook group to challenge their alleged defamatory statements. (FAC ¶¶ 57–68.) But even if a Facebook group is construed as a "business establishment" under Civil Code § 51, subd. (b), there is no evidence that Blalock had any role in denying him access to the group. Nor has Blalock engaged in "gender violence" against Plaintiff within the meaning of Civil Code § 52.4, as might support Plaintiff's fourth cause of action. (See Civ. Code § 52.4, subd. (c) [defining "gender violence" to mean either a criminal offense

that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another" or "[a] physical intrusion or physical invasion of a sexual nature under coercive conditions"].)

Nor is there any evidence that Blalock has intentionally or negligently interfered with Plaintiff's economic relationships. "For intentional interference, the plaintiff must plead and prove: (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship." (Golden Eagle Land Investment, L.P. v. Rancho Santa Fe Assn. (2018) 19 Cal.App.5th 399, 429.) A claim for negligent interference is similar, but relies on a "defendant's failure to act with reasonable care" rather than intentional acts. (See Nelson v. Tucker Ellis, LLP (2020) 48 Cal.App.5th 827, 844 fn. 5.) Here, Plaintiff has produced no evidence that Blalock had any knowledge of any of Plaintiff's economic relationships, or that any such economic relationships were disrupted as a result of her conduct.

Finally, Plaintiff has not attempted to establish the factual or legal sufficiency of his eleventh cause of action declaratory relief against Blalock. Nor can Plaintiff pursue an independent tenth cause of action for conspiracy, because "[c]ivil conspiracy is not an independent tort." (City of Industry v. City of Fillmore (2011) 198 Cal.App.4th 191, 211.)

Accordingly, Blalock's motion is GRANTED as to the third, fourth, and sixth through eleventh causes of action, and DENIED as to the first, second, and fifth causes of action for defamation and false light.

**CERTIFICATE OF SERVICE**

I certify that on July 15, 2024, I filed the Motion to Dismiss in Person

**MOTION TO DISMISS UNDER RULE 12(B)(6) FOR FAILURE TO
STATE A CLAIM, OR, IN THE ALTERNATIVE, FOR ABSTENTION
PURSUANT TO 28 U.S.C. § 1334(C)(2) OR (C)(1), OR, IN THE
ALTERNATIVE, FOR AN ABEYANCE OF THIS ADVERSARY PROCEEDING**

with the Clerk of Court using the CM/ECF system which will send notification of such filing to

all counsel and parties of record.

This 15th day of July 2024

By: _____
Amy Blalock, Defendant

Jacqueline Sale
Emailed Plaintiff
      Service papers     7/15/24
2@lucasmurrey.io

Mailed Plaintiff   7/15/24
1217 Wilshire Blvd #3655
Santa Monica, CA 90403

10

# CERTIFICATE OF SERVICE

I, the below-named deputy clerk of the United States Bankruptcy Court, certify that I placed a true and correct copy of the attached document in a sealed envelope for collection and mailing no later than the next business day that is not a court-observed holiday, in the United States mail, first class, postage prepaid, and addressed as follows:

**Dr. Stewart Lucas Murrey**
1217 Wilshire Blvd #3655
Santa Monica, CA 90403

**Amy Lynne Blalock**
1619 N La Brea Ave #509
Los Angeles, CA 90028

**Howard M Ehrenberg (TR)**
1875 Century Park East
Suite 1900
Los Angeles, CA 90067

☐ Service information continued on attached page

Date:   7/17/2024

Signature: _____

Deputy Clerk [*printed name*]: _____Pat Pennington-Jones_____

CACB Rev. June 2016