Dr. Stewart Lucas Murrey
1217 Wilshire Blvd. # 3655
Santa Monica, CA 90403
Tel.: (424) 278-3017
Email: 2@lucasmurrey.io
Website: lucasmurrey.com
SocialMedia: sickoscoop.com/lucas

Plaintiff & Plaintiff in Pro Se

**FILED**

AUG 02 2024

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:_____ Deputy Clerk

Bankruptcy Court

# UNITED STATES ~~DISTRICT~~ COURT
# CENTRAL DISTRICT OF CALIFORNIA

In re:

MS. AMY LYNNE BLALOCK, an individual;
            Debtor,

DR. STEWART LUCAS MURREY, an individual;
            Plaintiff,

MS. AMY LYNNE BLALOCK, an individual;
            Defendant.

Adversary Complaint Case No.
24-ap-01152-BR
[Assigned to: Hon. Judge Barry Russell]

Related: Bankruptcy Case No.
24-bk-12532-BR-Chapter 7
[Assigned to: Hon. Judge Barry Russell]

**PLAINTIFF DR. STEWART LUCAS MURREY'S DECLARTION IN SUPPORT OF HIS OPPOSITION TO DEFENDANT MS. BLALOCK'S MOTION TO DISMISS**

Hearing Date:   20 August 2024
Hearing Time:   10:00 A.M.
Courtroom:      1668
Edward Roybal Building
255 E. Temple St.
Los Angeles, CA 90012
Judge:          Hon. Barry Russell

- 1 -

PLAINTIFF DR. MURREY'S DECLARATION

# DECLARATION OF DR. LUCAS MURREY

I, Dr. Lucas Murrey, declare:

1. That I am the plaintiff in this action; that I am over the age of 18 years and that I have personal knowledge of the facts contained in this declaration. If called upon to testify I could and would testify competently as to the truth of the facts stated herein.

2. I received my Doctorate of Philosophy (Ph.D) from Yale University in 2011, I have since published various books, articles and videos on the origins of money and tragedy; I am presently working on new material while I continue to join my voice to peaceful protests supporting civil rights for all peoples everywhere. Based upon these achievements I use the title doctor in front of my name.

3. This declaration is submitted in support of plaintiff's opposition to defendant Ms. Blalock's motion to dismiss.

4. A true and correct copy of the hon. judge Hobbs' ruling from 29 May 2024 is hereto attached as Exhibit "1".

5. A true and correct copy of my meet & confer concerning discovery from 30 March 2024 is hereto attached as Exhibit "2".

//

- 2 -

6. A true and correct copy of the hon. judge Hobbs' ruling from 1 July 2024 and evidence of Ms. Blalock's participation with others such as Ms. Gibbons to harm me is hereto attached as Exhibit "3".

I declare that under penalty of perjury under the laws of the United States that the foregoing is true and correct; executed on 31 July 2024 in Los Angeles, California.

/s/Stewart Lucas Murrey
DR. STEWART LUCAS MURREY

- 3 -

PLAINTIFF DR. MURREY'S DECLARATION

# EXHIBIT 1

**Pages 10-11 of Judge's Ruling**

Plaintiff has presented evidence to show the legal and factual sufficiency of his first, second, and third causes of action for defamation and false light against Blalock. "[F]alse statements charging the commission of crime, or tending directly to injure a plaintiff in respect to his or her profession by imputing dishonesty or questionable

professional conduct are defamatory per se." (Burrill v. Nair (2013) 217 Cal.App.4th 357, 383 [158 Cal.Rptr.3d 332, 351] disapproved on other grounds in Baral v. Schnitt (2016) 1 Cal.5th 376.) Plaintiff has presented a statement by Blalock that are reasonably interpreted as charging the commission of a crime: "if there's any missing women in LA – he has something to do with it." (Murrey Decl. Exh. 12.) Plaintiff testifies that this statement is false, as he has "never murdered anyone." (Murrey Decl. ¶ 14.)

**Case Number:** 23STCV14890   **Hearing Date:** May 29, 2024   **Dept:** 61
STEWART LUCAS MURREY vs KELLY GIBBONS, et al.

TENTATIVE

Defendant Elmira Shariat's Motion to Quash Service of Summons is GRANTED. Moving
party to provide notice.

Defendant Amy Blalock's Special Motion to Strike (Anti-SLAPP) the First Amended
Complaint is GRANTED as to the third, fourth, and sixth through eleventh causes of action,
and DENIED as to the first, second, and fifth causes of action for defamation and false light.
Moving party to provide notice.

Defendant Michal Ofek's Special Motion to Strike (Anti-SLAPP) the First Amended
Complaint is GRANTED. Moving party to provide notice.

DISCUSSION

MOTION TO QUASH SERVICE OF SUMMONS

Code of Civil Procedure section 418.10, subd. (a)(1) states: "A defendant, on or
before the last day of his or her time to plead or within any further time that the
court may for good cause allow, may serve and file a notice of motion for one or
more of the following purposes . . . (1) To quash service of summons on the ground
of lack of jurisdiction of the court over him or her."

"'[C]ompliance with the statutory procedures for service of process is essential to
establish personal jurisdiction." (Ellard v. Conway (2001) 94 Cal.App.4th 540, 544.)
Mere notice of litigation does not confer personal jurisdiction absent substantial
compliance with the statutory requirements for service of summons. (MJS
Enterprises, Inc. v. Superior Court (1984) 153 Cal.App.3d 555, 557.)

While courts are not required to accept self-serving evidence — such as declarations
that one was not served — submitted to support a motion to quash, facial defects of
the proof of service will rebut its presumption of proper service. (American Exp.
Centurion Bank, supra, 199 Cal.App.4th at p. 390.) The burden is on a plaintiff to
prove facts showing that service was effective. (Summers v. McClanahan (2006)
140 Cal.App.4th 403, 413.)

Defendant Elly Shariat (Shariat) moves to quash service of summons upon her on the grounds
that the purported personal service made against her was not actually made. Although a proof
of service filed on December 27, 2023, states that she was personally served on December 22,
2023, at 6:24 p.m., at an address on South Palm Canyon Drive in Palm Springs, Shariat

denies that she was present at the location at the time served, and presents a photo with geolocation data taken on her phone at a location near Monrovia at 6:10 p.m. (Motion Exh. B.)

