Dr. Stewart Lucas Murrey
1217 Wilshire Blvd. # 3655
Santa Monica, CA 90403
Tel.: (424) 278-3017
Email: 2@lucasmurrey.io
Website: lucasmurrey.com
SocialMedia: sickoscoop.com/lucas

**FILED**

SEP 13 2024

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:                    Deputy Clerk

Plaintiff & Plaintiff in Pro Se

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA

In re:

MS. AMY LYNNE BLALOCK, an
individual;
        Debtor,

DR. STEWART LUCAS MURREY, an
individual;
        Plaintiff,

MS. AMY LYNNE BLALOCK, an
individual;
        Defendant.

Adversary Complaint Case No.
24-ap-01152-BR
[Assigned to: Hon. Judge Barry Russell]

Related: Bankruptcy Case No.
24-bk-12532-BR-Chapter 7
[Assigned to: Hon. Judge Barry Russell]

**FIRST AMENDED ADVERSARY
COMPLAINT FOR:**

1) Defamation – Libel *per se*
2) False Light
3) Intentional Infliction of
   Emotional Distress
4) Misappropriation of Name and
   Likeness
5) Unjust Enrichment
6) Negligence
7) Cyberbullying
8) Civil Conspiracy
9) Declaratory Relief
   Exemplary Damages

Jury Demand

Judge: Hon. Barry Russell

Plaintiff DR. STEWART LUCAS MURREY alleges and states as follows:

## I.     VENUE AND JURISDICTION

1. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(j).

2. The last date for filing complaints to determine the dischargeability of debts pursuant to 11 U.S.C. § 523 is 1 July 2024.

3. Venue in this action is proper in this Court pursuant to 28 U.S.C. § 1409.

4. The Debtor and Defendant AMY LYNNE BLALOCK ("Defendant" and "Ms. Blalock") filed her voluntary petition under Chapter 7 of the Bankruptcy Code on 2 April 2024 in the United States Bankruptcy Court for the Central District of California, Case No. 2:24-bk-12532-BR.

## II.     PARTIES

5. At all times material hereto, Creditor and Plaintiff, DR. STEWART LUCAS MURREY ("Plaintiff" and "Dr. Murrey") is an individual who resides in the County of Los Angeles.

6. The Debtor and Defendant, Ms. Blalock, is an individual who resides in the County of Los Angeles.

## III.     FIRST CLAIM FOR RELIEF FOR NON-DISCHARGEABILITY OF JUDGMENT DEBTS BASED ON 11 U.S.C. § 523(a)(6) – WILLFUL AND MALICIOUS PERSONAL INJURY

7. Plaintiff repeats and realleges the allegations contained in paragraphs 1-6, inclusive, and by reference thereto incorporates the same herein as though fully set forth at length.

8. On 27 June 2023 Plaintiff filed a complaint against Ms. Blalock for general, special and punitive damages incurred as a result of Blalock's participation in a conspiracy to gang-stalk, harass, defame, impersonate and cyberbully Plaintiff. Further, Ms. Blalock knew and intended that her statements would result in harming Plaintiff by portraying him in false light (See Los Angeles County Superior Court Case No. 23STCV14890).

9. Said Los Angeles County Court recently ruled that Ms. Blalock's Special Anti-SLAPP Motion to Strike failed to dismiss Plaintiff's causes of action for 1) Libel; 2) Libel *per se*; and 3) False Light, all of which survive and are currently pending. Herein said other deemed that Plaintiff's lawsuit has a clear likelihood of prevailing on the above-noted causes of action.

10. Said state case is currently pending; Plaintiff reasonably requires discovery responses from Ms. Blalock, in particular because of the nature of the online conspiracy in which Blalock participated: one that aggressively uses anonymity, secrecy and any and all crimes to hide from justice. Thus Plaintiff urgently needs to litigate his case against Ms. Blalock and her co-conspirators in their almost decade-long online secret and anonymous conspiracy to gang-stalk and cyberbullying Plaintiff.