Plaintiff Stewart Lucas Murrey (Plaintiff) argues that Shariat was served by a registered process server as indicated in the proof of service, and that the evidence Shariat presents in her motion is unauthenticated by any declaration. (Opposition at pp. 4–7.) Plaintiff presents his own declaration, stating that he "professionally obtained" the address in question. (Murrey Decl. ¶ 16.) Plaintiff also presents the declaration of the process server, Daniel Rolfe, who states he thrice attempted service at the address in question: once on December 18, 2023, when Shariat answered the door and "fraudulently acted as if she was someone else to elude service" (Rolf Decl. ¶ 6); once on December 20, 2023, when no one answered the door but Rolfe could hear the floor creaking and saw the window was open (Rolfe Decl. ¶ 8); and finally on December 22, 2023, when Rolfe spoke to the same woman he saw before, who refused to show her ID, at which point he "drop served" her. (Rolfe Decl. ¶ 9.)

Shariat in reply belatedly presents a declaration stating that at the time of alleged service, she was 100 miles away at her partner's home, as indicated by the geolocation data accompanying the phone-image presented in her motion. (Shariat Decl. ¶ 4.) Shariat states that, in response to Plaintiff's opposition, she travelled to Palm Springs on May 18, 2024, and attempted to contact the resident of the appropriate unit without success. (Shariat Decl. ¶ 5.) She does, however, present the declaration of Bryce Hansen, the resident of the unit across from the unit served, who states that Shariat is not the occupant of the unit in question, and that he had never met Shariat until she contacted him on May 18, 2024. (Shariat Decl. ¶ 5, Exh. C.)

The evidence presented by both parties uniformly supports the proposition that Shariat was not served. The sole evidence that Plaintiff presents for the proposition that Shariat resides at the unit in question is that portion of his declaration stating that he "professionally obtained" her address, without elaboration. (Murrey Decl. ¶ 16.) The process server states that he served the papers upon the address, apparently in accordance with Plaintiff's instructions. (Rolfe Decl. ¶ 5.) The resident of the unit denied that they were Shariat, and Plaintiff presents no evidence to suggest otherwise. The process server does not claim that the person served matched the photos that Plaintiff provided him. (Rolfe Decl. ¶ 7.) Shariat instead presents evidence that she was some hundred miles away from the unit in question on the

evening of service, and further that she is not the occupant of the unit in question. (Shariat Decl. ¶¶ 4–5, Exh. C. Plaintiff argues in opposition that Shariat is falsifying evidence and perjuring herself in an effort to evade this court's jurisdiction. Plaintiff, however, presents no evidence on this point. It is more likely that Plaintiff simply has the wrong address.

The motion to quash is GRANTED.

SPECIAL MOTIONS TO STRIKE

In 1992 the Legislature enacted Code of Civil Procedure section 425.16 as a remedy for the "disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (Code Civ. Proc., §425.16, subd. (a); Wilcox v. Superior Court (1994) 27 Cal.App.4th 809, 817.) The lawsuits are commonly referred to as "SLAPP" lawsuits, an acronym for "strategic lawsuit against public participation." (Equilon Enterprises, LLC v. Consumer Cause, Inc. (2002) 29 Cal.4th 53, 57, fn. 1.) A defendant opposing a SLAPP claim may bring an "anti-SLAPP" special motion to strike any cause of action "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue . . . ." (Code Civ. Proc., § 425.16, subd. (b)(1).) An anti-SLAPP motion may be addressed to individual causes of action and need not be directed to the complaint as a whole. (Shekhter v. Financial Indemnity Co. (2001) 89 Cal.app.4th 141, 150.)

In ruling on an anti-SLAPP motion, a trial court uses a "summary-judgment-like procedure at any early stage of the litigation." (Varian Medical Systems, Inc. v. Delfino (2005) 35 Cal.4th 180, 192.) This is a two-step process. First, the defendants must show that the acts of which the plaintiff complains were taken "in furtherance of the [defendant]'s right of petition or free speech under the United States of California Constitution in connection with a public issue." (Code Civ. Proc., §425.16 subd. (b)(1).) Next, if the defendant carries that burden, the burden shift to the plaintiff to demonstrate a probability of prevailing on the claim. (Code Civ. Proc., § 425.16 subd. (b)(3).)

In making both determinations the trial court considers "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (Code Civ. Proc., § 425.16, subd. (b)(2); Equilon Enterprises, supra, 29 Cal.4th at p. 67.)

A. PROTECTED ACTIVITY

The anti-SLAPP statute defines protected activities as:
(1) any written or oral statement or writing made before a legislative, executive, or
judicial proceeding, or any other official proceeding authorized by law, (2) any
written or oral statement or writing made in connection with an issue under
consideration or review by a legislative, executive, or judicial body, or any other
official proceeding authorized by law, (3) any written or oral statement or writing
made in a place open to the public or a public forum in connection with an issue of
public interest, or (4) any other conduct in furtherance of the exercise of the
constitutional right of petition or the constitutional right of free speech in connection
with a public issue or an issue of public interest.
(Code Civ. Proc., § 425.16, subd. (e), emphasis added.)

Defendants Amy Blalock and Michal Ofek argue that the claims alleged against them arise
from protected activity, namely "written or oral statement[s] or writing[s] made in a place open
to the public or a public forum in connection with an issue of public interest," as well as "any
other conduct in furtherance of the exercise of the constitutional right of free speech in
connection with a public issue or an issue of public interest." (Motion at p. 4.) Defendants base
this contention on the nature of the conduct alleged against them, which consists of posts made
in a Facebook group called "Are We Dating the Same Guy – Los Angeles," evidently a
Facebook group in which users post or inquire with other users about men whom they have
dated or are looking into dating. (Motion at p. 2; FAC ¶ 4.)