Dr. Murrey's First Amended Adversary Complaint

11. Following diligent research and after obtaining new evidence Plaintiff has since filed a motion for leave to file a second amended complaint in said state case with the following causes of action: 1) Defamation – Libel; 2) Defamation – Libel *per se*; 3) False Light; 4) Intentional Infliction of Emotional Distress; 5) Misappropriation of Name and Likeness; 6) Civil Harassment; 7) Unjust Enrichment; 8) Sex-Based Discrimination In Violation Of The Unruh Civil Rights Act (California Civil Code § 51); 9) Gender Violence In Violation Of California Civil Code § 52.4; 10) Cyberbullying; 11) Conspiracy to Violate Plaintiff's Reputation and Identity; Plaintiff's Right to Free Speech; to Harass him; to Cause him Emotional Distress; to Obtain Unjust Enrichment; to Discriminate against Plaintiff's Sex; and to Cyberbully Plaintiff; and 12) Declaratory Relief that is currently set to be heard on 4 November 2024.

12. By engaging in the above-noted acts and conduct i.e. heinous Facebook savagery etc. alleged, Ms. Blalock willfully and maliciously injured Plaintiff.

13. Plaintiff was damaged as a result of Ms. Blalock's actions herein and she has been properly served a Statement of Damages on on 19 December 2023 from said state case for 2.6 million dollars ($2,600,000.00).

14. As noted above, this state case is currently pending; its likelihood of prevailing on the above-noted causes of damages, including Libel *per se*, has

Dr. Murrey's First Amended Adversary Complaint

been established by said state Court; discovery is critical; and the forthcoming

debt that Ms. Blalock shall have to Plaintiff is significant.

15. Along with her utter lack of remorse or reflection, Ms. Blalock has failed to

provide any compensation to Plaintiff whatsoever.

16. Plaintiff asserts, as alleged herein, that any and all future and/or forthcoming

debts of Ms. Blalock to Plaintiff are not dischargeable per 11 U.S.C. §

523(a)(6), based on the willful, malicious and intentional personal injury to

Plaintiff committed by Ms. Blalock.

## IV.    BACKGROUND AND STATEMENT OF FACTS

17. Plaintiff repeats and realleges the allegations contained in paragraphs 1-16,

inclusive, and by reference thereto incorporates the same herein as though

fully set forth at length.

18. During 2023 plaintiff obtained evidence from various sources that sometime

around 2019 and/or 2020,[1] defendants began to post harmful statements about

him online. This occurred in online forums such as, but not limited to

Facebook's forums "Are We Dating The Same Guy?" ("AWDTSG") which is

linked to various cities and counties around the world and which has tens of

millions of users.

---

[1] The exact time is still to be determined because Facebook refuses to be transparent about the publication dates of statements from its groups.

19. An anonymous Facebook account stated that "[p]ublic records show [that] he [plaintiff] has several domestic violence charges filed against him plus involvement in [a] MURDER case of his ex wife" that plaintiff "is DANGEROUS"; and that plaintiff "[f]iled 11 court cases against women in 33 months trying to extort money from them".

20. Kelly Gibbons stated that plaintiff "pressed lawsuits against a number of women to extort money from them and was suspected in the murder of his ex[-]wife"; that plaintiff engages in "extortion lawsuits"; is under "murder suspicion" – presumably for murdering his girlfriend who passed from cancer in 2018 –; that plaintiff is guilty of "fraudulent behavior", "using a false identity", "posing a significant risk of attempting to obtain money from other users through deceitful means", is "suing a company that catches cheaters and the suspicion of murdering his wife?! Dateline vibes", that plaintiff is "obviously a predator", whose Ph.D from Yale University is fraudulent.

21. An anonymous group member stated plaintiff "killed" his "ex"; that plaintiff has committed "crimes!"; that plaintiff "said he was an [a]ttorney"; and that the online dating app "[H]inge" banned him "for fraudulent behavior".

22. Amy Blalock stated that "I'm afraid if there's any missing women in LA – he [plaintiff] has something to do with it" and that "[h]e [plaintiff] [i]s going to end up on Dateline one day."