Plaintiff alleges the following misconduct collectively against Valdes and other
defendants:
Defendants wrote, published, and circulated defamatory statements about plaintiff to
millions of users on Facebook . . . that include the following states: "Public records
show" [that plaintiff has] involvement in [a] MURDER case of his ex wife," is
"suspected of murder"; [h]as several domestic violence charges filed against him";
has "filed court cases against women trying to extort money from them"; "[h]as
acted aggressively in court"; "has STDs"; has an "ex-wife who was killed"; deserves
to be "ARRESTED"; "claim[s] he is an attorney"; and that plaintiff is listed on the
California court's public record as being a vexatious litigant."
(FAC ¶ 8.)

It is unclear from the pleading which of the above statements Plaintiff attributes to
which defendant. In opposition to the present motions, Plaintiff presents the

following statements made by Defendant Blalock on the Facebook group in question, in reference to Plaintiff:

Back in 2017, I matched with him and before we went on a date my coworker was like – you better look him up. So I did, saw that he is likely a sociopath. So naturally, I went on a date with him. [laughing emoji] secretly it was so I could record him bc my life needs more drama.
I have a work phone and a personal phone. I put them stacked on the bar in front of me and one of them was recording. About 5 minutes into sitting there, he grabbed both of my phones and was like 'let me see these' and I was like OH SHIT, I'm caught but luckily I got the phones away from him. Like who does that?
Anyway, after like one drink, he's asked me to join him at his friend's house. Which I declined. It's weird how he tries to get you to leave a place with him.
(Murrey Decl. Exh. 12.)

A comment responding to Blalock's story said, "NEVER GO TO THE SECOND LOCATION! Lol." (Ibid.) Blalock responded:
what happens at the second location?!!!! I'm afraid if there's any missing women in LA – he has something to do with it. The weird part is – he knows all this info is out there about him. Why does he stay in LA / Lake Arrowhead?!
(Ibid.)

In another statement, evidently made in regards to a proposed documentary about Plaintiff, Blalock stated:

We could all share our stories on the documentary like The Tinder Swindler.
Then again, I think this would boost his ego more.
Can't win with that guy.
(Murrey Decl. Exh. 13.)

In another comment, in response to a chain of comments advising people not to date Plaintiff, Blalock also stated:
No no no no no. Read the other post with comments. Went out with him. He's going to end up on Dateline one day. Not sure why he stays in LA – so many women know he's a sociopath. I also know he uses fake profiles to access sites like this that talk about him. He's so narcissistic.

(Murrey Decl. Exh. 14.)

As to Defendant Ofek, Plaintiff presents one comment Ofek made in response to another post inquiring whether anyone was interest in "figuring out a mini-doc vibe about that Lucas fellow" with the reply, "you're hilarious, I love you boo." (Murrey Decl. Exh. 10.)

Plaintiff cites another statement by Ofek, in response to a picture listing a number of allegations against Plaintiff, asking "what's the name of this group" in which the allegations were posted, and stating that she "couldn't find the group" named by another commenter. (Murrey Decl. Exh. 10.)

Plaintiff cites another post where Ofek responded to a comment that asked, "is it defamation if it's true???" with the statement, "truth is a viable defense [smile emoji]." (Murrey Decl. Exh. 10.)

Plaintiff states that he recalls Ofek with another defendant attempting to film him one evening in May 2023. (Murrey Decl. ¶ 35.)

The allegations of wrongdoing against Ofek and Blalock are similar in character to the allegations made against Defendant Vanessa Valdes, which were the subject of a prior anti-SLAPP motion granted by this court on April 8, 2024. The analysis of that ruling is applicable to both Blalock and Ofek here.

From the above, there is ample basis to conclude that Plaintiff's suit against Valdes arises from protected activity, both through statements made in a public forum concerning an issue of public interest and through conduct in furtherance of the exercise of the constitutional right of free speech in connection with a public issue or an issue of public interest. Valdes's statements were made in an online Facebook group to what Plaintiff's FAC characterizes as an audience of "millions." (FAC ¶ 10.) Similar online postings have been held to involve a "classic public forum." (Chaker v. Mateo (2012) 209 Cal.App.4th 1138, 1146.)

Plaintiff's objection that he was not permitted to join the group in question does not obviate the character of public forum. (Opposition at pp. 10–11.) Smaller scale, closed publications have been held to amount to public fora. Statements made in a newsletter of limited circulation to a

small neighborhood of homeowners and characterized as "a mouthpiece for a small group of homeowners who generally would not permit contrary viewpoints to be published in the newsletter" has likewise been held to be a public forum. (Damon v. Ocean Hills Journalism Club (2000) 85 Cal.App.4th 468, 476.) A federal court applying this precedent ruled that even a private Facebook group of 14,900 members could constitute a public forum under the anti-SLAPP statute. (Hicks v. Bradford (C.D. Cal., Dec. 13, 2022, No. CV217330DMGGJSX) 2022 WL 20689541, at *4.) Thus the statements at issue here were made in a public forum.

The evidence and pleadings also establish that Valdes's posts involved a matter of public interest: women's security against male violence and harassment. Plaintiff's allegations disclose as much. He states that these and other Facebook groups "allegedly exist to protect women." (FAC ¶ 59.) In his original Complaint, he found fault with Defendants "postur[ing] about protecting women" in their posts. (Complaint ¶ 30.) He contended that the posters "aggressively promote themselves . . . as champions and protectors of women." (Complaint ¶ 31.) . . . Although Plaintiff contends that these representations are insincere, this alleged insincerity would not remove the subject of discussion from the public interest. Courts have held comments made on a "Ripoff Report Web site" about a business owner's "character and business practices," concerned a public interest under the anti-SLAPP statute. (Chaker, supra, 209 Cal.App.4th at p. 1146.) Valdes' comments about Plaintiff's harassing conduct, on a forum directed to warning women against men who engage in such conduct, concerned at least as great a public interest. (4/9/2024 Ruling.)

Plaintiff claims that his only allegations against Ofek stem from her role in the conspiracy against him, not from any statements she made on the Facebook group, and that he alleges no defamation claims against her. (Opposition at p. 6.) This is false, however, as all claims in the FAC are alleged against all Defendants, including Ofek, and none of them arises from any claimed instance of video recording.

Thus the present case against Defendants arises from protected activity within the meaning of the anti-SLAPP statute.