- 6 -

Dr. Murrey's First Amended Adversary Complaint

23. Elly Shariat stated that plaintiff aggressively stalked her via her Instagram posts and finally tracked her down at a hotel in Beverly Hills whereat plaintiff grabbed her wrist violently and acted so harassingly that even years later Shariat is unable to sleep and still wakes up in terror.

24. Lena Vanderford stated that plaintiff is an "abusive murderer"; that he has acted "Fraudulent"; that "He is truly dangerous"; and Vanderford posted statements that "[p]ublic records show [that] he [plaintiff] has several domestic violence charges filed against him plus involvement in [a] MURDER case of his ex wife" that plaintiff "is DANGEROUS"; and that plaintiff "[f]iled 11 court cases against women in 33 months trying to extort money from them".

25. Ainka Wiz stated that plaintiff was "a murder suspect" and that "exes has accused him of stds".

26. And Kelyn Rodriguez stated that plaintiff was "on the ca [California] court['s] listing" because "He's been labeled a vexatious litigator".

27. By posting about plaintiff in AWDTSG i.e. "Are We Dating The Same Guy" each of the above-noted defendants also implied that plaintiff was unchaste i.e. cheats on all women.

28. On 7 February 2024 defendants Gibbons, Blalock, Shariat, Rodriguez, Vanessa Valdes, Liv Burger and anonymous defendant initiated a GoFundMe webpage whereupon they stated that plaintiff aggressively stalked Shariat via

her Instagram posts and finally tracked her down at a hotel in Beverly Hills whereat plaintiff grabbed her wrist violently and acted so harassingly that even years later Shariat is unable to sleep and still wakes up in terror.

29. On or just before 13 April 2024 Poer-Anthony stated to the *Daily Mail* for an article they published on said date that plaintiff "stalked" her daughter Shannyn Poer.

30. On or about 12 April 2024 Valdes filed a police report against plaintiff wherein she claimed that plaintiff had "doxed" her i.e. electronically harassed her by posting harmful information online (California Penal Code § 653.2).

31. All of the above-noted statements about plaintiff are false. Further, plaintiff has never been charged, much less convicted of any crime his entire life.

32. Although not a Facebook user, plaintiff in good faith diligently contacted Facebook and other related platforms and put them all on notice about this conspiracy to harm him and for them to preserve any and all related evidence.

33. Facebook et al. failed to respond and continue to fail to respond still today; and plaintiff filed LAPD and FBI reports just before filing this lawsuit.

34. There are hundreds of different Facebook accounts involved in this conspiracy in AWDTSG to harm plaintiff and tens of millions of users on Facebook have seen the statements harming plaintiff where they were published and aggressively promoted.

35. Because plaintiff is a man i.e. his sex happens to be male, he was and is excluded from said Facebook AWDTSG groups.

36. Said sexual discrimination is part of the design of the conspiracy to harm plaintiff.

37. Those involved in posting harmful statements about plaintiff were fully aware that because his sex is male plaintiff would never be admitted to join these Facebook groups.

38. Worse, defendants conspired to keep plaintiff unaware of their online gang-stalking and cyberbullying of him. This way defendants intended to maliciously deny plaintiff his right to exercise free speech and defend himself, first in bad faith by keeping him uninformed; next by refusing to allow him to join the Facebook forums to defend himself with free speech.

39. Online stalking and harassing led to off-stalking and harassment. Defendants' conspiracy expanded to tracking plaintiff's whereabouts, contacting his loved ones, digging up plaintiff's personal information to put on public display, and conspiring to harm them. This was witnessed by several people who warned plaintiff who was forced to alert his family and friends, change his parking location, look for trackers on his car, change his work address, change his phone number and email address, and close off to the public world while cyberbullying and off-line attacks continued, including death threats.

40. After filing this lawsuit defendants then initiated a national and international news media smear campaign on plaintiff whereby they continued their harassment and defamation and even profited unjustly e.g. on charity websites such as GoFundMe.

41. Still today defendants' assault on plaintiff online and offline continues.

42. Because of defendants' actions plaintiff has incurred substantial monetary damages.

## V.    CLAIM FOR DEFAMATION – LIBEL (*PER SE*)

43. Plaintiff repeats and realleges the allegations contained in paragraphs 1-16, inclusive, and by reference thereto incorporates the same herein as though fully set forth at length.