## B. LIKELIHOOD OF PREVAILING

to place that person in reasonable fear for his or her safety, or the safety of his or her immediate family." (Penal Code § 646.9, subd. (a).) Plaintiff also claims that Ofek's actions amount to misappropriation of his likeness for a proposed documentary. (Opposition at pp. 9–10.)

These arguments are weak. The factual predicate for Ofek's involvement in either of these activities is an instance in May 2023 in which Ofek and Defendant Kelly Gibbons filmed Plaintiff as he exited a hotel. (Murrey Decl. ¶ 19.)1 This conduct forms no part of the allegations in Plaintiff's pleadings, and is neither "repeated" nor a "credible threat" of violence within the stalking statute. (Penal Code § 646.9.) And although Plaintiff identifies discussions in the Facebook postings about a documentary, no such documentary or other film has actually been produced. Although Plaintiff claims that Gibbons shared Plaintiff's private information, he presents no evidence to support that any such disclosure has occurred, let alone evidence that Ofek participated or conspired in its occurrence. (Opposition at pp. 11–12.)

Plaintiff has failed to establish the legal or factual sufficiency for any claim against Ofek, and the motion is therefore GRANTED in its entirety.

## 2. Blalock

Defamation "involves (a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage." (Price v. Operating Engineers Local Union No. 3 (2011) 195 Cal.App.4th 962, 970.) A false light claim based upon the same facts as a defamation claim "must meet the same requirements." (Hawran v. Hixson (2012) 209 Cal.App.4th 256, 277.) "The sine qua non of recovery for defamation ... is the existence of falsehood." [Citation.] Because the statement must contain a provable falsehood, courts distinguish between statements of fact and statements of opinion for purposes of defamation liability. Although statements of fact may be actionable as libel, statements of opinion are constitutionally protected." (ZL Technologies, Inc. v. Does 1-7 (2017) 13 Cal.App.5th 603, 624.)

Plaintiff has presented evidence to show the legal and factual sufficiency of his first, second, and third causes of action for defamation and false light against Blalock. "[F]alse statements charging the commission of crime, or tending directly to injure a plaintiff in respect to his or her profession by imputing dishonesty or questionable

Facebook group is construed as a "business establishment" under Civil Code § 51, subd. (b), there is no evidence that Blalock had any role in denying him access to the group. Nor has Blalock engaged in "gender violence" against Plaintiff within the meaning of Civil Code § 52.4, as might support Plaintiff's fourth cause of action. (See Civ. Code § 52.4, subd. (c) [defining "gender violence" to mean either a criminal offense that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another" or "[a] physical intrusion or physical invasion of a sexual nature under coercive conditions"].)

Nor is there any evidence that Blalock has intentionally or negligently interfered with Plaintiff's economic relationships. "For intentional interference, the plaintiff must plead and prove: (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship." (Golden Eagle Land Investment, L.P. v. Rancho Santa Fe Assn. (2018) 19 Cal.App.5th 399, 429.) A claim for negligent interference is similar, but relies on a "defendant's failure to act with reasonable care" rather than intentional acts. (See Nelson v. Tucker Ellis, LLP (2020) 48 Cal.App.5th 827, 844 fn. 5.) Here, Plaintiff has produced no evidence that Blalock had any knowledge of any of Plaintiff's economic relationships, or that any such economic relationships were disrupted as a result of her conduct.
Finally, Plaintiff has not attempted to establish the factual or legal sufficiency of his eleventh cause of action declaratory relief against Blalock. Nor can Plaintiff pursue an independent tenth cause of action for conspiracy, because "[c]ivil conspiracy is not an independent tort." (City of Industry v. City of Fillmore (2011) 198 Cal.App.4th 191, 211.)

Accordingly, Blalock's motion is GRANTED as to the third, fourth, and sixth through eleventh causes of action, and DENIED as to the first, second, and fifth causes of action for defamation and false light.

**EXHIBIT 2**

Dr. Stewart Lucas Murrey
1217 Wilshire Blvd. # 3655
Santa Monica, CA 90403
Tel.: (424) 278-3017
Email: 2@lucasmurrey.io
Websites: sickoscoop.com/lucas,
lucasmurrey.com

30 March 2024

***Via Mail and Email*** (*Sent as a Scanned Copy of the Signed Document) to:*

| | | |
|---|---|---|
| Kelly Gibbons aka Kel Culb Gib aka kcg | Michal Ofek | Olivia (Liv) Burger |
| 2121 Crenshaw Blvd. | 9015 Burton Way # 304 | 8110 W. 83rd St. # 1 |
| Los Angeles, CA 90016 | Los Angeles, CA 90048-3737 | Playa Del Rey, CA 90293 |
| Tel.: (803) 360-4816 | Tel.: (310) 709-1637 | (231) 590-6751 |
| | Email: ofek.michal@gmail.com | Email: oliviaburger08@gmail.com |
| | | |
| Vanessa Valdes | Amy Blalock | Elly (Elmira) Shariat |
| 1825 Ivar Ave. Apt. 312 | 455 Nectar Rd. | 2160 S. Palm Canyon Dr. # 12 |
| Los Angeles, CA 90028 | Ty Ty, GA 31795 | Palm Springs, CA 92264 |
| Tel.: (818) 632-9258 | Tel.: (310) 569-6182 | |
| Email: vvaldes8@yahoo.com | Email: amyblalock@gmail.com | |

Re:   Dr. Stewart Lucas Murrey v. Kelly Gibbons, et al.
        Case No. 23STCV14890
        **Defendant Ms. Blalock's Failure to Respond to Dr. Murrey's Form Interrogatories,
        Special Interrogatories, Requests for Admisions and Requests for Production of
        Documents**

Dear Ms. Blalock,

        Please be advised that because you have failed to timely respond to the Form
Interrogatories, Special Interrogatories, Requests for Production of Documents and Requests for
Admission with which you have been served, you have waived all objections to said discovery,
including claims of privilege and "work product" protection (Code of Civ. Proc. § 2030.290,
subd. (a), 2031.300, subd. (a); see *Leach v. Superior Court* (1980) 111 Cal.App.3d 902, 905-
906). Further, if a party to whom discovery was directed fails to serve a timely response, the
propounding party may move for an order compelling responses and for a monetary sanction
(Code of Civ. Proc. § 2030.290, subd. (b) (Interrogatories), Code of Civ. Proc. § 2031.300, subd.
(b) (Document demands).