44. As noted above, Blalock aggressively participated in the above-noted conspiracy to harm plaintiff as when Blalock stated that "I'm afraid if there's any missing women in LA – he [plaintiff'] has something to do with it" and that "[h]e [plaintiff] [i]s going to end up on Dateline one day."

45. Each of these statements was viewed by tens of millions of Facebook users for at least two (2) years.

46. Said viewers reasonably understood that these statements were about plaintiff.

47. Blalock failed to use reasonable care to determine the truth or falsity of these statements.

48. Defendant's wrongful conduct constitutes defamation *per se*.

49. Defendant's wrongful conduct was a substantial factor in causing harm to plaintiff's reputation and caused shame, ridicule, mortification and hurt feelings to plaintiff.

50. Accordingly, plaintiff has been seriously damaged mentally and emotionally. Said damages that shall be determined at trial, are believed to exceed $2.6 million, exclusive of legal fees, costs and statutory interest.

51. In addition, because defendant's conduct was so outrageous, plaintiff seeks punitive damages in an amount that will punish defendant from ever engaging in said conduct and an amount and that will deprive defendant of all benefit, financial or otherwise, of her defamatory statements.

## VI.    CLAIM FOR FALSE LIGHT

52. Plaintiff repeats and realleges the allegations contained in paragraphs 1-52, inclusive, and by reference thereto incorporates the same herein as though fully set forth at length.

53. Blalock stated that she secretly recorded plaintiff: "I have a work phone and personal phone. I put them stacked on the bar in front of me and one of them was recording. About 5 mins into sitting there, he [plaintiff] grabbed both of my phones [...]"

54. This statement is false. Plaintiff has no memory of Blalock, nor of meeting her, he never gave her consent to record him and he never grabbed Blalock's phone or phones.

55. Furthering the conspiracy to harm plaintiff Blalock stated: "I'm afraid if there's any missing women in LA – he [plaintiff'] has something to do with it.". Blalock repeats her accusations that plaintiff is guilty of kidnapping and murdering women. In fact, Blalock promotes Gibbons' conspiracy to associate plaintiff with real serial killers on TV: "He's going to end up on Dateline one day."

56. Blalock's admission that she secretly recorded plaintiff is a part of Gibbon's conspiracy to create a harmful movie about plaintiff painting him as a murderer, extortionist, etc. by secretly defaming him in AWDTSG Facebook forums while publicly planting "seeds of speculation".

57. Blalock states directly to Gibbons that their new "documentary" about plaintiff should be "like *The Tinder Swindler*: a documentary about the Israeli criminal Shimon Hayut (aka *the Tinder Swindler*) who has been convicted of stealing large amounts of money, fraud, deceit and more.

58. Starting with the above-noted false allegations of murder, violence, stalking, extortion, fraud, and identity theft, the group quickly spun out of control. Under the unwavering persistence of Gibbons and Blalock, the acts of this group expanded to tracking the plaintiff's whereabouts, contacting his loved ones, digging up his personal information to put on public display, and conspiring to harm them. Taking these chats offline and holding them in separate private discussions while keeping them secret, the group tactically

formed to humiliate, harass, and "dox" plaintiff after conspiring to stalk him

and his loved ones.

59. Defendant publicly disclosed information or material without plaintiff's

consent or giving him notice, that include, but is not limited to plaintiff's

phone number, images of him, his private address, his private text messages,

the name of his girlfriend who passed from cancer in 2018, articles, videos

and images from plaintiff's personal copyrighted website and court

documents related to his previous actions that all showed plaintiff in a false

light.

60. Defendant made said disclosure to make it seem like plaintiff had committed

acts of murder, extortion, fraud, domestic violence, stalking; that he had

STDs; that he was unchaste; and that his Ph.D was fake.

61. Defendant made said disclosures to tens of millions of people online via

Facebook forums and via local, national and internation news media outlets

and via the police and other such agencies and outlets.

62. All of the above-noted images that defendants knowingly created by said

disclosures are false and/or never occurred and would be highly offensive to a

reasonable person in plaintiff's position.