        Please provide complete and thorough responses without any objections to the above-
noted discovery properly propounded on you on forthwith, or I will be forced to seek court
intervention and any and all appropriate sanctions.

        _/s/ Stewart Lucas Murrey_____
        Dr. Stewart Lucas Murrey
        Plaintiff & Plaintiff in Pro Per

1

**PROOF OF SERVICE**
STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the county of Los Angeles, State of California, I am over the age of 18 and not a party to this action. My business address is: 1217 Wilshire Blvd. # 3655, Santa Monica, CA 90403.

On 30 March 2024 I served the foregoing documents in the matter of Dr. Murrey v. Gibbons et al. (Case No. 23STCV14890) described as: Plaintiff's Meet & Confer re: Defendant Blalock's Failure to Respond to Form and Special Interrogatories and Requests for Admissions and Production of Documents:

Kelly Gibbons aka Kel Culb Gib aka kcg
2121 Crenshaw Blvd.
Los Angeles, CA 90016
Tel.: (803) 360-4816

Michal Ofek
9015 Burton Way # 304
Los Angeles, CA 90048-3737
Tel.: (310) 709-1637
Email: ofek.michal@gmail.com

Olivia (Liv) Burger
8110 W. 83rd St. # 1
Playa Del Rey, CA 90293
(231) 590-6751
Email: oliviaburger08@gmail.com

Vanessa Valdes
1825 Ivar Ave. Apt. 312
Los Angeles, CA 90028
Tel.: (818) 632-9258
Email: vvaldes8@yahoo.com

Amy Blalock
455 Nectar Rd.
Ty Ty, GA 31795
Tel.: (310) 569-6182
Email: amyblalock@gmail.com

Elly (Elmira) Shariat
2160 S. Palm Canyon Dr. # 12
Palm Springs, CA 92264

By Mail: _XXX_.

_____. I deposited such envelopes in the mail at Los Angeles, California, 90036, the envelope was mailed with first class postage thereon, fully prepaid.

_____, I am readily familiar with this firm's practice for collecting and processing correspondence for mailing. Under that practice the above described documents would be deposited in the US Mail on that same day with postage thereon, first class, fully prepaid, in the ordinary course of business. I am aware that on motion of the party affected that service is presumed invalid if the postage meter date or postmark is more than one day after the date stated for deposit in the mail thereon.

By Personal Delivery, Handing a copy to: _____, I caused to be delivered the above described documents, by hand to the address shown above on the date stated herein.

By Fax Transmission: _____, I caused above-described documents to be sent by Facsimille transmission to the following Attorneys/Parties at the following FAX Telephone numbers: _____.

By Email: _XXX_.

I declare under penalty of perjury, under the laws of the State of California that the foregoing is true and correct.

Executed on 30 March 2024

By:   __/s/ Alexander J. Petale_____
Alexander J. Petale, Esq.

**U.S. Bankruptcy Court**
**Central District of California (Los Angeles)**
**Bankruptcy Petition #: 2:24-bk-12532-BR**

*Date filed: 04/02/2024*
*Debtor discharged: 07/08/2024*
*341 meeting: 05/02/2024*
*Deadline for objecting to discharge: 07/01/2024*
*Deadline for financial mgmt. course: 07/01/2024*

*Assigned to:* Barry Russell
Chapter 7
Voluntary
No asset
Show Associated Cases

*Debtor disposition:* Standard Discharge

*Debtor*
**Amy Lynne Blalock**
1619 N La Brea Ave #509
Los Angeles, CA 90028
LOS ANGELES-CA
SSN / ITIN: xxx-xx-5447

represented by **Karine Karadjian**
Karine Karadjian, P.C.
14640 Victory Blvd
Ste 221
91411
Van Nuys, CA 91411
323-426-8300
Fax : 323-454-2933
Email: karine@kelawfirm.com

*Trustee*
**Howard M Ehrenberg (TR)**
1875 Century Park East
Suite 1900
Los Angeles, CA 90067
213-626-2311

*U.S. Trustee*
**United States Trustee (LA)**
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017
(213) 894-6811

**EXHIBIT 3**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
#### Central District, Stanley Mosk Courthouse, Department 61

**23STCV14890**                                                                    July 1, 2024
**STEWART LUCAS MURREY vs KELLY GIBBONS, et al.**                                   10:00 AM

Judge: Honorable Lynne M. Hobbs          CSR: None
Judicial Assistant: V. Trujillo          ERM: None
Courtroom Assistant: Sky SoYeon Hahn     Deputy Sheriff: None

---

that any such documentary has been made. (Opposition at p. 10.)

Nor is there a factual basis for a claim of intentional infliction of emotional distress. "The elements of a prima facie case for the tort of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." (Miller v. Fortune Commercial Corporation (2017) 15 Cal.App.5th 214, 228–29.) Here, the sole evidence of distress that Plaintiff presents is that he suffers from "high blood pressure" and "anxiety." (Murrey Decl. ¶ 22.) This is insufficient. (Hughes v. Pair (2009) 46 Cal.4th 1035, 1051 [holding that "discomfort, worry, anxiety, upset stomach, concern, and agitation" were insufficient for an IIED claim].) Although Plaintiff states that he has "had to change my work address, look for trackers and people following me, and warn my friends and family who are in fear of Gibbon's borderline personality," he presents no evidence of any conduct by Defendant that reasonably put him in fear of being so tracked. (Murrey Decl. ¶ 22.) And although Plaintiff states he has been subject to death threats, the only threat he identifies is a comment on one of Defendant's Facebook posts, post-dating this litigation and not directed to him, offered in response to Defendant's contention that Plaintiff himself personally served her at her home. (Murrey Decl. Exh. I.) Plaintiff does not deny this contention.