63. There is clear and convincing evidence that defendant knew that their

disclosure would create a false impression about plaintiff and they acted with

reckless disregard for the truth.

Dr. Murrey's First Amended Adversary Complaint

64. Defendant was negligent in determining the truth of the information and whether a false impression would be created by this disclosure.

65. Defendant's conduct was a substantial factor in causing plaintiff's harm.

## VII.   CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

66. Plaintiff repeats and realleges the allegations contained in paragraphs 1-66, inclusive, and by reference thereto incorporates the same herein as though fully set forth at length.

67. Defendant's conduct of gang-stalking, stalking, defaming, cyberbullying plaintiff online and off-line was and is outrageous.

68. Defendant intended to cause plaintiff emotional distress.

69. Defendant acted with reckless disregard for the probability that plaintiff would suffer emotional distress, knowing that plaintiff was the subject when their conduct occurred.

70. Plaintiff suffered emotional distress; and Defendant's conduct was a substantial factor in causing plaintiff severe emotional distress.

71. As the actual and proximate result of the intentional acts of defendants, plaintiff suffered serious, lasting emotional distress, including but not limited to: emotional distress, mental and physical harm, post-traumatic stress syndrome, mortification and grief.

72. Plaintiff has had to hire and retain physicians and health care professionals to
treat him for the psychological and physical harm he has suffered and
continues to suffer. Plaintiff has suffered medical special damages and
incurred medical bills and has suffered general damages of fright, pain, grief,
mortification and harm, all in amounts to be proven at the time of the trial
herein.

## VIII.  CLAIM FOR MISAPPROPRIATION OF NAME AND LIKENESS

73. Plaintiff repeats and realleges the allegations contained in paragraphs 1-72,
inclusive, and by reference thereto incorporates the same herein as though
fully set forth at length.

74. Sometime in 2024 anonymous defendants used plaintiff name to create a
Facebook account: "Stewart Lucas Murrey Clown" with images of plaintiff.[2]
Sometime prior to and or around 2024 anonymous defendants developed
email addresses and other social media accounts with plaintiff's name and/or
clear references to plaintiff's identity, including, but not limited to
lucasmurrey123@gmail.com and drluc369@gmail.com.

75. Plaintiff did not consent to this use. There is a direct symbolic link between
the above-noted misappropriation of name and likeness of plaintiff and
defendants' GoFundMe webpage. This shows that defendants gained

---

[2] Facebook does not provide dates nor any transparency regarding those who gang-stalk, cyberbully or harm others, including impersonations.

Dr. Murrey's First Amended Adversary Complaint

commercial benefit and/or were able to further the harm they intended to cause plaintiff through their above-noted misappropriation of name and likeness of plaintiff. Further, defendants received money and other forms of rewards for harming plaintiff on Facebook.

76. As a result of defendants' misappropriation of name and likeness of plaintiff he was harmed.

77. Defendants' conduct was a substantial factor in cause plaintiff harm.

78. Unless and until enjoined and restrained by order of this Court, defendants' wrongful conduct will continue to cause irreparable harm to plaintiff, entitling him to seek declaratory relief.

## IX.    CLAIM FOR UNJUST ENRICHMENT

79. Plaintiff repeats and realleges the allegations contained in paragraphs 1-78, inclusive, and by reference thereto incorporates the same herein as though fully set forth at length.

80. Plaintiff incorporates all allegations of this complaint and re-alleges them as though they were fully set forth herein.

81. Defendants unjustly enriched themselves based upon their defamation, harassment and harm caused to plaintiff.

82. Specifically, defendants received money and other rewards on Facebook for said harm, as well as at least $5,747.00 via their GoFundMe webpage that they initiated on 7 February 2024.

83. Defendants have further made several statements regarding books, documentaries etc. that they have sought to produce in regard to the harm they have caused plaintiff and from which they intended to profit.

## X.    CLAIM FOR NEGLIGENCE

84. Plaintiff repeats and realleges the allegations contained in paragraphs 1-83, inclusive, and by reference thereto incorporates the same herein as though fully set forth at length.