Finally, Plaintiff has not attempted to establish the factual or legal sufficiency of his eleventh cause of action declaratory relief. Nor can Plaintiff pursue an independent tenth cause of action for conspiracy, because "[c]ivil conspiracy is not an independent tort." (City of Industry v. City of Fillmore (2011) 198 Cal.App.4th 191, 211.) Nor does Plaintiff attempt to justify his claims for sex discrimination, gender violence, or interference with economic advantage.

Accordingly, Defendant's motion is GRANTED as to the third, fourth, and sixth through eleventh causes of action, and DENIED as to the first, second, and fifth causes of action for defamation and false light.

Clerk is to give notice.

Certificate of Mailing is attached.

---

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
#### Central District, Stanley Mosk Courthouse, Department 61

**23STCV14890**                                               July 1, 2024
**STEWART LUCAS MURREY vs KELLY GIBBONS, et al.**            10:00 AM

Judge: Honorable Lynne M. Hobbs            CSR: None
Judicial Assistant: V. Trujillo             ERM: None
Courtroom Assistant: Sky SoYeon Hahn       Deputy Sheriff: None

competent and admissible evidence. (Morrow v. Los Angeles Unified School District (2007) 149 Cal.App.4th 1424, 1444.) Proof, however, cannot be made by declaration based on information and belief. (Evans v. Unkow (1995) 38 Cal.App.4th 1490, 1497–1498.) The question is whether the plaintiff has presented evidence in opposition to the defendant's motion that, if believed by the trier of fact, is sufficient to support a judgment in the plaintiff's favor. (Zamos v. Stroud (2004) 32 Cal.4th 958, 965.)

Defamation "involves (a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage." (Price v. Operating Engineers Local Union No. 3 (2011) 195 Cal.App.4th 962, 970.) A false light claim based upon the same facts as a defamation claim "must meet the same requirements." (Hawran v. Hixson (2012) 209 Cal.App.4th 256, 277.) "The sine qua non of recovery for defamation ... is the existence of falsehood." [Citation.] Because the statement must contain a provable falsehood, courts distinguish between statements of fact and statements of opinion for purposes of defamation liability. Although statements of fact may be actionable as libel, statements of opinion are constitutionally protected." (ZL Technologies, Inc. v. Does 1-7 (2017) 13 Cal.App.5th 603, 624.)

Plaintiff has presented evidence to show the legal and factual sufficiency of his first, second, and fifth causes of action for defamation and false light against Defendant Gibbons. "[F]alse statements charging the commission of crime, or tending directly to injure a plaintiff in respect to his or her profession by imputing dishonesty or questionable professional conduct are defamatory per se." (Burrill v. Nair (2013) 217 Cal.App.4th 357, 383 [158 Cal.Rptr.3d 332, 351] disapproved on other grounds in Baral v. Schnitt (2016) 1 Cal.5th 376.) Plaintiff has presented a statement by Gibbons that are reasonably interpreted as charging Plaintiff with suspicion of the murder of his ex-wife, which Plaintiff denies. (Murrey Decl. ¶ 12.)

Accordingly, the motion is DENIED as to the first, second, and fifth causes of action for defamation and false light.

Plaintiff has not, however, presented any evidence to support his remaining claims against Defendant. There is no evidence to support the claim for invasion of privacy, as Plaintiff presents no acts on the part of Defendant that constituted a public disclosure of a private fact. (Morrow v. Los Angeles Unified School Dist. (2007) 149 Cal.App.4th 1424.) The sole disclosures that Plaintiff identifies on the part of Defendant are his picture and his first and middle names. (Murrey Decl. Exh. C.) Plaintiff presents no evidence that Defendant disclosed his "private whereabouts" or those of his family. (Opposition at pp. 9–10.) And although Plaintiff states that Defendant plans to misappropriate his likeness for use in a documentary, there is no indication

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 61

**23STCV14890**                                                                July 1, 2024
**STEWART LUCAS MURREY vs KELLY GIBBONS, et al.**                              10:00 AM

Judge: Honorable Lynne M. Hobbs          CSR: None
Judicial Assistant: V. Trujillo          ERM: None
Courtroom Assistant: Sky SoYeon Hahn     Deputy Sheriff: None

---

(2000) 85 Cal.App.4th 468, 476.) A federal court applying this precedent ruled that even a private Facebook group of 14,900 members could constitute a public forum under the anti-SLAPP statute. (Hicks v. Bradford (C.D. Cal., Dec. 13, 2022, No. CV217330DMGGJSX) 2022 WL 20689541, at *4.) Thus the statements at issue here were made in a public forum.

The evidence and pleadings also establish that Valdes's posts involved a matter of public interest: women's security against male violence and harassment. Plaintiff's allegations disclose as much. He states that these and other Facebook groups "allegedly exist to protect women." (FAC ¶ 59.) In his original Complaint, he found fault with Defendants "postur[ing] about protecting women" in their posts. (Complaint ¶ 30.) He contended that the posters "aggressively promote themselves . . . as champions and protectors of women." (Complaint ¶ 31.) . . . Although Plaintiff contends that these representations are insincere, this alleged insincerity would not remove the subject of discussion from the public interest. Courts have held comments made on a "Ripoff Report Web site" about a business owner's "character and business practices," concerned a public interest under the anti-SLAPP statute. (Chaker, supra, 209 Cal.App.4th at p. 1146.) Valdes' comments about Plaintiff's harassing conduct, on a forum directed to warning women against men who engage in such conduct, concerned at least as great a public interest.

(4/9/2024 Ruling.)

Thus the present case against Defendant arises from protected activity within the meaning of the anti-SLAPP statute.

## B. LIKELIHOOD OF PREVAILING

After a defendant meets their burden of showing that the gravamen of the complaint involves protected activity, the plaintiff must then "demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." (Matson v. Dvorak (1995) 40 Cal.App.4th 539, 548.) A defendant can meet its burden if it can establish that the plaintiff cannot overcome an affirmative defense. (Birkner v. Lam (2007) 156 Cal.App.4th 275 at 285.)

"[A] plaintiff cannot simply rely on his or her pleadings, even if verified. Rather, the plaintiff must adduce competent, admissible evidence." (Grenier v. Taylor (2015) 234 Cal.App.4th 471, 480.)