85. Defendants owed plaintiff a duty of care to accurately represent him in their Facebook forum, in their online charity webpage and in their media representations all of which they held to be "true" to confirm the details of allegations made about him.

86. Defendants breached their duty of care by lying repeatedly about plaintiff and portraying him as a serial killer, etc. (as noted above).

87. As a result of defendants' breaches plaintiff has been damaged severely and has suffered among other things panic, fear, anxiety, sleeplessness and despair.

88. Plaintiff has suffered severe emotional distress as a result of defendants' negligence.

## XI.    CLAIM FOR CYBERBULLYING

Dr. Murrey's First Amended Adversary Complaint

89. Plaintiff repeats and realleges the allegations contained in paragraphs 1-88, inclusive, and by reference thereto incorporates the same herein as though fully set forth at length.

90. This is a good faith and well-research effort to enlarge and/or change, extend, modify and/or reverse existing law.

91. Herein cyberbullying is understood as two or more online accounts targeting a person for the sake of harassing or "doxing" or defaming or impersonating said person's name or likeness.

92. The serious harm caused by cyberbullying noted above escalates significantly: 1) the greater the number of online users who witness said conduct; 2) the victim is not given notice of said conduct; 3) the online group(s) wherein members are making said statements refuse to allow the victim, should he or she become aware of said conduct, to join the online group(s) and defend him or herself; 4) those online users committing cyberbullying use anonymous accounts such that their real-world identities are masked by false and/or fake names; 5) the victim is gang-stalked; 6) the online harassment also occurs off-line; and 7) as a result of this harm the victim is reasonable forced to live in fear e.g. change phone numbers, move, warn his or her loved ones.

93. Given the seriousness of this severe form of attack, cyberbullying herein carries treble punitive damages if any of the above-noted escalating conditions occur.

94. In this case plaintiff was cyberbullied by hundreds of Facebook accounts who posted the above-noted severely harmful statements to billions of users online (Facebook is the the world's most popular social media platform, with billions of daily users; he was never given notice and in fact defendants conspired elaborately to keep him unaware of the harm they caused him; after plaintiff discovered defendants' conduct, they refused to let him join the Facebook forums such that they wanted him to have no defense against their malicious crimes and civil torts; defendants consist mostly of anonymous accounts with false and/or fake names which they used to gang-stalk plaintiff online and offline, forcing him to to alert his family and friends, change his parking location, look for trackers on his car, change his work address, change his phone number and email address, and close off to the public world while said cyberbullying and off-line attacks continued, including death threats.

95. Plaintiff is further informed and believes, and based thereon alleges, that defendants, and each of them, acted and continue to act, with full knowledge of the consequences and damage being caused to plaintiff, by defendants' actions, and defendants' actions were, and are, willful, oppressive, and

malicious. Accordingly, plaintiff is entitled to treble punitive damages against

defendants, and each of them, in a sum according to proof at trial.

96. Plaintiff has incurred, and will continue to incur, attorneys' fees in the

prosecution of this action and therefore demand such reasonable attorneys'

fees and costs as set by the court.

## XII.   CLAIM FOR CIVIL CONSPIRACY

97. Plaintiff repeats and realleges the allegations contained in paragraphs 1-96,

inclusive, and by reference thereto incorporates the same herein as though

fully set forth at length.

98. Defendants' conspired to gang-stalk, harass, defame, emotionally distress,

impersonate, discriminate against and cyberbully plaintiff.

99. During their conspiracy defendants aggressively abused social media,

recruited new members and elaborately plotted to "plant seeds of speculation"

around their defamatory statements to deny plaintiff's basic rights to "life and

liberty, acquiring possession, and protecting property, and pursuing and

obtaining safety, happiness and privacy." Cal. Const. Art. I., § 1. Further,

defendants also sought to profit from books, documentaries etc. that

defendants planned to produce following said malicious harm.

100.    Defendants coordinated their stories of plaintiff stalking and

committing murder and how their statements could reach the most amount of

people to cause the most amount of harm, for instance, how defendants

initiated a media smear campaign after this case was filed.