"Legally sufficient" means that the cause of action would satisfy a demurrer. (Dowling v. Zimmerman (2001) 85 Cal.App.4th 1400, 1421.) The evidentiary showing must be made by

---

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
#### Central District, Stanley Mosk Courthouse, Department 61

**23STCV14890**                                                    July 1, 2024
**STEWART LUCAS MURREY vs KELLY GIBBONS, et al.**                  10:00 AM

Judge: Honorable Lynne M. Hobbs          CSR: None
Judicial Assistant: V. Trujillo          ERM: None
Courtroom Assistant: Sky SoYeon Hahn     Deputy Sheriff: None

---

Elsewhere, Defendant states of Plaintiff: "[H]e pressed lawsuits against a number of women to extort money from them and was suspected in the murder of his ex wife. I think the doc could investigate the murder since he clearly didn't go to jail about it and instead of accuse him just plant seeds of suspicion." (Murrey Decl. Exh. D.) In another statement, Defendant said, "[T]his was at the end of the email lol so I guess all his extortion lawsuits [emoji] they're gliding right on past that murder suspicion." (Murrey Decl. Exh. E.) Defendant elsewhere stated that Plaintiff was "either extorting or trying to extort money from multiple different sources." (Ibid.)

In another post, Defendant stated: "[O]mg … suing a company that catches cheaters and the suspicion of murdering his wife?! Dateline vibes." (Murrey Decl. Exh. E.)

In another post, Defendant posed an "UPDATE" that Plaintiff had been reported and removed from the Hinge dating platform, "But he is obviously a predator so keep in mind he could make new profile with new names or false info." (Murrey Decl. Exh. E.)

Plaintiff also identifies several posts in which Defendant discusses making a documentary or "mini-doc" about Plaintiff and invites other members of the group to message her directly. (Murrey Decl. Exh. F.)

The allegations of wrongdoing against Defendant Gibbons are similar in character to the allegations made against Defendants Vanessa Valdes and Liv Burger which were the subject of prior anti-SLAPP motions granted by this court on April 8, 2024. The analysis of that ruling is applicable to Defendant here.

From the above, there is ample basis to conclude that Plaintiff's suit against Valdes arises from protected activity, both through statements made in a public forum concerning an issue of public interest and through conduct in furtherance of the exercise of the constitutional right of free speech in connection with a public issue or an issue of public interest. Valdes's statements were made in an online Facebook group to what Plaintiff's FAC characterizes as an audience of "millions." (FAC ¶ 10.) Similar online postings have been held to involve a "classic public forum." (Chaker v. Mateo (2012) 209 Cal.App.4th 1138, 1146.)

Plaintiff's objection that he was not permitted to join the group in question does not obviate the character of public forum. (Opposition at pp. 10–11.) Smaller scale, closed publications have been held to amount to public fora. Statements made in a newsletter of limited circulation to a small neighborhood of homeowners and characterized as "a mouthpiece for a small group of homeowners who generally would not permit contrary viewpoints to be published in the newsletter" has likewise been held to be a public forum. (Damon v. Ocean Hills Journalism Club

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
#### Central District, Stanley Mosk Courthouse, Department 61

**23STCV14890**                                                July 1, 2024
**STEWART LUCAS MURREY vs KELLY GIBBONS, et al.**              10:00 AM

Judge: Honorable Lynne M. Hobbs          CSR: None
Judicial Assistant: V. Trujillo          ERM: None
Courtroom Assistant: Sky SoYeon Hahn     Deputy Sheriff: None

connection with an issue of public interest," as well as "any other conduct in furtherance of the exercise of the constitutional right of free speech in connection with a public issue or an issue of public interest." (Motion at pp. 9–10.) Defendant bases this contention on the nature of the conduct alleged against her, which consists of posts made in a Facebook group called "Are We Dating the Same Guy – Los Angeles," evidently a Facebook group in which users post or inquire with other users about men they have dated or are looking into dating. (Ibid.; FAC ¶ 4.)

Plaintiff alleges the following misconduct collectively against Burger and other defendants:

Defendants wrote, published, and circulated defamatory statements about plaintiff to millions of users on Facebook . . . that include the following states: "Public records show" [that plaintiff has] involvement in [a] MURDER case of his ex-wife," is "suspected of murder"; [h]as several domestic violence charges filed against him"; has "filed court cases against women trying to extort money from them"; "[h]as acted aggressively in court"; "has STDs"; has an "ex-wife who was killed"; deserves to be "ARRESTED"; "claim[s] he is an attorney"; and that plaintiff is listed on the California court's public record as being a vexatious litigant."

(FAC ¶ 8.)

It is unclear from the pleading which of the above statements Plaintiff attributes to which defendant. In opposition to the present motions, Plaintiff presents the following statements made by Defendant Gibbons on the Facebook group in question, in reference to Plaintiff:

In a thread of comments discussing Plaintiff, Defendant states: "[H]e also goes by Stewart, which according to all these lawsuits is his legal first name." (Murrey Decl. Exh. C.)

Elsewhere, in the same or a different thread, another commenter asked, "What was the ex wife's name?" evidently referring to the ex-wife of Plaintiff. (Murrey Decl. Exh. C.) Defendant responded, "I have looked over the court docs and from what I gather, her name was Sherrie M." (Ibid.)

Plaintiff identifies another post in which Defendant states that she has tried reporting Plaintiff to Hinge, and asks whether anybody who uses the dating service Bumble would be able to report Plaintiff on that platform. (Murrey Decl. Exh. C.) Gibbons elsewhere posted, "[H]is name is Stewart Lucas so that explains the "ST" but he probably has realized he is getting reported left and right so he's coming up with new ways to ID. I'm surprised he hasn't started using fake names considering his entire legal dumpsterfire is public record." (Murrey Decl. Exh. C.)

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
#### Central District, Stanley Mosk Courthouse, Department 61

**23STCV14890**                                                    July 1, 2024
**STEWART LUCAS MURREY vs KELLY GIBBONS, et al.**                  10:00 AM

Judge: Honorable Lynne M. Hobbs          CSR: None
Judicial Assistant: V. Trujillo          ERM: None
Courtroom Assistant: Sky SoYeon Hahn     Deputy Sheriff: None

---

1.) A defendant opposing a SLAPP claim may bring an "anti-SLAPP" special motion to strike any cause of action "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue . . . ." (Code Civ. Proc., § 425.16, subd. (b)(1).) An anti-SLAPP motion may be addressed to individual causes of action and need not be directed to the complaint as a whole. (Shekhter v. Financial Indemnity Co. (2001) 89 Cal.app.4th 141, 150.)