101.    Plaintiff is further informed and believes, and based thereon alleges,

that defendants, and each of them, acted and continue to act, with full

knowledge of the consequences and damage being caused to plaintiff, by

defendants' actions, and defendants' actions were, and are, willful,

oppressive, and malicious. Accordingly, plaintiff is entitled to treble punitive

damages against defendants, and each of them, in a sum according to proof at

trial.

102.    Plaintiff has incurred, and will continue to incur, attorneys' fees in the

prosecution of this action and therefore demand such reasonable attorneys'

fees and costs as set by the court.

## XIII. DECLARATORY RELIEF

103.    Plaintiff repeats and realleges the allegations contained in paragraphs 1-

103, inclusive, and by reference thereto incorporates the same herein as

though fully set forth at length.

104.    Because of the ongoing severe harm suffered by plaintiff, he requests

a judicial declaration for defendants to remove and/or delete any and all

defamatory and/or disparaging statements about plaintiff and/or statements

misrepresenting plaintiff.

Dr. Murrey's First Amended Adversary Complaint

105.     Further, plaintiff requests a judicial declaration prohibiting defendants from repeating and/or circulating such defamatory, disparaging and misrepresenting statements in the future.

106.     In particular, plaintiff requests a judicial declaration wherein the court orders that defendants, their agents, all persons acting on their behalf or purporting to act on their behalf and all other persons in active concert and participation with them, be and hereby are, permanently enjoined from engaging in and/or performing directly, any of the following acts:

107.     Defendants are prohibited from initiating contact with plaintiff and/or any and all persons known to plaintiff and/or any and all associates of plaintiff. Any complaints defendants may have concerning plaintiff must be communicated to an associate of plaintiff who will be identified by plaintiff for defendants.

108.     Defendants are prohibited from making the following defamatory and fictitious statements about plaintiff to third persons: plaintiff has been involved in a murder case; that plaintiff has been charged with any crime whatsoever; that plaintiff has been convicted of any crime whatsoever; that plaintiff has a STD; that plaintiff is deceitful and/or acts fraudulently; that plaintiff does not have a Ph.D; that plaintiff has taken an interest in, or ever stalked and/or harassed any of them, etc.

Dr. Murrey's First Amended Adversary Complaint

109.     Defendants are prohibited from posting about plaintiff whatsoever, including posting of his personal and private information, pictures, texts, telephone number, address, medical information, etc.

110.     Defendants are prohibited from filming (whether by video camera or still photography) within fifty (50) feet of plaintiff and/or his premises.

111.     Defendants are prohibited from using Facebook and/or any Meta social media applications and/or such online platforms and/or apps (including, but not limited to: Instagram, Whatsapp, etc.), and especially from participating in any Facebook group and/or any other social media application and/or platform and defendants are prohibited from using any and all online dating applications and/or platforms.

112.     Defendants are prohibited from reporting plaintiff to any third party whatsoever.

## EXEMPLARY DAMAGES

113.     Plaintiff repeats and realleges the allegations contained in paragraphs 1-112, inclusive, and by reference thereto incorporates the same herein as though fully set forth at length.

114.     The acts complained of herein and in the preceding paragraphs above were done willfully, unlawfully, maliciously and in wanton disregard of the rights and feelings of plaintiff and by reason thereof, plaintiff now demands punitive and compensatory damages.

Dr. Murrey's First Amended Adversary Complaint

## JURY DEMAND

115.     Plaintiff requests a trial by jury on all claims.


**WHEREFORE, Plaintiff prays for damages as follows:**

1) For judgment in his favor on all claims asserted herein;

2) For a judgment deeming that any and all forthcoming judgment debt(s) owed by Ms. Blalock to Plaintiff to be non-dischargeable pursuant to 11 U.S.C. § 523(a)(6) based on the willful, malicious and intentional personal injury to Plaintiff by Ms. Blalock;

3) For costs of suit incurred herein; and

4) For such other and further relief as the Court deems just and appropriate.


DATED: 10 September 2024                    Respectfully submitted,


By:    _____
        Dr. Stewart Lucas Murrey
        *Plaintiff & Plaintiff in Pro Se*
        Website: lucasmurrey.com
        SocialMedia: sickoscoop.com/lucas