In ruling on an anti-SLAPP motion, a trial court uses a "summary-judgment-like procedure at any early stage of the litigation." (Varian Medical Systems, Inc. v. Delfino (2005) 35 Cal.4th 180, 192.) This is a two-step process. First, the defendants must show that the acts of which the plaintiff complains were taken "in furtherance of the [defendant]'s right of petition or free speech under the United States of California Constitution in connection with a public issue." (Code Civ. Proc., §425.16 subd. (b)(1).) Next, if the defendant carries that burden, the burden shift to the plaintiff to demonstrate a probability of prevailing on the claim. (Code Civ. Proc., § 425.16 subd. (b)(3).)

In making both determinations the trial court considers "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (Code Civ. Proc., § 425.16, subd. (b)(2); Equilon Enterprises, supra, 29 Cal.4th at p. 67.)

A. PROTECTED ACTIVITY

The anti-SLAPP statute defines protected activities as:

(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

(Code Civ. Proc., § 425.16, subd. (e), emphasis added.)

Defendant Kelly Gibbons (Defendant) argues that the claims against her alleged in Plaintiff Stewart Lucas Murrey's First Amended Complaint (FAC) arise from protected activity, namely "written or oral statement[s] or writing[s] made in a place open to the public or a public forum in

---

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
### Central District, Stanley Mosk Courthouse, Department 61

**23STCV14890**                                                July 1, 2024
**STEWART LUCAS MURREY vs KELLY GIBBONS, et al.**              10:00 AM

Judge: Honorable Lynne M. Hobbs          CSR: None
Judicial Assistant: V. Trujillo          ERM: None
Courtroom Assistant: Sky SoYeon Hahn     Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): Alexander John Petale

For Defendant(s): Amy Blalock (Telephonic)

**NATURE OF PROCEEDINGS:** Hearing on Special Motion to Strike under CCP Section 425.16 (Anti-SLAPP motion)

The Court's tentative ruling is electronically posted on the Court's website before the hearing is held.

The matter is called for hearing.

Counsel for Plaintiff submits to the Court's tentative. Defendant Kelly Gibbons is not present.

After considering the moving papers, all documents relating to the motion, the Court adopts its tentative ruling as the final ruling of the Court as follows:

TENTATIVE

Defendant Kelly Gibbons' Special Motion to Strike (Anti-SLAPP) the First Amended Complaint is GRANTED as to the third, fourth, and sixth through eleventh causes of action, and DENIED as to the first, second, and fifth causes of action for defamation and false light.

DISCUSSION

SPECIAL MOTIONS TO STRIKE

In 1992 the Legislature enacted Code of Civil Procedure section 425.16 as a remedy for the "disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (Code Civ. Proc., §425.16, subd. (a); Wilcox v. Superior Court (1994) 27 Cal.App.4th 809, 817.) The lawsuits are commonly referred to as "SLAPP" lawsuits, an acronym for "strategic lawsuit against public participation." (Equilon Enterprises, LLC v. Consumer Cause, Inc. (2002) 29 Cal.4th 53, 57, fn.

<  **Are We Dating The Same Guy? | Los Angeles** ...

Group member

 **Kel Culb Gib**

OH MY GOD RUN. I posted him a few months ago and the info is ALARMING. There's a thread in here somewhere. I got him banned from Hinge but it was either lifted or he made a new one. PLEASE DO NOT GO OUT W THIS MAN.

Reply

 **Lindsay Alexandra**

Reply

**Amy Blalock**

No no no no no. Read the other post with comments. Went out with him. He's going to end up on Dateline one day. Not sure why he stays in LA – so many women know he's a sociopath. I also know he uses fake profiles to access sites like this that talk about him. He's so narcissistic.

Reply

**Group member**

yeah I just went down the rabbit hole tonight and posted on Oc group too and wow I've never seen so



WIKIPEDIA
The Free Encyclopedia

Search

...

*Dateline NBC*

Article

Read        Tools

From Wikipedia, the free encyclopedia

*For the Australian television current affairs program, see*

*For other uses, see*

**Dateline NBC** (also known simply as **Dateline**) is a weekly American television
reality/legal show that is broadcast on       It was previously the network's
flagship general interest news magazine, but now focuses mainly on       stories with
only occasional editions that focus on other topics. The program airs Fridays at 10:00 p.m.
(9:00 p.m. Eastern for special two-hour editions). Special weekend encore
editions also air at 9 or 10:00 p.m. (two-hour editions at 7 and 8:00 p.m. depending on the
night). One or two hour feature-length editions sometimes air on any given scheduled
evening, often to fill vacancies in the primetime schedule or the program's respective nights
due to program cancellations. In February 2021, the program aired its first ever docuseries
"The Widower", a five-hour true crime saga about a man who married six women, four of
whom died

**Dateline NBC**

**DATELINE**

| | |
|---|---|
| **Also known as** | *Dateline* |
| **Genre** | |
| **Presented by** | (for past anchors, ) |
| **Composer** | Michael Karp (1992–2007) |



**Amy Blalock**

We could all share our stories on the documentary like The Tinder Swindler.

Then again, I think this would boost his ego more.

Can't win with that guy.

**Kel Culb Gib**

Open to messaging

I know right? I really just wanna talk to all the other women and get the full range of stories 😋 I did post that after a few glasses of wine. I would be semi scared but interested. Have you see Love Fraud on Showtime? I imagine it would be like that where he agrees to be



**Brittany Shea**
**Amy Blalock** NEVER GO TO THE SECOND LOCATION! Lol



**Amy Blalock**
**Brittany Shea** what happens at the second location?!!! I'm afraid if there's any missing women in LA - he has something to do with it. The weird part is - he knows all this info is out there about him. Why does he stay in LA / Lake Arrowhead?!